**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

 ------------------------------------------------------------------------ X

Towaki Komatsu,                                                            **Complaint**


                       Plaintiff,                                          **JURY DEMAND**


            -vs-

**a)** The City of New York;

**b)** Nicola Aaronson, Kayla Arslanian, Steven Banks, Martha
Calhoun, Marco Carrion, Michael Casca, Marin Gerber, Andrea
Hagelgans, Raquel Lucas, Jeffrey Mosczyc, Eric Phillips, Jessica
Ramos, Howard Redmond, Jaclyn Rothenberg, Ann Marie Scalia,
Avraham Schmeidler, and Emma Wolfe in their individual and
official capacities as current and former personnel of the City of
New York;

**c)** Roy Esnard, H. Cooper Gregory, Nigel Marks, Joab Okello,
Konstantin Pertas, Krista Rock, Samuel Spitzberg, and Daniel Tietz
in their individual and official capacities as personnel of the New
York State Office of Temporary and Disability Assistance;


                       Defendants.

 ------------------------------------------------------------------------ X

Plaintiff Towaki Komatsu (hereinafter referred to in the first-person as "I", "me", and "my"), proceeding pro se in this action, does hereby state and allege all that follows in this pleading.

**Preliminary Remarks**

1.     Due to a patently illegal order that U.S. District Judge Edgardo Ramos issued on 1/6/21 in _Komatsu v. City of New York_, No. 20-cv-7046 (ER)(GWG)(S.D.N.Y.), I need to preemptively, protectively, and explicitly state that the focus of this lawsuit isn't about public meetings that Bill de Blasio and other government personnel attended. This needs to be stated to make it perfectly clear to Mr. Ramos that if he dares to illegally cause this complaint to be struck while he has no jurisdiction to do so, I will immediately sue him for having yet again violated my First and Fourteenth Amendment rights by doing so after he previously did so on or about 1/6/21 that caused my complaint in _Komatsu v. City of New York_, No. 20-cv-10942 (VEC)(RWL)(S.D.N.Y.) to be struck. After he illegally did so, U.S. District Judge Colleen McMahon initially and fraudulently defended Mr. Ramos' illegal striking of that complaint before she thereafter reversed her position about that and overruled Mr. Ramos on or about 1/28/21 while she was then the U.S. Chief Judge for the Southern District of New York by reinstating my complaint in _Komatsu v. City of New York_, No. 20-cv-10942 (VEC)(RWL)(S.D.N.Y.).

2.     The following is a table of contents for this complaint's sections and subsections:

| **Section** | **Page** |
|---|---|
| a.  Preliminary Remarks | 2 |
| b.  Jurisdiction and Venue | 13 |
| c.  Parties | 16 |
| d.  Summary of My Claims in This Case | 19 |

e.   Legal Standards..................................................................22

f.   Background Facts................................................................68

  i.   Constitutional Deficiencies with OTDA's Fair Hearing Program.........69

  ii.  Constitutional Deficiencies with Article 78 Proceedings..............74

  iii. Other................................................................78

g.   Statement of Facts.............................................................80

h.   Causes of Action...............................................................91

i.   Demand for a Jury Trial........................................................99

j.   Prayer for Relief..............................................................99

k.   Plaintiff's Certification and Warnings

l.   Exhibits

3.     Those who will have access to the PDF file for this complaint will be able to use the descriptive bookmarks in it to easily navigate between its sections. I have also added markings to the bottom-right corners of the exhibits that are annexed to this complaint to identify them by the sequence in which they are shown within groupings of exhibits. For example, a marking of "A3" on such an exhibit means that it's the third exhibit that appears within the annexed **Exhibit A**.

4.     The information presented next is about the fact that I will refer to acronyms throughout this complaint in the interests of brevity and to comply with Federal Rule of Civil Procedure ("FRCP") Rule 8 that urges such conciseness. I will refer to acronyms shown in the second column of the following table throughout this complaint to refer to the entities to which they correspond that are shown in the third column of that table:

| #  | Acronym             | Corresponds To                                           |
|----|---------------------|----------------------------------------------------------|
| 1  | Appellate Division  | The New York State Appellate Division's First Department  |
| 2  | Bronx DA            | Bronx District Attorney's office                         |

| 3 | CAU | The New York City Mayor's Community Affairs Unit |
| 4 | City Council | New York City Council |
| 5 | CCRB | New York City Civilian Complaint Review Board |
| 6 | Cubesmart | Cubesmart Self Storage |
| 7 | Defendant City | Defendant City of New York |
| 8 | DHS | New York City Department of Homeless Services |
| 9 | DOI | New York City Department of Investigations |
| 10 | DOJ | U.S. Department of Justice |
| 11 | DSS | New York City Department of Social Services |
| 12 | HPD | New York City Department of Housing Preservation and Development |
| 13 | HRA | New York City Human Resources Administration |
| 14 | HUD | The U.S. Department of Housing and Urban Development |
| 15 | Law Department | New York City Law Department |
| 16 | Mayor's Office | The New York City Mayor's Office |
| 17 | OCA | New York State Office of Court Administration |
| 18 | OATH | New York City Office of Administrative Trials and Hearings |
| 19 | OTDA | The New York State Office of Temporary and Disability Assistance |
| 20 | Second Circuit | United States Court of Appeals for the Second Circuit |
| 21 | SUS | Services for the Underserved, Inc. |
| 22 | UCS | New York State Unified Court System |
| 23 | Urban | Urban Pathways, Inc. |

5.     I will refer to additional acronyms shown in the second column of the following table throughout this complaint to refer to relevant litigation involving me in which I have been a party or witness:

| # | Acronym | Litigation |
|---|---------|------------|
| 1 | K1 | *Komatsu v. City of New York*, No. 18-cv-3698 (LGS)(GWG)(S.D.N.Y. Sept. 27, 2021) |
| 2 | K2 | *Komatsu v. City of New York*, No. 21-cv-2470 (2d. Cir) |
| 3 | [1]K3 | *Komatsu v. City of New York*, No. 20-cv-7046 (ER)(GWG)(S.D.N.Y.) |
| 4 | K4 | *Komatsu v. City of New York*, No. 20-cv-6510 (LLS)(S.D.N.Y., Oct. 21, 2020) |
| 5 | K5 | *Komatsu v. City of New York*, No. 20-3676 (2d. Cir., Dec. 20, 2021) |
| 6 | K6 | *People v. Komatsu*, No. 2017BX048917 (Bronx Crim. Ct. Jan. 23, 2020) |

---

[1] K3 is a consolidated case.

| 7 | K7 | _Komatsu v. City of New York_, No. 20-cv-10942 (VEC) (RWL) (S.D.N.Y.) |
|---|---|---|
| 8 | My HRA appeal | _Komatsu v. New York City Human Resources Admin._, 2021 N.Y. Slip Op 3410 (App. Div. 2021) |
| 9 | [2]My HRA lawsuit | _Komatsu v. New York City Human Resources Administration_, No. 100054/2017, (Sup. Ct., New York Cty. Feb. 26, 2020). This was parallel litigation with respect to both K1 and litigation that I commenced against HRA that was assigned to OTDA. |
| 10 | OTDA: 7316477K | This was a fair hearing that I commenced against HRA in May of 2016 that was assigned to OTDA and originally included claims about storage expense reimbursement by HRA before I asserted additional claims against HRA that were added to this fair hearing's scope by Jackie Donovan while she worked for OTDA. |
| 11 | OTDA: 7406570N | This was a continuation of OTDA: 7316477K to which OTDA assigned the fair hearing number of 7406570N and was in response to the fact that **a)** HRA illegally refused to fully comply with OTDA's 9/15/16 fair hearing decision for OTDA: 7316477K that was issued in my favor about a storage expense matter and **b)** OTDA illegally refused to fully enforce the 9/15/16 fair hearing decision. |
| 12 | OTDA: 8227101K | This was a reinstatement by OTDA of **a)** OTDA: 7316477K and **b)** OTDA: 7406570N due to material new facts and to which OTDA assigned the fair hearing number of 8227101K. |
| 13 | Sullivan | _People v. Sullivan_, No. 2016BX042188 (Bronx Crim. Ct. Feb. 24, 2017) |
| 14 | Urban1 | _Urban Pathways, Inc. v. Komatsu_, No. LT-5572-19/BX (Civ. Ct., Bronx Cty., Nov. 25, 2019) |
| 15 | Urban2 | _Urban Pathways, Inc. v. Komatsu_, No. LT-8402-20/BX (Civ. Ct., Bronx Cty.) |

6.      The litigation that I have commenced against HRA that has been assigned to OTDA will collectively be referred to as "my OTDA litigation" in this complaint. References to "HRA" will be used throughout this complaint to interchangeably refer to DSS and DHS. DSS is the parent government agency of HRA and DHS. References to "FOIL" that appear in this complaint refer to New York State's Freedom of Information Law. The additional acronyms shown in the next table's second column refer to people to whom I refer in this complaint that are identified in that table's third column.

| # | Abbreviation | Corresponds To |
|---|---|---|

---

[2] My HRA lawsuit was a complex and multifaceted hybrid case that was comprised of an article 78 proceeding and plenary claims.

| 1 | Judge Bannon | New York State Supreme Court Judge Bannon |
|---|---|---|
| 2 | Judge Gorenstein | United States Magistrate Judge Gabriel Gorenstein who was assigned to K1 and is assigned to K3 |
| 3 | Judge Ostrager | New York State Supreme Court Judge Barry Ostrager |
| 4 | Judge Ramos | U.S. District Judge Edgardo Ramos who is assigned to K3 |
| 5 | Judge Schofield | U.S. District Judge Lorna Schofield who was assigned to K1 |
| 6 | Judge Stanton | U.S. District Judge Louis Stanton who was assigned to K4 |
| 7 | Judge Weissman | Bronx Housing Court Judge Steven Weissman |
| 8 | The Mayor | New York City Mayor Bill de Blasio |
| 9 | Mr. Banks | HRA Commissioner Steven Banks |

7.      OTDA recorded audio transcripts of all of the fair hearings that it conducted between

HRA and I. OTDA also maintains a web site that is available at

https://otda.ny.gov/hearings/search/ that the public may use to search for and read about fair

hearing decisions that it has issued since 11/1/10 by using search terms that include the fair

hearing decision numbers. OTDA redacts information for privacy reasons that are about the

appellants and their case numbers with social services agencies in New York State in those fair

hearing decisions that are available on its web site. The fact that HRA illegally didn't provide me

discovery material to which I was legally entitled partly pursuant to 18 NYCRR §358-3.7(b)(2)

that I ordered Mr. Banks and other personnel of HRA to provide to me prior to fair hearings that

OTDA conducted between HRA and I equitably causes fair hearing decisions that OTDA issued

about those fair hearings to be void due to estoppel and fraudulent concealment by HRA of

evidence and other discovery material to the extent that the findings in them were not in my

interests. Relevant information about laws, regulations, rules, and policies that apply to OTDA

fair hearings and how personnel of OTDA and HRA are required to conduct themselves in

relation to OTDA fair hearings and fair hearing decisions that OTDA issues appears in this

complaint's "Legal Standards" section beginning on or about page 30. Due to my privacy rights

that pertain to New York State Social Services Law §136(2) and 18 NYCRR §357, I will redact

confidential and otherwise sensitive information about me that appears in the exhibits that are

attached to this complaint and perhaps some screenshots that will be included in this complaint.

The additional acronyms shown in the next table's second column refer to things to which I refer

in this complaint that are identified in that table's third column.

| # | Abbreviation | Corresponds To |
|---|---|---|
| 1 | 374-page PDF file | The 374-page PDF file that I filed under seal on 9/25/19 in K1 in accordance with instructions by Judge Schofield. I received that file from the Mayor's office on 2/15/19 at 4:45 pm in an e-mail message in response to a FOIL demand that I submitted to it on 7/21/17. The Mayor's office assigned the FOIL identification code of FOIL-2017-002-00687 to that FOIL demand. |
| 2 | HRA's Bellevue Shelter | A facility located at 400-430 East 30th Street in Manhattan that HRA operates. |
| 3 | My fraudulent Urban lease | The fraudulent apartment lease agreement that I never signed and contains an illegally forged copy of my signature from my Urban lease. I was given that fraudulent lease on 3/7/16 by Andrew Nastachowski outside of the building in which I reside while he then worked for Urban That fraudulent lease is for room 1 within apartment 4B located in the building in which I reside. That fraudulent lease does not contain handwritten information on its first page. It also lists monthly rental amounts on its first page that differ from my Urban lease. |
| 4 | My HRA contract | The binding and fully-enforceable agreement dated 8/1/17 that Defendant Scalia e-mailed to me on 8/1/17 that **a)** I received at 5:58 pm on that date; **b)** she issued on HRA's behalf and her own, **c)** includes a remark at the end of it in which she explicitly stated that she would assist me "in any way possible", **d)** included her use of "we" in that remark to sufficiently express that she then bound the rest of HRA's personnel to the commitment of assisting me "in any way possible" that she expressed at the end of that agreement, **e)** didn't include any caveat, qualifying remark, disclaimer, nor expiration date in that agreement nor in the e-mail in which it was sent to me; and **f)** is governed by _Forcelli v. Gelco Corp._, 109 A.D.3d 244, 972 N.Y.S.2d 570 (App. Div. 2013), _Rex Medical LP v. Angiotech Pharmaceuticals (US)_, 754 F. Supp. 2d 616 (S.D.N.Y. 2010), and _The Carlton Group, LTD. v. Mirabella SG SpA_, No. 16-cv-6649 (LGS) (S.D.N.Y. July 19, 2018) that are discussed in greater detail in this complaint's "Legal Standards" section. |
| 5 | My Urban lease | The binding and fully-enforceable apartment lease agreement that I signed in the presence of witnesses on 2/16/16 with Urban's Lisa Lombardi in HRA's offices located at 33 Beaver Street in Manhattan to be issued sole possession of apartment 4C located in the building in which I reside shortly thereafter in a fully-furnished condition with no roommate. That lease contains handwritten information on its first page. |

8.      Urban is the slumlord of the building in which I reside and a business partner of HRA

with which it has a contract that enables Urban to be that slumlord. The building in which I

reside is hereinafter referred to as "my building" and was described as a "scatter-site" shelter by

an attorney for Urban named Harold Rosenthal during a court hearing that Judge Weissman

conducted on 10/10/19 in Urban1 while that hearing was recorded on audio. I discuss this in

greater detail in this complaint's "Legal Standards" section. Scatter-site housing is widely

regarded as a type of homeless shelter instead of being permanent housing or supportive housing.

9.      All references that appear in this complaint that refer to "my Urban apartment" refer to

the apartment in which I reside in which I have continuously resided since March of 2016. All

references that appear in this complaint that refer to "the B&S" refer to the illegal bait-and-

switch fraud and forgery that personnel of HRA and Urban jointly and criminally perpetrated

against me that concern the binding and fully-enforceable apartment lease agreement that I

signed on 2/16/16 with Lisa Lombardi of Urban inside of DHS' offices that are located at 33

Beaver Street in Manhattan in the presence of witnesses in a small conference room to be issued

sole possession shortly thereafter by Urban of the entirety of apartment 4C that is located in the

building in which I reside with no roommate and in a full-furnished condition. The B&S is

largely the result of the fact that a report that is known as an "evidence packet" that I received on

2/8/17 from HRA that is comprised of records that HRA has maintains about me contains

information that clearly and sufficiently indicates that at least one of HRA's personnel whose last

name is Benjamin-Solis and first name begins with "K" illegally changed a substantial part of the

binding and fully-enforceable apartment lease agreement within 2 days after 2/16/16 that I

signed on 2/16/16 with Ms. Lombardi by changing the apartment number in that lease agreement

without my knowledge consent that absolutely was needed in order to have lawfully changed

that. The following screenshot from that report clearly proves this point:

| 2/18/2016 | Error Correction | Benjamin-Solis,K | Correction to Aprtment number |
|-----------|------------------|-------------------|-------------------------------|

10.     If HRA's personnel had wanted to record information about me to indicate that I had moved or was about to move to a new location that was located at a different street address from where I previously or was then residing, then its personnel could have recorded "Correction to street address" in records that HRA has maintained about me. However, HRA's personnel clearly recorded information in such records that HRA maintains about me that states "Correction to Aprtment number" while fraudulently describing that as having been a correction instead of an illegal change to my apartment lease by HRA's personnel. HRA's personnel periodically participate in disciplinary hearings and are disciplined for not complying with applicable laws, rules, policies, and regulations that include HRA's Code of Conduct. For example, the following is a link to a PDF file on the Internet that contains information about a decision that was issued on 10/31/13 by an OATH administrative law judge that concerned a disciplinary hearing that was held and a disciplinary action that was taken against one of HRA's personnel partly for violating privacy rights:

http://archive.citylaw.org/wp-content/uploads/sites/17/oath/08_Cases/13-2246.pdf

11.     The fact that HRA's personnel have steadfastly, continuously, and illegally refused to provide me further information about the illegal change that was made by its personnel to my apartment lease agreement within 2 days after 2/16/16 is clearly indicative of a criminal cover-up by HRA's personnel about the fact that HRA's personnel were highly involved in committing the B&S jointly with Urban against me that has caused me so much harm.

12.     All references that appear in this complaint to "my storage bills" refer to the costs that I

paid to a storage company named Cubesmart that operates a storage facility that is located at 33-24 Woodside Avenue in Queens, New York to rent the storage unit of 6006 while I resided in my Urban apartment for the storage unit rental period of May of 2016 thru July of 2016 that totaled $1,296.70 while I was eligible and entitled as a straightforward matter of law pursuant to 18 NYCRR §352.6(f), 24 C.F.R. §578.3, and my Fourteenth Amendment equal protection rights to have HRA to perform its legal duty to pay for those expenses instead of me. All payments that HRA has made for storage unit rental expenses on my behalf were made to Cubemart and were for my rental of the storage unit of 6006 while I resided in my Urban apartment.

13.     My OTDA litigation was partly comprised of fair hearings that OTDA held between HRA and I on dates shown in the next table's first column. I have caused OTDA's audio recordings of those hearings that it provided to me to be available on the Internet at the locations shown in this table's second column. Those hearings concerned my efforts to have OTDA compel HRA to perform its legal duty to reimburse me for my storage bills that I paid strictly because HRA fraudulently induced me to do so by having fraudulently denied an application that I submitted to it in May of 2016 to have it perform its legal duty to do so instead.

| Hearing Date | Fair Hearing Number | Audio Recording |
|---|---|---|
| 9/7/16 | 7316477K | https://drive.google.com/open?id=1q-JjwlU9ERwW_SHacpSF0FoJmm-7Dc8v |
| 4/11/17 | 7406570N | https://drive.google.com/open?id=1jXvEV3LDCKkzWhKJSTRUer9ONgdFZCMt |
| 12/23/20 | 8227101K | https://drive.google.com/open?id=1q-JjwlU9ERwW_SHacpSF0FoJmm-7Dc8v |
| 2/9/21 | 8227101K | https://drive.google.com/file/d/1ZGRPdQD16Gfg_GpFZzyZZCyh2Yxza7Vs/view?usp=sharing |

14.     All references that I make in this affidavit to "OTDA's 9/15/16 decision" refer to OTDA's 9/15/16 fair hearing decision for fair hearing number 7316477K. The discussion that I present in the subsections within the "Background Facts" section in this complaint contains

sufficient information about constitutional deficiencies that unduly and substantially prejudiced

how both my OTDA litigation and my HRA lawsuit's article 78 component were conducted that

confirms that all of that litigation **a)** was conducted in bad-faith as a result of illegal and

otherwise abusive and biased acts and omissions against me that were committed by the judges,

hearing officers, administrative law judges, OTDA administrators, and HRA personnel who were

involved in that litigation in various ways, caused me to be harassed by such misconduct by

those personnel, and caused me substantial and irreparable injuries partly to my First

Amendment and Fourteenth Amendment rights. This means that those circumstances satisfy the

criteria for the exceptions to the Younger Abstention doctrine to allow this court to accept

jurisdiction about ongoing matters that are closely related to my OTDA litigation and my HRA

lawsuit that partly concern violations of my federal constitutional rights and acts of wire fraud.

15.      New York City is on the precipice of major change that will occur with the government

personnel of the City of New York. A new New York City Mayor and his administration are

scheduled to start work on 1/1/22. One of worst things that can happen for New Yorkers is to

have criminals continue to hold positions of power and influence in the City of New York's

government for obvious reasons. The same is true about letting trash in politics rise like smoke

and spread throughout New York State's government following a futile attempt to occupy the

position that Joe Biden currently holds as the U.S. President. Such smoke and the stench from it

needs to blown to a prison instead and permanently kept there. Through this lawsuit, some of the

things that I seek to immediately achieve include having this Court immediately issue orders that

grant me declaratory, injunctive, and equitable relief that befits the public's interest partly by

causing me to be immediately provided the entirety of the discovery material that I previously

ordered HRA's personnel to provide to me that I haven't been provided in furtherance of a

criminal cover-up and conspiracy by people who wish to avoid prison and other massive liability

that partly stems from acts of voter fraud, voter suppression, and whistleblower retaliation in

violation of the Voting Rights Act and federal constitutional rights that enabled such criminals

and their fellow mobsters in politics to keep their jobs in politics following the 2017 New York

City government elections and otherwise enabled them to illicitly be promoted to jobs in New

York State's government and the federal government. This isn't an exaggeration at all. I already

have discovery material that I received on 2/1/21 from K1 that consists of e-mail messages that

confirms what I just discussed. The fact that my claims in K1, my HRA lawsuit, and my OTDA

litigation revolve around a common nucleus of operative facts with respect to root causes for

illegal acts and omissions that were committed against me and manifested themselves as acts and

omissions that were committed against me about which I asserted claims in my HRA lawsuit,

K1, and K3 prove my point about the fact that all of that is inextricably intertwined in much the

same way that having chewing gum get stuck in someone's hair oftentimes requires a major

haircut to change that.

16.    Since the B&S that I experienced is the proximate cause for all of the following, that

confirms that it's a key root cause for claims that I asserted in my OTDA litigation, my HRA

lawsuit, K1, and K3 were and/or remain about:

    a.    Why I had to continue to rent a storage unit after March of 2016 partly because

the amount of property that I stored in it exceeded the storage space that the B&S left me with in

the shared apartment in which I resided with a roommate who was stealing property of mine.

    b.    Why it was possible and probable for me to be assaulted in the apartment in

which I reside in the building in which I reside that did, in fact, occur on 7/2/16 instead of the

private apartment that I would have otherwise resided in within my building that would not have

allowed that to be possible nor probable.

       c.     Whistleblowing and litigation activity that I engaged in since 2016 that people in politics in the City of New York's government realized was a major threat to their job security and opportunities for advancement.

17.    Remarks that were made by Defendant Redmond and other members of the Mayor's NYPD security detail to the CCRB during interviews that the CCRB conducted of them in response to entirely valid complaints that I reported against them also connect the illegal acts and omissions that such NYPD personnel committed against me that my claims in my HRA lawsuit, K1, and K3 have been about to claims that pertain to repercussions from the B&S that additional claims in my HRA lawsuit and my OTDA litigation have been about. I received audio recordings from the CCRB on 3/19/21 of those interviews.

18.    As I alluded to above, this Court can't legitimately rely on the presumption that state-court article 78 proceedings offer a suitable forum that is in full compliance with my constitutional rights, other applicable laws, regulations, rules, and policies because I previously experienced substantial, prejudicial, and irreparable harm as a result of repeated acts of judicial misconduct that were committed by Judge Bannon in my HRA lawsuit while she was assigned to my article 78 claims in that hybrid case.

## Jurisdiction and Venue

1.    I incorporate my remarks in the preceding "Preliminary Remarks" section by reference as though fully set forth herein for the purpose of stating how and why this Court has jurisdiction over matters that are the subject of this action.

2.    This Court has subject matter jurisdiction over federal claims pursuant to 28 U.S.C. §1331 and my claims in this case are partly about continuing violations of my rights under the

U.S. Constitution and federal statutes that include 18 U.S.C. §1341 and 18 U.S.C. §1343. During

the course of my OTDA litigation and my HRA lawsuit, HRA personnel made claims about what

is meant by "permanent housing" that directly, substantially, and impermissibly conflict with

how "permanent housing" is defined by 24 C.F.R. §578.3 and HRA's personnel pretextually

violated the U.S. Constitution's Supremacy Clause by doing so. The violation of the Supremacy

Clause is a federal controversy. HRA's personnel did so in furtherance of a conspiracy and

scheme by them to enable HRA to fraudulently avoiding having to perform HRA's legal duty to

pay for storage unit rental expenses on my behalf while I resided where I still reside and

otherwise reimburse me for storage unit rental expenses that I paid while I resided where I still

reside that HRA fraudulently induced me to pay..

3.      Venue is proper pursuant to 28 U.S.C. §1391(b) because I am a resident of Bronx County

in the State of New York.

4.      An award of costs and attorneys' fees is authorized pursuant to 42 U.S.C. §1988.

5.      This Court has supplemental jurisdiction over my claims under New York law for the

following reasons:

        a.      The manner in which my HRA lawsuit, my HRA appeal, and the litigation that I

commenced against HRA that has been assigned to OTDA has been conducted has been in bad

faith with major misconduct by the judges, hearing officers, administrators, and opposing

counsel in them that has caused me to be repeatedly harassed by their illegal and abusive acts

and omissions that have caused me substantial and irreparable injuries in a multitude of ways on

numerous dates partly by having my HRA lawsuit illegally dismissed on 1/31/18 by Judge

Bannon while I continued to have claims that were pending to be addressed in it by a different

judge satisfies the criteria for federal court intervention over such state-court matters.

b.      Since my HRA appeal is pending, that means that the litigation that began with my HRA lawsuit hasn't fully run its course and is instead now ongoing through the appellate process. This means that this Court has power pursuant to *ex Parte Young*, 28 U.S.C. §1367, and 28 U.S.C. §1651 to exercise supplemental jurisdiction over related matters to befit the interests of judicial economy. While my HRA appeal was pending a decision by the Appellate Division, it irrationally refused to issue an order that would cause me to be provided an identical copy of discovery material that I received on 2/1/21 in K1 from the Law Department. That material substantiates claims that I asserted in K1, K3, and my HRA lawsuit. However, that material is subject to the irrational and contumacious 1/15/21 confidentiality order that Judge Gorenstein issued in K1. That order prohibits me from using that material in matters that aren't connected to K1. It's my belief that that restriction doesn't let me use that material outside of K1 and K2. Judge Gorenstein issued that 1/15/21 confidentiality order after he previously worked as HRA's General Counsel. That fact required him to recuse himself from K1 because my claims in K1 were about illegal acts that were committed me that were driven by a retaliatory and discriminatory animus that has long been maintained against me by Mr. Banks and other City of New York personnel in response to protected First Amendment activity that I lawfully engaged in against Mr. Banks, HRA, and HRA's business partners through whistleblowing, criticism, and litigation. Judge Gorenstein contumaciously denied my requests to recuse himself and instead followed me to K3 to which he is also assigned like a swarm of mosquitoes to infect K3 with his bias and prejudice as well.

c.      My claims under New York law are so related to the within federal claims that they form part of the same case or controversy pursuant to 28 U.S.C. §1367(a). The exercise of supplemental jurisdiction over state-court and OTDA fair hearing matters is also appropriate for

reasons that concern deficiencies with how personnel of HRA and OTDA conduct themselves in their official capacities as such personnel while violating constitutional rights as well as the fact that an article 78 proceeding about such deficiencies that I previously commenced proved to be a sham that was conducted in ways that repeatedly violated my constitutional rights and other laws.

### Parties

1.      I am a resident of Bronx County in the State of New York. I am also atrociously cursed, experiencing ongoing violations of my rights by defendants in this case, smart, industrious, a blacklisted U.S. Navy veteran, legal guardian for my mother, whistleblower and pariah thanks to that. I'm also experiencing excruciating torture by the passing of my father 3 months ago in Japan and in dire need of pro-bono legal representation for this case and other litigation I'm involved in.

2.      Defendant City is a municipal corporation.

3.      The defendants listed in the following table at all times relevant herein both **a)** were employees of the City of New York and **b)** worked for the agencies of the City of New York that are shown next to their names in that table:

| # | Agency | Names |
|---|--------|-------|
| 1 | CAU | Marco Carrion |
| 2 | HRA | Nicola Aaronson, Steven Banks, Kristin Benjamin-Solis, Martha Calhoun, Marin Gerber, Gary Jenkins, Raquel Lucas, Jeffrey Mosczyc, Ann Marie Scalia, Avraham Schmeidler |
| 3 | Mayor's Office | Kayla Arslanian, Michael Casca, Andrea Hagelgans, Eric Phillips, Jessica Ramos, Jaclyn Rothenberg, Emma Wolfe |
| 4 | NYPD | Howard Redmond |

4.      Marco Carrion was the commissioner of the CAU at all times relevant herein.

5.      Mr. Banks is DSS' Commissioner. Martha Calhoun is DSS' General Counsel. Ann Marie Scalia is DSS' Deputy General Counsel. Nicola Aaronson, Marin Gerber, and Jeffrey Mosczyc

are other attorneys who work for HRA. Avraham Schmeidler works for HRA's FOIL office.
Raquel Lucas worked for Mr. Banks as a Special Assistant in 2017. Kristin Benjamin-Solis
worked for HRA, but I don't know what her job title was. I don't know what Mr. Jenkins exact
function is within HRA.

6.      Jaclyn Rothenberg and Jessica Ramos flagrantly violated my Fourteenth Amendment
rights and privacy rights on 6/28/17 by violating the sealing order that Judge Ostrager issued on
my behalf on 1/17/17 in my HRA lawsuit. He issued that sealing order in response to a request
that I made. Ms. Rothenberg and Ms. Ramos violated that sealing order by illegally **a)** having
access to information about my HRA lawsuit and **b)** communicating that information then Kayla
Arslanian, Marco Carrion, Michael Casca, Andrea Hagelgans, Eric Phillips, Howard Redmond,
and Emma Wolfe. Those who Ms. Ramos and Ms. Rothenberg disclosed that information to also
violated those rights of mine that pertain to privacy and the Fourteenth Amendment's equal
protection and due process provisions in regards to other litigants who are granted sealing orders
that aren't violated as well as that sealing order's terms that restricted access to information
about my HRA lawsuit to me, authorized HRA personnel, and limited number of personnel of
the New York State court system. Unknown personnel of HRA must have illegally disclosed
information about my HRA lawsuit to Ms. Rothenberg and Ms. Ramos on or prior to 6/28/17
before Ms. Rothenberg and Ms. Ramos then illegally shared that information.

7.      Roy Esnard, Nigel Marks, Samuel Spitzberg, Konstantin Pertas, H. Cooper Gregory,
Krista Rock, Joab Okello, and Daniel Tietz are personnel who work for OTDA and/or are
scheduled to soon. OTDA published an organization chart as a PDF file that is useful for
identifying the jobs that some of its personnel who I just identified have with OTDA and how
their jobs relate to others who work for OTDA. That organization chart is available at

https://otda.ny.gov/about/OTDA-Organization-Chart-21-04-19.pdf. The only people who I just identified who work for OTDA or is scheduled to soon work for it who don't appear in that organization chart are H. Cooper Gregory, Joab Okello, and Daniel Tietz. H. Cooper Gregory is someone who works for OTDA who issued the 3/22/21 fair hearing decision for OTDA fair hearing number 8227101K that was for a fair hearing between HRA and I about storage unit rental expenses. Joab Okello is someone who works for OTDA as an administrative law judge. He issued the fair hearing decisions for OTDA fair hearing numbers 7316477K (issued on 9/15/16) and 7406570N (issued on 4/19/17) that were also about fair hearings between HRA and I about storage unit rental expenses. Roy Esnard is a deputy commissioner for OTDA and works for its Office of Administrative Hearings ("OAH"). Nigel Marks and Samuel Spitzberg also work for OAH as an assistant director and director, respectively. Konstantin Pertas works for OTDA as a principal hearing officer. Daniel Tietz is scheduled to become OTDA's new commissioner and previously worked for HRA. Krista Rock is OTDA's General Counsel.

8.      At all times relevant herein, the following individual defendants were acting under the color of law through their acts and omissions that were inside and outside of the course and scope of their duties and functions as agents, servants, employees, contractors, consultants and/or officers of the City of New York. They were acting for and on behalf of the City of New York at all times relevant herein:

> Nicola Aaronson, Kayla Arslanian, Steven Banks, Martha Calhoun, Marco Carrion, Michael Casca, Marin Gerber, Andrea Hagelgans, Raquel Lucas, Jeffrey Mosczyc, Eric Phillips, Jessica Ramos, Howard Redmond, Jaclyn Rothenberg, Ann Marie Scalia, Avraham Schmeidler, Emma Wolfe

9.      At all times relevant herein, the following individual defendants were employees of the State of New York who were acting under the color of law through their acts and omissions that were inside and outside of the course and scope of their duties and functions as they operated as

agents and servants of the City of New York. They were acting for and on behalf of both the State and City of New York at all times relevant herein:

> Roy Esnard, Nigel Marks, Samuel Spitzberg, Konstantin Pertas, H. Cooper Gregory, Krista Rock, Joab Okello

10.     With the exceptions of Roy Esnard and Daniel Tietz, the individual defendants' acts hereafter complained of were carried out in multiple ways and on multiple dates intentionally, recklessly, oppressively as well as with malice and with egregious, callous, and wanton disregard of my rights.

11.     At all relevant times, the individual defendants were engaged in joint ventures to varying degrees as they assisted each other in performing the various actions described herein and lending their physical presence and support and the authority of their offices to one another.

### Summary of My Claims in This Case

1.     Illegal acts and omissions by OTDA personnel against me in violation of my constitutional rights and other applicable laws, regulations, policies, and rules that concern OTDA's fair hearing program partly with respect to **a)** my rights to discovery material; **b)** my right to participate in fair hearings face-to-face instead of remotely; **c)** First Amendment retaliation; **d)** res judicata, the law-of-the-case doctrine, and estoppel; **e)** OTDA's illegal failure to fully enforce fair hearing decisions that are issued by its personnel; **f)** OTDA having illegally and substantially changed the agenda for a 4/11/17 fair hearing that it conducted between HRA and I without any prior notice about that change having been provided to me that caused me to be illegally blindsided by that change during that hearing in flagrant violation of my right to be able to properly prepare in advance for that hearing; **g)** OTDA's failure to fully comply with and enforce relevant laws and earlier precedential fair hearing decisions that OTDA issued that apply to fair hearing decisions that OTDA thereafter issued.

2.      A decision that was made by one or more personnel of OTDA to illegally ban me from being able to participate in fair hearings that would be conducted within its offices that are located at 14 Boerum Place in Brooklyn without proper due process and in retaliation for protected First Amendment activity that I engaged in against OTDA and HRA personnel.

3.      How personnel of HRA have engaged in illegal acts and omissions in relation to me and fair hearings that OTDA has conducted between HRA and I that substantially and unduly prejudiced my rights pursuant to the First Amendment and Fourteenth Amendment to obtain discovery material for use in fair hearings as well as in parallel and other related litigation; testimony that I gave or would have otherwise presented in public hearings; and during communications with the public, journalists, prosecutors, and other government investigative bodies.

4.      Ongoing harassment of me by personnel of HRA through their illegal and otherwise abusive acts and omissions that constitute continuing violations partly in relation to illegal acts that personnel of the City of New York committed against me in April of 2017 that are related to what were my claims in my HRA lawsuit and my OTDA litigation, cause equitable tolling to apply to claims in this case against HRA personnel, and partly include illegal acts by HRA that caused me to not be prevented the full amount of a government benefit that HRA was required to provide to me in full on 10/22/21 that it instead cancelled the issuance of on that date while I then had ongoing litigation against Mr. Banks and other personnel of HRA and was relying on receiving that benefit in full on 10/22/21 to prepare for a public resource fair meeting that was held on 10/28/21 that Defendant Jenkins and I both attended.

5.      Ongoing failure by Defendant Scalia and other personnel of HRA to fully and continuously comply with the binding, fully-enforceable, and permanent agreement that she

issued to me on 8/1/17 on HRA's behalf and her own in which she explicitly stated that she and others would assist me "in any way possible" while the context of that letter sufficiently indicates that the others that she was then referring to were the rest of HRA.

6.      Ongoing failure by HRA's personnel to perform the legal duty that they have to me pursuant to 18 NYCRR §352.23(a) to try to enable me to become self-sufficient by using the resources of HRA to try to eliminate my need for public assistance while that circumstance make it objectively reasonable to infer that I am being illegally blacklisted from employment opportunities that are with the City of New York while also being denied access to legal assistance and other housing options that HRA is legally required to make available to me.

7.      Violations of my privacy rights by current and former City of New York personnel in my HRA lawsuit that existed due to the sealing order that Judge Ostrager issued in that case on 1/17/17 that granted me sealing for that case and the ability to proceed in it anonymously.

8.      Violations of my privacy rights by current and former City of New York personnel that concern government benefits that I sought to be provided by HRA in violation of New York State Social Services Law §136(2) and 18 NYCRR §357 as well as my Fourteenth Amendment rights.

9.      Acts of mail and wire fraud by HRA personnel that were in furtherance of a scheme to pretextually deny me government benefits to which I'm entitled and are exempt from government attorney immunity because that wasn't advocacy work.

10.     Illegal gamesmanship by Defendant Mosczyc that caused my 4/12/17 oral arguments hearing in my HRA lawsuit to be stolen from me by him and Judge Bannon. That also wasn't advocacy work nor valid litigation work. This is because that violated applicable laws and rules about how adjournments can lawfully be sought. For that reason, that also isn't protected by government attorney immunity.

11.     Failures by current and former City of New York personnel to perform their legal duties

pursuant to their constitutional oaths of office and New York City Mayoral Executive Order 16 to report conflicts of interest, waste, and corruption partly related to HRA and Urban that I reported to them to cause them to properly intervene on my behalf about those matters while they were required by New York City Mayoral Executive Order 16 to report what I disclosed to them about that to DOI or an inspector general and their constitutional oaths of office required them to perform their duties as personnel of the City of New York in full compliance with the U.S. and New York Constitutions and to the best of their abilities.

12.     Illegal and/or abusive acts and omissions by current and former City of New York personnel that were committed against me that violated New York City Conflict of Internet Board Rule §1-17 that concerns accomplice liability, NYC Charter §2604, NYC Charter §1116, New York State Public Officer Law §195.00 that causes it to be appropriate for this Court to grant me declaratory, equitable, and injunctive relief against them pursuant to New York State Public Officer Law §30(1)(f) and (1)(g) as well as NYC Charter §1116 that declares that they're incompetent, the elections and/or appointments that have caused them to be government personnel of the City of New York are void, they have forfeited their jobs as City of New York personnel, they violated their duties as City of New York personnel, and they are permanently barred from being employed by the City of New York in any capacity.

## Legal Standards

1.     Judge Ramos explicitly stated the following in his 4/1/21 memo endorsement (Dkt. 125) in K3:

> "Any claims arising out of the OTDA fair hearing process are beyond the scope of this case"

2.     On 5/13/20, Judge Schofield issued an order (Dkt. 352) in K1 in which she stated the following:

"Plaintiff must file new civil actions without Court intervention."

3.     What she meant by that remark was that she was refusing to allow me to add further claims and defendants in K1 that related back to, amplified, and clarified my claims in K1 in defiance of FRCP Rule 15 and was instead requiring to commence new federal civil actions for that purpose if I sought to pursue such claims. She then reinforced that by stating the following in the order (Dkt. 391) that she issued on 7/13/20 in K1:

> "Nothing in this Order prohibits the Plaintiff from commencing a new case to raise matters unrelated to this case, or from making filings in any other cases that may already be pending."

4.     Findings from _Dolan v. Connolly_, No. 13-cv-5726 (GBD)(GWG) (S.D.N.Y. Mar. 2, 2017) confirm that this Court may adopt relevant findings from court decisions that have been issued within and beyond the Second Circuit that clearly foreshadow a ruling about particular matters.

5.     _Perkins v. Perez_, No. 17-cv-1341 (KMK) (S.D.N.Y. Mar. 18, 2019) includes findings that confirm that lengthy legal filings must not be rejected simply because they're lengthy. In fact, _Trahan v. Lazar_, 457 F. Supp. 3d 323 (S.D.N.Y. 2020) confirms that **a)** complaints that are longer than they need to be don't warrant dismissal when they don't "overwhelm the defendants' ability to understand or to mount a defense" and **b)** refers to an instance in which a judge refused to dismiss a complaint that was 368 pages in length with 1,249 paragraphs "even where it was "an undue imposition on all who [were] obliged to read it"".

6.     _Triestman v. Federal Bureau of Prisons_, 470 F.3d 471 (2d Cir. 2006) requires judges to construe and interpret my claims in my pleadings in litigation while I am a pro se litigant in them to raise the strongest arguments that they suggest and to grant me special solicitude.

7.     The following excerpt from _Dornberger v. Metropolitan Life Ins. Co._, 961 F. Supp. 506

(S.D.N.Y. 1997) confirms that plaintiffs are entitled to plead their claims upon information and

belief:

> "It is well-established that a plaintiff may plead on information and belief when facts are peculiarly within the defendant's knowledge, so long as the plaintiff alleges the facts on which such belief is based. *See DiVittorio v. Equidyne Extractive Indus., Inc.,* 822 F.2d 1242, 1247 (2d Cir.1987). Clearly, the precise time, place, and speaker of the many false statements allegedly made by MetLife personnel from 1957 to 1995 are matters peculiarly within MetLife's knowledge."

8.     *Hack v. President and Fellows of Yale College*, 237 F.3d 81 (2d Cir. 2000) includes the

following relevant findings:

>   a.   "The district court has a duty to consider whether a plaintiff's allegations could provide relief under any available legal theory."
>
>   b.   "complaint does not have to state a legal theory and specification of an incorrect theory is not fatal"

9.     The following excerpt from *Kassner v. 2nd Avenue Delicatessen Inc.*, 496 F.3d 229 (2d

Cir. 2007) confirms that the Second Circuit recognized a plaintiff's implied claims:

> "we conclude that the district court properly dismissed Kassner's claims of alleged discriminatory assignments, erred in dismissing her implied claims of hostile work environment"

10.     The following excerpt from *Bomani v. Baraka*, Civ. No. 20-655 (KM)(ESK) (D.N.Y.

Dec. 30, 2020) confirms that a federal judge recognized a plaintiff's implied claims:

> "The complaint does not explicitly identify a cause of action. I construe the complaint as asserting a First Amendment "right to speak" claim under 42 U.S.C. § 1983, and state law tort claims of assault or negligence."

11.     *Thompson v. Carter*, 284 F.3d 411 (2d Cir. 2002) confirms that the liberal pleading

standards applicable to *pro se* civil rights complaints in this circuit require district courts to give

pro se plaintiffs an opportunity to flesh out their somewhat skeletal complaints before dismissing

them.

12.     *US v. Sawyer*, 907 F.3d 121 (2d Cir. 2018) confirms all of the following about the fact

that judges are required to properly articulate the rationale for the decisions that they issue:

a.  We look first at the *reasons* given by the district court to explain its decision. Giving reasons is mandatory. "Most obviously, the requirement helps to ensure that district courts actually consider the statutory factors and reach reasoned decisions."

b.  "Requiring a statement of the courts' reasoning encourages public confidence in federal courts and the fair administration of justice. *Id.*; *Rita v. United States,* 551 U.S. 338, 356, 127 S.Ct. 2456, 168 L.Ed.2d 203 (2007) ("Confidence in a judge's use of reason underlies the public's trust in the judicial institution."). Moreover, in the absence of reasons, appellate review of the basis of the decision is severely hampered. "We cannot uphold a discretionary decision unless we have confidence that the district court exercised its discretion and did so on the basis of reasons that survive our limited review. Without a sufficient explanation of how the court below reached the result it did, appellate review of the reasonableness of that judgment may well be impossible."

13.  *Carroll v. US Equities Corp.*, No. 18-cv-667 (TJM/CFH) (N.D.N.Y. Sept. 24, 2019) states that in order for a claim to be precluded due to res judicata, that requires "the party against whom it is applied" to have" "had a full and fair opportunity to litigate the claim". The judge in that case determined that a record supported the plaintiff's claim that he didn't "have a full and fair opportunity to litigate in the Kingston City Court."

14.  In *Martin v. Masse*, No. 9:19-cv-0536 (TJM)(CFH)(N.D.N.Y. January 30, 2020), the judge who issued that decision ruled in favor of the plaintiff by denying the defendants' claim preclusion application partly upon the grounds that that judge couldn't determine whether the plaintiff was granted "a full and fair opportunity to litigate his claim" and nothing in the record of that case indicated whether that plaintiff was provided with discovery and had the opportunity to present and cross-examine witnesses. The fact that I have been pretextually denied a "full and fair opportunity to litigate" my claims against HRA, Urban, and the City of New York in my HRA lawsuit, my HRA appeal, my OTDA litigation, Urban1, Urban2, K4, K5, and other related litigation because I have illegally not been provided discovery material by HRA that I have long

sought from it and its personnel equitably causes estoppel and res judicata not to apply to my

claims in this case.

15.     _HRD Corporation v. Dow Chemical Company_, Civil action No. H-13-3596 (S.D. Tex.

Jan. 9, 2019) includes the following relevant excerpts about claim preclusion:

        a.      Claim preclusion is an equitable doctrine with limits and exceptions. HRD cites
Rimkus Consulting Group, Inc. v. Cammarata, 688 F. Supp. 2d 598 (S.D. Tex. 2010), for the
proposition that "[i]f a claim could not have been brought because of wrongful concealment of
material facts, preclusion cannot apply."

        b.      "In Rimkus the defendants destroyed evidence of their culpability and provided
information in discovery to conceal the destruction of that evidence. 699 F. Supp. 2d at 664.
Because of the defendants' spoliation of evidence, the plaintiff was unable to learn of certain
claims it had against the defendants. The court concluded that because of the defendants'
misconduct, the policies underlying preclusion law would not be served by barring the plaintiff's
claims against the defendants."

16.     As I briefly discussed in this complaint's "Preliminary Remarks" section, my building

was described as a "scatter-site" shelter by an attorney for Urban named Harold Rosenthal during

a court hearing that Bronx Housing Court Judge Steven Weissman conducted on 10/10/19 in

Urban1 while that hearing was recorded on audio. I thereafter obtained the audio transcript of

that court hearing that I have made available at

https://drive.google.com/file/d/1nJ06sRRrs5AaPASnXoM0qUkg8SBGlJ9/view?usp=sharing.

Mr. Rosenthal is heard in that recording at the elapsed time of 3 minutes and 35 seconds as he

told Judge Weissman that my building is a "scatter-site".

17.     Prior to that 10/10/19 hearing in Urban1, Judge Weissman conducted a hearing in it on

3/27/19. I also obtained the audio transcript of that hearing. I thereafter obtained the audio

transcript of that court hearing that I have made available at

https://drive.google.com/open?id=1ye1AC4RIH4X7Eb1eeiArq-LpoG24VmKt. What follows is

a table that states and otherwise describes critically significant remarks that Judge Weissman and

I said to one another during that 3/27/19 hearing about the B&S that HRA and Urban jointly

perpetrated against me:

| # | Speaker | Remarks | Elapsed Time |
|---|---------|---------|--------------|
| 1 | Me, Judge Weissman | Remarks that I made in which I asked Judge Weissman if he would issue a subpoena on my behalf against HRA to compel it to provide me pertinent records for Urban1. In response, though Judge Weissman is heard confirming that he could do so, he wrongfully neglected to do so in Urban1 before he dismissed Urban1. | 6 minutes and 17 seconds |
| 2 | Judge Weissman | "I don't have authority to determine that. That is beyond my jurisdiction. This Court cannot determine the validity of the lease. It can determine if a lease exists, but not the validity of the lease itself." | 7 minutes and 1 second |
| | Judge Weissman & I | He asked me if I filed litigation with the New York State Supreme Court in Manhattan or with federal court concerning matters that I was discussing with him about HRA and Urban. After I told him that I had filed parallel litigation with both of those courts, he told me that one of those courts would be suitable for addressing those matters instead of him. | 9 minutes and 2 seconds |
| | Me | I told him that I had a copy of the contract that HRA issued to Urban that enables Urban to be the slumlord of my building. I received that contract from HRA in response to a FOIL demand that I submitted to it. | 9 minutes and 8 seconds |
| 3 | Judge Weissman | "But a Supreme Court judge would have to determine what the parameters are and whether or not there's a valid lease. If they determine there's no valid lease, then this case goes away."<br><br>Between the elapsed times of **a)** 9 minutes and 39 seconds and **b)** 10 minutes and 20 seconds in that audio transcript, I'm heard talking with Judge Weissman about the fact that Urban provided me paperwork that materially contradicted information in the legal papers its lawyers filed to commence Urban1 by indicating that I resided in a different apartment than the apartment that Urban1 concerned. In response, Judge Weissman is heard in that audio transcript as he stated the following additional critically significant remarks to me at the elapsed time of 9 minutes and 54 seconds: | 9 minutes and 29 seconds |

| 3 | Judge Weissman | "That could come into this case. If their papers are incorrect about what apartment you're in or contradictory, that could come into this case…that might be an issue that a court…judge here would say…well, we…you don't know where he lives, we don't know where he lives and we can't determine what he owes in rent because we don't know what apartment he's in. So that…that issue, if you have documentation…could come in. But not now. It could be a motion on that or it could be an issue at trial." | 9 minutes and 54 seconds |

18.     The simple fact that Urban2 is essentially stayed and remains pending after **a)** I clearly sought to have Judge Weissman grant a subpoena in Urban1 that would compel HRA to provide me discovery material related to the B&S and **b)** Judge Weissman dismissed Urban1 without granting that subpoena after stating on 3/27/19 in Urban1 that he could possibly do so establishes that Urban1 wasn't sufficiently conducted in good-faith because I wasn't granted that subpoena. That fact and circumstance as well as the fact that Judge Weissman stated on 3/27/19 that it might be suitable for a federal court to address matters that were related to Urban1 that he wouldn't address in that case establishes the fact that claims that I'm asserting in this case and relief that I'm seeking in it is appropriate.

19.     When Judge Stanton dismissed K4, he prejudicially ignored the following findings from *Trebor Sportswear Co. v. The Ltd. Stores, Inc.*, 865 F.2d 506 (2d Cir. 1989) that concern the fact that though I diligently attempted to be provided relevant discovery material from HRA with which I could far better substantiate my claims in K4, HRA's personnel engaged in criminal obstruction of justice to pretextually impede my ability to prevail on the merits in litigation about claims of mine that were against HRA, the City of New York, their personnel, Urban, and Urban's personnel:

     a.    "summary judgment "may be inappropriate where the party opposing it shows ... that he cannot at the time present facts essential to justify his opposition."

b.   "The nonmoving party should not be "railroaded" into his offer of proof in opposition to summary judgment."

c.   "The nonmoving party must have "had the opportunity to discover information that is essential to his opposition" to the motion for summary judgment."

20.   In _DaCosta v. City of New York_, 296 F. Supp. 3d 569 (E.D.N.Y. 2017), U.S. District Judge Jack Weinstein made stellar remarks about the fact that courts are not to dismiss cases when the plaintiff haven't been able to engage in sufficient discovery to substantiate their claims in litigation as he referred to Second Circuit decisions in support of his assertion about that. The following are relevant excerpts from _DaCosta_ about this point:

| | |
|---|---|
| **a)** | "Decisions of the Court of Appeals for the Second Circuit reflect the broad principle that courts should not be quick to dismiss plaintiffs for lack of information that is in the possession of the defendants. Elimination of the information asymmetry that exists at the outset of every case is a bedrock principle of our legal system; after all, "[m]utual knowledge of all the relevant facts gathered by both parties is essential to proper litigation." _Hickman v. Taylor_, 329 U.S. 495, 507, 67 S.Ct. 385, 91 L.Ed. 451 (1947). The Court of Appeals for the Second Circuit has consistently emphasized that courts should be more lenient with civil rights pleadings and permit discovery when plaintiffs would otherwise not be able to state a claim for relief due to a lack of information about defendants and their practices. Though the court has been particularly solicitous of allowing discovery under these circumstances when the plaintiff appears _pro se_, the rationale of these decisions is not so limited." |
| **b)** | "The purpose of discovery is to allow the parties to litigate based on complete information — "[m]utual knowledge of all the relevant facts gathered by both parties is essential to proper litigation." _Hickman v. Taylor_, 329 U.S. 495, 507, 67 S.Ct. 385, 91 L.Ed. 451 (1947). In order to facilitate this sharing of information, "[c]ounsel are expected to cooperate with each other, consistent with the interests of their clients, in all phases of the discovery process" |
| **c)** | "Discovery requests shall be read reasonably in the recognition that the attorney serving them generally does not have the information being sought and the attorney receiving them generally does have such information or can obtain it from the client." |
| **d)** | "This local rule requires cooperation from the opposing counsel in discovering critical facts, not an avoidance by the monkey's: don't see, don't hear, don't say." |

21.   The following excerpt from _Trump v. Vance_, No. 19-635 (U.S. July 9, 2020) clearly establishes that I'm legally entitled to the discovery material that I seek to be granted through

this case and that I have previously been legally entitled to that material as well:

    "In our judicial system, "the public has a right to every man's evidence."

22.    _Board of Regents of State Colleges v. Roth_, 408 U.S. 564, 92 S. Ct. 2701, 33 L. Ed. 2d

548 (1972) confirms that Fourteenth Amendment liberty rights partly include the right to acquire

useful knowledge, contract, establish a home, and engage in any of the common occupations of

life.

23.    _Mary Jo C. v. NY State and Local Retirement Sys._, 707 F.3d 144 (2d Cir. 2013) is

controlling law and states that "under New York law, "[a] duly promulgated regulation ... has the

force of law."" _Singh v. US Dept. of Justice_, 461 F.3d 290 (2d Cir. 2006) similarly confirms that

agencies must follow rules their own rules and that people rely on them to do so.

24.    18 NYCRR §358-3.7(b)(2) is a New York State regulation whose text is available at

https://regs.health.ny.gov/content/section-358-37-examination-case-record-fair-hearing. The

following is a relevant excerpt from 18 NYCRR §358-3.7(b)(2) and confirms that HRA has been

required to provide me all of the discovery material that has been in its possession and that it has

otherwise had access to prior to OTDA fair hearings between HRA and I following demands that

I submitted to HRA's personnel to provided that material prior to OTDA fair hearings:

    "Upon request, you have the right to be provided at a reasonable time before the date of
    the hearing, at no charge, with copies of any additional documents which you identify
    and request for purposes of preparing for your fair hearing."

25.    18 NYCRR §358-3.7(b)(4) states the following about noncompliance by social services

agencies in New York State with their discovery obligations pursuant partly to 18 NYCRR §358-

3.7(b)(2):

    "If the social services agency fails to comply with the requirements of this subdivision
    the hearing officer may adjourn the case, allow a brief recess for the appellant to review
    the documents, preclude the introduction of the documents where a delay would be
    prejudicial to the appellant, or take other appropriate action to ensure that the appellant is

not harmed by the agency's failure to comply with these requirements."

26.     18 NYCRR §352.6(f) requires HRA to issue storage payments on my behalf while I

reside in temporary shelter. 24 CFR §578.3 includes the following terms that confirm that in

order for someone to be regarded as residing in "permanent housing", that person needs to have a

valid lease agreement for where he or she resides:

> "To be permanent housing, the program participant must be the tenant on a lease for a
> term of at least one year, which is renewable for terms that are a minimum of one month
> long, and is terminable only for cause."

27.     The fact that the B&S prevented me from having a valid apartment lease for the

apartment in which I reside caused estoppel to apply to bar HRA from being able to validly

contend that the apartment in which I reside is permanent housing for me because I have never

had a valid apartment lease agreement for it. Also, the Supremacy Clause of the U.S.

Constitution prohibits HRA from being able to validly interpret what is meant by "permanent

housing" in a way that conflicts with how 24 CFR §578.3 defines that. However, OTDA illegally

condoned the fact that HRA did so anyway during my OTDA litigation.

28.     18 NYCRR §352.31(f)(1) requires HRA to issue reimbursements for underpayments for

government benefits that it issues within 30 days after discovering that a need exists to issue such

reimbursements.

29.     HRA was required by 18 NYCRR §358.6-4(a) to have fully complied with OTDA's

9/15/16 fair hearing decision for fair hearing number 7316477K within 90 days. OTDA is

required by 18 NYCRR §358.6-4(c) to secure full compliance by HRA with its fair hearing

decisions upon receiving a report that HRA hasn't done so.

30.     Paragraph 2(f) on page 59 in a report that OTDA published as a PDF file that is entitled

"Temporary Assistance Source Book" and available at http://otda.ny.gov/programs/temporary-

assistance/TASB.pdf states the following on page 59 that confirms that OTDA was required to

conduct fair hearings within 30 days for all claims that I asserted against HRA and apprised

OTDA about through a 62-page fax that I transmitted to OTDA on 2/9/17:

> "When a hearing is requested pursuant to this Chapter, Section G, the hearing will be
> held within 30 days of the request, unless delayed by, or adjourned at the request of, the
> appellant."

31.     OTDA's 9/15/16 fair hearing decision for fair hearing 7316477K ordered HRA to

retroactively pay for the costs for me to rent a storage unit while I resided while I resided where I

reside in the event that HRA determined after 9/15/16 through a reassessment about me by it that

I had been eligible and entitled in May of 2016 for HRA to pay for that. The period that was

covered by that retroactive decision was May of 2016 thru September of 2016. The fact that

HRA issued payments on my behalf for storage unit rental expenses in response to OTDA's

9/15/16 fair hearing decision triggered HRA's legal duty to end up being the sole party who paid

for the entire costs for me to rent a storage unit between May of 2016 and September of 2016.

This is analogous to what happens when 2 friends got out for dinner together and intend on

splitting the check, but doesn't occur because one of the friends forgot to bring his wallet that

prompts his friend to pay for entire meal before he is thereafter reimbursed by the friend who

was absentminded by not bringing his wallet with him to the restaurant.

32.     Before OTDA issued its 9/15/16 fair hearing decision, it issued a fair hearing decision on

11/12/02 for fair hearing number 3792259Q that is available on the Internet at

http://www.wnylc.com/kb_wnylc/afile/11/659/. That fair hearing decision ordered a New York

State social services agency that is a counterpart of HRA to reimburse the appellant for storage

unit rental expenses. My Fourteenth Amendment equal protection rights thereafter entitled me to

benefit from that earlier fair hearing decision by requiring HRA to reimburse me for storage unit

rental expenses that HRA fraudulently induced me to pay instead of HRA while I resided where I still reside by having fraudulently denied an application that I submitted to HRA in May of 2016 to pay for storage unit rental expenses on my behalf while I resided where I still reside and after it previously did so less than 3 months earlier.

33.     18 NYCRR §358-3.4(i) confirms that I'm legally entitled to be reimbursed by HRA for "necessary costs and expenditures related to" the fair hearings that I engaged in against HRA. Among other things, this certainly covers the costs that I paid to commence and proceed in my HRA lawsuit that were partly to pursue article 78 claims about my OTDA litigation, telephone service that I relied upon to participate in fair hearings against HRA, legal research for my OTDA litigation and my HRA lawsuit, and other expenses that were related to my OTDA litigation, and my HRA lawsuit that included costs that I paid to pursue appeals about my HRA lawsuit.

34.     _Winfield v. City of New York_, No. 15-cv-5236 (LTS)(KHP) (S.D.N.Y. Nov. 27, 2017) confirm that **a)** parties "cannot be permitted to jeopardize the integrity of the discovery process by engaging in halfhearted and ineffective efforts to identify and produce relevant documents" and that **b)** litigation "is not a game. It is the time-honored method of seeking the truth, finding the truth, and doing justice."

35.     The following are relevant excerpts from _Harrison v. Springdale Water & Sewer Com'n, 780 F.2d 1422 (8th Cir. 1986)_ that is a court decision that includes citations to U.S. Supreme Court decisions in support of its findings and addresses both First Amendment retaliation for litigation activity and illegal acts of obstruction of justice that violate a plaintiff's First Amendment right of access to the courts to petition for redress that can result from discovery violations:

a.      "The United States Supreme Court has stated that "[t]he right of access to the courts is indeed but one aspect of the right of petition." *California Motor Transport Co. v. Trucking Unlimited,* 404 U.S. 508, 510, 92 S.Ct. 609, 611, 30 L.Ed.2d 642 (1972).[7] The Court has noted that the right to petition is "among the most precious of the liberties safeguarded by the Bill of Rights," *United Mine Workers v. Illinois State Bar Association,* 389 U.S. 217, 222, 88 S.Ct. 353, 356, 19 L.Ed.2d 426 (1967), and that it has "a sanctity and a sanction not permitting dubious intrusions," *Thomas v. Collins,* 323 U.S. 516, 530, 65 S.Ct. 315, 322, 89 L.Ed. 430 (1945). As an aspect of the First Amendment right to petition, the right of access to the courts shares this "preferred place" in our hierarchy of constitutional freedoms and values."

b.      It" has been noted in this Circuit that "access to the courts is a fundamental right of every citizen." *Greenholtz,* 436 F.Supp. at 436.[8] An individual's constitutional right of access to the courts "cannot be impaired, either directly ... or indirectly, by threatening or harassing an [individual] in retaliation for filing lawsuits. It is not necessary that the [individual] succumb entirely or even partially to the threat as long as the threat or retaliatory act was intended to limit the [individual's] right of access.""

c.      "state officials may not take retaliatory action against an individual designed either to punish him for having exercised his constitutional right to seek judicial relief or to intimidate or chill his exercise of that right in the future."

d.      "An act taken in retaliation for the exercise of a constitutionally protected right is actionable under § 1983 even if the act, when taken for a different reason, would have been proper."

e.      "An individual is entitled to "free and unhampered access to the courts.""

36.     *Whalen v. County of Fulton*, 126 F.3d 400 (2d Cir. 1997) addresses obstruction of justice by government personnel by stating that **c)** "The constitutional right of access is violated where government officials obstruct legitimate efforts to seek judicial redress", **d)** the "Constitution protects causes of action from arbitrary interference" by government officials", and **e)** "an unconstitutional deprivation of a cause of action occurs" when "government officials thwart vindication of a claim by violating basic principles that enable civil claimants to assert their rights effectively".

37.     The following excerpt from *Dresner v. Tallahassee*, 375 U.S. 136, 84 S. Ct. 235, 11 L. Ed. 2d 208 (1963) further cements what I discussed above about illegal obstruction of justice and other violations of First Amendment rights by government personnel:

> "It is fundamental that our constitutions accord to the citizen of the United States the right of freedom of speech and of assembly and to peaceably petition for a redress of grievances. Such freedoms are jealously guarded and when exercised in good faith and in good order may not be lawfully interfered with by governmental action."

38. *Penz v. Fields*, No. 21-cv-005 (VB) (S.D.N.Y. Nov. 23, 2021) contains the following findings that apply to illegal acts pertaining to fraudulent concealment of discovery material by Mr. Banks and other personnel of HRA that continue to constitute criminal obstruction of justice in relation to litigation that I have commenced against HRA as well as other litigation that is related to that:

> "Forward-looking" claims include claims "that systemic official action frustrated [a plaintiff's] ability to file a suit." Sousa v. Marquez, 702 F.3d at 127. In contrast, "backward-looking" claims are claims that a lawsuit "cannot now be tried (or tried with all material evidence), no matter what official action may be in the future." Id. at 127-28.

> To state a backward-looking claim, a plaintiff must plausibly allege a defendant, acting deliberately and with malice, "took or was responsible for actions that hindered a plaintiff's efforts to pursue a legal claim," Davis v. Goord, 320 F.3d at 351, and that those actions caused plaintiff to suffer "actual injury.""

39. The following excerpt from *Jutrowski v. TP. of Riverdale*, 904 F.3d 280 (3d Cir. 2018) also addresses obstruction of justice:

> "where a plaintiff adduces sufficient evidence of an after-the-fact conspiracy to cover up misconduct, even of an unidentified officer, he may be able to state a claim under § 1983 for the violation of a different constitutional right: the due process right of access to the courts."

40. Findings that the Second Circuit issued on 11/17/21 in its decision in *Jennings v. Yurkiw, et al.*, No. 19-4281-cv (L) (2d Cir. Nov. 17, 2021) that are listed below were about an illegal cover-up that City of New York personnel committed. The fact that members of the NYPD engaged in a criminal cover-up with senior members of the CAU, HRA, and Mayor's Office about illegal acts and omissions that were committed against me by them that is confirmed by e-mail evidence that I received on 2/1/21 as discovery material in K1 supports having this Court

grant me relief that I have requested in this complaint to enforce my legal rights pursuant to 18

NYCRR §358-3.7(b)(2), promissory estoppel, and the First Amendment to obtain identical

copies of e-mail messages that have been in the possession of HRA personnel that I received on

2/1/21 as discovery material in K1 and can't use in this case because they're subject to the

1/15/21 confidentiality and protective orders that Judge Gorenstein obsequiously issued in K1.

Those orders by him safeguard the privacy interests of City of New York personnel that include

defendants in this case who violated my privacy rights prior to 1/15/21 by violating **a)** the sealing

order that Judge Ostrager issued on 1/17/17 in my HRA lawsuit and **b)** my privacy rights

pursuant to New York State Social Services Law §136(2) and 18 NYCRR §357 that apply to

government benefits that I apply for and receive from HRA.

### Excerpt from *Thomas Jennings v. Yurkiw*:

> "The reprehensible nature of the officers' conduct is underscored by the elaborate
> steps they took to cover up their misconduct. The jury heard and was entitled to
> consider a record that included falsified charging documents, false accounts of the
> beating, faked or exaggerated injury, and perjured trial testimony.[3] *See Gore*, 517
> U.S. at 579 (noting that factfinders may look to whether the record "discloses . . .
> deliberate false statements, acts of affirmative misconduct, or concealment of
> evidence of improper motive")."

41.  *Matter of City of New York v. Organization Of Staff Analysts*, 2011 N.Y. Slip Op 32865

(Sup. Ct. 2011) contains the following findings about the fact that HRA has clear policies that

prohibit its personnel from violating the privacy rights of those who apply for and receive

government benefits from HRA:

> "In August of 2009, grievant was charged with violations of HRA's Code of Conduct,
> which requires that agency employees safeguard confidential information regarding
> public assistance and agency employees, and the Conflict of Interest Law, New York
> City Charter §§ 2604(b)(3) and (4), which prohibit public servants from using their
> positions to obtain personal gain and from disclosing confidential information or using it
> for their benefit"

42.  The fact that e-mail messages that I received on 2/15/19 from the Mayor's Office in

response to a FOIL demand that I submitted to it clearly show that Defendants Jaclyn Rothenberg and Jessica Ramos illegally had access to information about my HRA lawsuit on 6/28/17 while it was still sealed and communicated that information to other City of New York personnel who also weren't authorized to have access to information about my HRA lawsuit is one of the reasons why the current and former City of New York personnel who violated and/or were in violation of Judge Ostrager's 1/17/17 sealing order in my HRA lawsuit simply and reciprocally don't have any privacy rights for me to abide by. This pertains to the concept of offsetting penalties that exists in football. Since those who violated my privacy rights first by crossing the neutral zone, equity demands that I be allowed to do the same to them to level the playing field. The fact that I have yet to be allowed to do so is patently discriminatory. _Porritt v. Erico International Corporation_, No. 10-cv-0545-JPG-SCW (S.D. Ill. May 25, 2011) refers to offsetting penalties in football in the context of a discussion that concerns discovery matters.

43.     _Findings in Condit v. Dunne_, No. 02 Civ. 9910 (PKL) (S.D.N.Y. Dec. 15, 2004) confirm that findings in _Flaherty v. Seroussi_, 209 F.R.D. 295 (N.D.N.Y. 2001) indicated that though the judge who was assigned to _Flaherty v. Seroussi_ was aware of the intent of the plaintiff's lawyer to publicize a deposition of a mayor to champion the rights of citizens, that judge refused to issue a protective order about that deposition "because the facts supported a strong public interest in free access to discovery documents where the litigation involved "elected officials and the performance of their governmental responsibilities.""

44.     The following excerpt from _Kenney v. Clay_, 172 F. Supp. 3d 628 (N.D.N.Y. 2016) confirms that punitive damages are an option in response to violations of constitutional rights:

> "Punitive damages are available in a §1983 action when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." Lee v. Edwards, 101 F.3d 805, 808 (2d. Cir. 1996) (quoting Smith v. Wade, 461 U.S. 30, 56 (1983)). "The fact that the

constitutional violation does not warrant an award of compensatory damages is not a basis for denying an award of punitive damages." New Windsor Volunteer Ambulance Corps, Inc. v. Meyers, 442 F.3d 101, 121 (2d. Cir. 2001)

45.     _Jennings v. Town of Stratford_, 263 F. Supp. 3d 391 (D. Conn. 2017) contains information about the amount in damages that have awarded as a result of violations of First Amendment rights that this Court may adopt to use a benchmark for damages and sanctions to award me in this case. _Jennings v. Town of Stratford_ indicates that a jury awarded $685,000 as non-economic damages for First Amendment retaliation.

46.     _Bursztein v. Best Buy Stores, LP_, No. 20-cv-00076 (AT)(KHP) (S.D.N.Y. May 17, 2021) contains the following relevant excerpt that addresses monetary sanctions against those who violate discovery orders:

> "I find that monetary sanctions are particularly appropriate in this case to compensate Plaintiff for the time and resources spent because of Defendants' dilatory conduct. Fed. R. Civ. P. 37; _see also R.F.M.A.S., Inc. v. So_, 271 F.R.D. 13, 52-53 (S.D.N.Y. 2010) ("[c]osts, including attorney's fees, are appropriate when a defendant has unjustifiably destroyed evidence that it was under a duty to preserve, causing the plaintiff to expend time and effort in attempting to track down the relevant information") (internal quotation marks omitted). Bust Buy's excuses and defenses to Plaintiff's sanctions motion contradict the evidence before the Court. (_See_ Section IV _supra_.) In short, as already shown above, Best Buy has not taken its discovery obligations seriously, which necessitated the instant motion. Accordingly, Best Buy shall be liable for Plaintiff's fees and costs incurred in briefing the instant motion for sanctions."

47.     What follows is a discussion about relevant court decisions that apply to contracts and other binding and fully enforceable agreements. _Rex Medical LP v. Angiotech Pharmaceuticals (US)_, 754 F. Supp. 2d 616 (S.D.N.Y. 2010) states the following:

> "public policy holds competent contracting parties to bargains made by them freely and voluntarily, and requires the courts to enforce such agreements", the "public has an interest in seeing that parties oblige by their contractual obligations and are not allowed to skirt such obligations at another's expense, and the "usual and most important function of courts of justice is rather to maintain and enforce contracts, than to enable parties thereto to escape from their obligation on the pretext of public policy."

48.     _In Re DPH Holdings Corp._, No. 13-3305-bk (2d Cir. Sept. 19, 2014) states the following:

"When the terms of a contract are unambiguous, the contract is "not open to judicial construction and must be enforced as written." *Rory v. Cont'l Ins. Co.*, 473 Mich. 457, 468 (2005). *See also Shay v. Aldrich*, 487 Mich. 648, 650 (2010)."

49.     *Francis v. INA Life Ins. Co. of New York*, 809 F.2d 183 (2d Cir. 1987) states the

following:

"An ambiguity in the terms of an insurance contract will generally be construed liberally in favor of the insured. *Vargas v. Insurance Co. of North America,* 651 F.2d 838, 839-40 (2d Cir.1981); *Ruder & Finn Inc. v. Seabord Surety Co.,* 52 N.Y.2d 663, 671, 439 N.Y.S.2d 858, 862, 422 N.E.2d 518, 522 (1981). However, if the words are clear and unambiguous, they must be accorded their plain and ordinary meaning and the policy enforced as written; a court is not free to modify such terms by judicial construction. *Government Employees Insurance Co. v. Kligler,* 42 N.Y.2d 863, 864, 397 N.Y.S.2d 777, 778, 366 N.E.2d 865, 866 (1977). As this court has previously stated "it is not the function of a court to rewrite insurance policies so as to provide coverage which the court might have considered more equitable." *Cornellier v. American Casualty Co.,* 389 F.2d 641, 644 (2d Cir.1968). *See also Breed,* 46 N.Y.2d at 355, 413 N.Y.S.2d at 355, 385 N.E.2d at 1283."

50.     *Friedman Constr. Co. v. North Lake Ests.*, 13 Misc. 2d 823, 177 N.Y.S.2d 431 (NY:

Supreme Court, Westchester 1958) states the following:

"It is fundamental that agreements must be enforced as written. (*Hockensmith Contr. Co. v. Carnegie-Illinois Steel Corp.*, 22 N. Y. S. 2d 280, revd. 261 App. Div. 349.) While it is true that courts concern themselves with that which the parties intended, yet they may do so "only to the extent that [the parties] evidenced what they intended by what they wrote". (*Raleigh Associates v. Henry*, 302 N.Y. 467, 473.) Nor may the courts make a new contract for the parties under the guise of interpreting the writing. (*Brown v. Manufacturers Trust Co.*, 278 N.Y. 317, 324; *Friedman v. Handelman*, 300 N.Y. 188, 194; *Wilson Sullivan Co. v. International Paper Makers Realty Corp.*, 307 N.Y. 20, 25.)"

51.     The following excerpts from *The Carlton Group, LTD. v. Mirabella SG SpA*, No. 16-cv-

6649 (LGS) (S.D.N.Y. July 19, 2018) also apply to binding and fully-enforceable agreements as

well as to New York's Faithless Servant doctrine:

a.      "Under New York law, a party who signs a contract is bound by its provisions unless he can show `special circumstances,' such as fraud, duress, coercion, or misrepresentation, that `relieve him of such an obligation."

b.      ""[U]nder New York law a contract entered into under duress is generally considered not void, but merely voidable, . . . and one who would repudiate a contract procured by duress must act promptly or will be deemed to have elected to affirm it."

c.    "[U]nder new York law, an unconscionable agreement is voidable, not void. . . . Because he failed to promptly repudiate [it,] . . . Defendant cannot now avoid its terms."

d.    ""New York law with respect to disloyal or faithless performance of employment duties is grounded in the law of agency, and has developed for well over a century." *Phansalkar v. Andersen Weinroth & Co., L.P.,* 344 F.3d 184, 200 (2d Cir. 2003). "[Misconduct by an employee that rises to the level of a breach of a duty of loyalty or good faith is sufficient to warrant forfeiture.""

52.    *Forcelli v. Gelco Corp.*, 109 A.D.3d 244, 972 N.Y.S.2d 570 (App. Div. 2013) confirms that agreements that are transmitted in e-mail messages are binding and fully-enforceable agreements.

53.    The following excerpt from *Kaye v. Grossman*, 202 F.3d 611 (2d Cir. 2000) addresses promissory estoppel:

"A cause of action for promissory estoppel under New York law requires the plaintiff to prove three elements: 1) a clear and unambiguous promise; 2) reasonable and foreseeable reliance on that promise; and 3) injury to the relying party as a result of the reliance."

54.    The following excerpt from *Mazzola v. Lipkin*, 2021 N.Y. Slip Op 50046 (App. Term 2021) is about situations that warrant new trial that include times when legal adversaries engage in fraud and obstruction of justice as well as times when judicial misconduct prejudiced the outcome of a case:

"There are many cases where a new trial should be granted because of complexity, confusion, the possibility of other proof, error, misconception on the part of the Trial Judge as to the burden of proof or for other appropriate reasons ... Also certain cases peculiarly lend themselves to a reconsideration of the facts by a trial court."

55.    The following excerpt from *Cardoza v. Rock*, 731 F.3d 169 (2d Cir. 2013) applies to instances in which a judge engages in judicial misconduct partly by "ignoring highly probative and material evidence":

"the state court's finding might represent an "unreasonable determination of the facts" where, for example, reasonable minds could not disagree that the trial court misapprehended or misstated material aspects of the record in making its finding, *see*

*Wiggins v. Smith,* 539 U.S. 510, 528, 123 S.Ct. 2527, 156 L.Ed.2d 471 (2003), or where the court ignored highly probative and material evidence".

56.    The excerpts shown next are from *Alston v. Town of Brookline*, No. 20-1434 (1st Cir. May 7, 2021) and addressed an instance in which a judge engaged in judicial misconduct by prejudicially ignoring relevant information in a report known as a "D&F" in reaching a decision about a matter in a case. These excerpts are relevant in regards to the fact that my HRA lawsuit, my HRA appeal while it was considered by the Appellate Division, and my OTDA litigation certainly are among litigation that I have commenced in which judges and hearing officers that were assigned to that abused their discretion and engaged in misconduct by ignoring relevant evidence that substantiated my claims in all of that litigation

### Excerpts from *Alston v. Town of Brookline*:

a.    "an abuse of discretion "occurs when a material factor deserving significant weight is ignored, when an improper factor is relied upon, or when . . . the court makes a serious mistake in weighing [the relevant factors].""

b.    "We think that the court below abused its discretion in effectively excluding the D&F."

c.    "Here, the most logical conclusion that can be drawn from a murky record is that the district court failed to give any weight to a proper factor in the decisional calculus: the D&F."

57.    What is shown next are relevant excerpts from *Weslowski v. Zugibe*, 96 F. Supp. 3d 308 (S.D.N.Y. 2015) about the law of the case doctrine and res judicata. They apply to the fact that OTDA illegally allowed HRA to violate res judicata in my OTDA litigation in 2017 **a)** after HRA had already determined in 2016 after 9/15/16 that I was eligible to have HRA to pay for my storage unit rental expenses to Cubesmart while I resided where I still reside, **b)** before Judge Bannon fraudulently ratified that in my HRA lawsuit in her 8/10/17 decision, and **c)** while no change with applicable facts and matters of law occurred between 2016 and 2017 that authorized

HRA to violate res judicata about that matter. These excerpts also apply to the fact that may adopt the last excerpt shown below from *Weslowski* to reach a decision on the merits that the information that appears in this complaint and is otherwise sufficiently incorporated by reference within it demonstrates a compelling reason to effectively cause **d)** Judge Stanton's dismissal of K4 to be vacated and reversed in whole or in part in my favor, **e)** the same to occur in the context of my OTDA litigation by causing OTDA fair hearing decisions to be reversed in my favor against HRA and decisions made by OTDA administrators that include Defendant Nigel Banks that were adverse to me to be reversed, and **f)** the same to occur in the context of my HRA lawsuit.

### Excerpts from *Weslowski*:

a.   "Under the law of the case doctrine, "a decision on an issue of law becomes binding precedent in subsequent stages of the same litigation.""

b.   ""[a]s a general matter ... [a court should] adhere to its own decision at an earlier stage of the litigation" (internal quotation marks omitted)). This doctrine "only forecloses consideration of issues that have already been decided""

c.   "a court should be "loathe to revisit an earlier decision in the absence of extraordinary circumstances""

d.   ""there is a strong presumption against amendment of prior orders"), namely "cogent or compelling reasons not to [follow the earlier decision], such as an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error to prevent manifest injustice""

e.   "the court "found a compelling reason" to vacate its prior order under this standard, namely "[m]anifest injustice""

f.   ""the amended complaint and its attached material have prompted a fresh look at the statute" at issue"

58.   The excerpts shown next are from *Amnesty America v. Town of West Hartford*, 361 F.3d 113 (2d Cir. 2004) and address municipal liability and deliberate indifference. These findings are largely relevant in regards to the fact that many of the illegal acts and omissions against me that my claims in this case, my HRA lawsuit, my OTDA litigation, my HRA appeal, K1, K3, and K4

heavily implicate Mr. Banks with respect to illegal acts and omissions that he and others

committed against me that have had repercussions against me partly by having produced

snowball effects.

> ### *Excerpts from Amnesty America v. Town of West Hartford*:

> "More often than not, however, plaintiffs allege constitutional deprivations at the hands of the lower-level municipal employees to whom some authority has been delegated, rather than at the hands of those officials with final policymaking authority. While allowing the municipality to be held liable on the basis of the mere delegation of authority by a policymaking official would result in *respondeat superior* liability, allowing delegation, without more, to defeat municipal liability would contravene the remedial purposes of § 1983. Therefore, § 1983 plaintiffs may establish that the city is liable for their injuries by proving that "the authorized policymakers approve[d] a subordinate's decision and the basis for it." *City of St. Louis v. Praprotnik,* 485 U.S. 112, 127, 108 S.Ct. 915, 99 L.Ed.2d 107 (1988) (plurality opinion).

> Thus, when a subordinate municipal official is alleged to have committed the constitutional violation, municipal liability turns on the plaintiffs' ability to attribute the subordinates' conduct to the actions or omissions of higher ranking officials with policymaking authority. One means of doing so, of course, is to establish that a policymaker ordered or ratified the subordinates' actions. *See Weber v. Dell,* 804 F.2d 796, 803 (2d Cir.1986) (holding that liability could be premised on sheriff's ordering of unconstitutional strip searches). Another method of implicating a policymaking official through subordinates' conduct is to show that the policymaker was aware of a subordinate's unconstitutional actions, and consciously chose to ignore them, effectively ratifying the actions. *See, e.g., Sorlucco v. New York City Police Dep't,* 971 F.2d 864, 870-71 (2d Cir.1992) (stating that municipal liability lies where the subordinate's misconduct is "so manifest, as to imply the constructive acquiescence of senior policymaking officials"). Thus, where a policymaking official exhibits deliberate indifference to constitutional deprivations caused by subordinates, such that the official's inaction constitutes a "deliberate choice," that acquiescence may "be properly thought of as a city `policy or custom' that is actionable under § 1983." *City of Canton,* 489 U.S. at 388, 109 S.Ct. 1197 (citations omitted); *see also Vann v. City of New York,* 72 F.3d 1040, 1049 (2d Cir. 1995), *Jeffes v. Barnes,* 208 F.3d 49, 63 (2d Cir.2000) (holding that sheriff's acquiescence in unconstitutional retaliation could be inferred from his tolerance and encouragement of harassment of plaintiffs). Moreover, because a single action on a policymaker's part is sufficient to create a municipal policy, a single instance of deliberate indifference to subordinates' actions can provide a basis for municipal liability."

59.    On a related note, the following findings from *City of St. Louis v. Prapotnik*, 485 U.S.

112, 131 (1985) are about the fact that municipal liability may be implicated by illegal acts and

omissions by personnel of the City of New York that essentially demonstrate that policies of the City of New York aren't worth the paper that they're printed on because of how disingenuous and fraudulent they may be that may suggest that they were manufactured by a con artist that I have long known the Mayor, Mr. Banks, members of the NYPD, and other City of New York personnel to be:

> "We nowhere say or imply, for example, that "a municipal charter's precatory admonition against discrimination or any other employment practice not based on merit and fitness effectively insulates the municipality from any liability based on acts inconsistent with that policy." *Post,* at 145, n. 7. Rather, we would respect the decisions, embodied in state and local law, that allocate policymaking authority among particular individuals and bodies. Refusals to carry out stated policies could obviously help to show that a municipality's actual policies were different from the ones that had been announced."

60.     *Deutsch v. Shein*, 597 S.W.2d 141 (Ky. 1980) contains the following findings that are about a snowball effect that are relevant about the liability of HRA, Urban, and their personnel for all of the harm that I have experienced that is traceable back to the B&S and wouldn't have occurred but for the B&S:

> "The breach of the required standard of care by an actor can produce a result similar to that of a snowball rolling down a hill. The initial consequence of the snowball may be slight. But as the snowball rolls down the hill its increasing size and momentum take on a character of their own which can cause injury of a magnitude far beyond the imagination of the one who set the snowball in motion. Nevertheless, the law is that between the negligent actor and the injured innocent, the innocent should recover compensation, unless the law cuts off the expansion of the negligent actor's liability as a matter of public policy."

61.     The B&S that was committed against me produced many repercussions and legal claims of mine about that flow from the B&S as the underlying root cause. The following excerpt from *Rosenberg v. City of New York*, 20-CV-4012 (LLS) (S.D.N.Y. July 13, 2020) confirms that overlapping claims should be pursued in a single lawsuit to befit the interests of judicial economy that is about the fact that matters that share a common nucleus of operative fact belong in the same lawsuit instead of being across multiple sets of litigation:

"By order dated May 28, 2020, Chief Judge McMahon dismissed this action without prejudice as duplicative of the substantially similar suit that remains pending under docket number 20-CV-3911.[1] Chief Judge McMahon noted that claims arising out of the same events should be included in a single suit: Rather than prosecuting two lawsuits with overlapping claims against many of the same parties, Plaintiff could amend the complaint in 20-CV-3911, consistent with Rule 15 of the Federal Rules of Civil Procedure, to include all of his claims arising from those events in one action under docket number 20-CV-3911."

62. _US v. Blackmon_, 839 F.2d 900 (2d Cir. 1988) addresses conspiracies to violate the rights of others and liability by all members of a conspiracy for the acts of other members of those conspiracies. The excerpts from that court decision that are shown next are relevant because **a)** personnel of **a)** HRA and other City of New York personnel, **b)** OTDA, **c)** Urban engaged in a conspiracy that is evident by their acts and omissions against me to c) engage in a criminal cover-up related to the B&S and **d)** retaliate against me in response to protected First Amendment activity that I engaged in partly against personnel of HRA and Urban.

**Excerpts from _US v. Blackmon_**:

a.   "This court has several times observed that statements "that apprise a coconspirator of the progress of a conspiracy," _United States v. Rahme,_ 813 F.2d 31, 36 (2d Cir.1987), or that "brief [a coconspirator] on the scheme," _United States v. Mangan,_ 575 F.2d 32, 44 (2d Cir.), _cert. denied,_ 439 U.S. 931, 99 S.Ct. 320, 58 L.Ed.2d 324 (1978), are statements made in furtherance of a conspiracy."

b.   "The Third Circuit has likewise observed that statements by coconspirators that "inform each other of the current status of the conspiracy further the ends of the conspiracy and are admissible so long as the other requirements of Rule 801(d)(2)(E) are met.""

c.   "with regard to liability for _conspiracy,_ a defendant may be legally responsible for acts of coconspirators prior to that defendant's entry into the conspiracy"

63.   _Henry v. Wyeth Pharmaceuticals, Inc._, 616 F.3d 134 (2d Cir. 2010) addresses the liability of those who work as agents for a principal to commit illegal acts and/or omissions on behalf of a principal and states the following about that:

"_Gordon_ directly addressed the situation in which a corporate agent _carries out_ an adverse employment action on the _orders,_ explicit or implicit, of a superior with

knowledge that the plaintiff has engaged in a protected activity. However, in order to show causation in the sense required by *McDonnell Douglas* — that is, a causal connection between the protected activity and the adverse employment action — it is not necessary that the supervisor who has knowledge of the plaintiff's protected activities have *ordered* the agent to impose the adverse action. A causal connection is sufficiently demonstrated if the agent who decides to impose the adverse action but is ignorant of the plaintiff's protected activity acts pursuant to *encouragement* by a superior (who has knowledge) to disfavor the plaintiff."

64.     What I will discuss next sufficiently answers critically significant questions about when I have asked for discovery material from HRA that this case and others I have commenced have been about, where I made such a request to HRA, who I made that request to, the manner in which I made that request, and what the outcome of that request was. On 12/18/18, I legally recorded an audio recording at 12:36 pm of a face-to-face conversation that I had with Mr. Banks during a public resource fair meeting that members of the public and I conducted as a public forum with the Mayor, Mr. Banks, and others that was held at in Manhattan at 14-32 West 118th Street. That audio recording is available at

https://drive.google.com/open?id=1yBh54VWqQFea5NsK6uDHCGiXKQbS3zQY. What is heard in that recording between the elapsed times of **a)** 7 minutes and 26 seconds and **b)** 8 minutes and 4 seconds is a conversation that I had with Mr. Banks during which he condoned the fact that HRA was refusing to comply with FOIL demands that I submitted to HRA that were related to the assault that I suffered on 7/2/16 by my former roommate (Ronald Sullivan) for my apartment that triggered the criminal prosecution against that roommate that corresponds to Sullivan1, the B&S that enabled that assault to occur in the first place and also caused me to have to continue to rent a storage unit after March of 2016, and complaints that I reported to HRA since March of 2016 against Urban.

65.     The following excerpt from *Vega v. Hempstead Union Free School Dist.*, 801 F.3d 72 (2d Cir. 2015) is about proving discrimination and retaliation from circumstantial evidence and

objectively reasonable inferences that may be drawn from that:

> "Second, in making the plausibility determination, the court is to "draw on its judicial experience and common sense." *Iqbal,* 556 U.S. at 679, 129 S.Ct. 1937. Of course, the court must proceed at all times in a fair and deliberative fashion, alert to any unconscious bias that could affect decisionmaking.[9] In making the plausibility determination, the court must be mindful of the "elusive" nature of intentional discrimination. *See Burdine,* 450 U.S. at 255 n. 8, 101 S.Ct. 1089. As we have recognized, "clever men may easily conceal their motivations." *Robinson v. 12 Lofts Realty, Inc.,* 610 F.2d 1032, 1043 (2d Cir.1979) (internal quotation marks omitted). Because discrimination claims implicate an employer's usually unstated intent and state of mind, *see Meiri v. Dacon,* 759 F.2d 989, 998 (2d Cir.1985), rarely is there "direct, smoking gun, evidence of discrimination," *Richards v. N.Y.C. Bd. of Educ.,* 668 F.Supp. 259, 265 (S.D.N.Y.1987), *aff'd,* 842 F.2d 1288 (2d Cir.1988). Instead, plaintiffs usually must rely on "bits and pieces" of information to support an inference of discrimination, *i.e.,* a "mosaic" of intentional discrimination. *Gallagher v. Delaney,* 139 F.3d 338, 342 (2d Cir.1998), *abrogated in part on other grounds by Burlington Indus., Inc. v. Ellerth,* 524 U.S. 742, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998). Again, as we made clear in *Littlejohn,* at the initial stage of a litigation, the plaintiff's burden is "minimal" — he need only plausibly allege facts that provide "at least minimal support for the proposition that the employer was motivated by discriminatory intent." 795 F.3d at 311, 2015 WL 4604250, at *8."

66.    The following excerpt from *Ridings v. Motor Vessel" Effort"*, 387 F.2d 888 (2d Cir. 1968) is about instances in which judges abuse their discretion by prematurely and prejudicially doing things:

> "the trial court put the cart before the horse. We understand the exigencies which the judge had in mind, but this extraordinary course was not justified."

67.    *Abkco Music v. Stellar Records*, 96 F.3d 60 (2d Cir. 1996) states that abuse of discretion "usually involves either the application of an incorrect legal standard or reliance on clearly erroneous findings of fact." *Monroe v. Houston Independent School District*, No. 19-20514 (5th Cir. Nov. 25, 2019) similarly confirms that application "of an incorrect legal standard is, by definition, an abuse of discretion". *In re Fitch*, Inc., 330 F.3d 104 (2d Cir. 2003) also states the following about this point:

> ""A district court abuses its discretion when `(1) its decision rests on an error of law ... or a clearly erroneous factual finding, or (2) its decision —though not necessarily the product of a legal error or a clearly erroneous factual finding —cannot be located within

the range of permissible decisions.'"

68.     The following excerpt from _Klinger v. City of Chicago_, No. 15-cv-1609 (N.D. Ill. Feb.

24, 2017) is about equitable tolling due to equitable estoppel, equitable tolling, or fraudulent

concealment that applies to the fact that personnel of HRA and other City of New York

personnel have been engaging in an illegal cover-up against me since 2016:

> "Even apart from the relation-back principles noted above, the Court agrees with Plaintiff
> that the allegations in the First Amended Complaint regarding a conspiracy among the
> various defendants to suppress Griebel's identity provides a factual basis for applying one
> or more of the doctrines of equitable estoppel, equitable tolling, or fraudulent
> concealment, to toll the running of the statute of limitations from the date the incident
> took place through sometime in June 2016, when Plaintiff learned Griebel's true name.
> The First Amended Complaint was filed only a month after Plaintiff learned that "Officer
> O'Dublan" was really Officer Griebel, and thus would be timely if any of these equitable
> doctrines were to apply."

69.     The following excerpt from _Jackson v. New York State_, 381 F. Supp. 2d 80 (N.D.N.Y.

2005) addresses the fact that equitable tolling of statutory deadlines for claims is warranted while

continuing violations about them are occurring:

> "Under the continuing violation doctrine, if a plaintiff has experienced a "`continuous
> practice and policy of discrimination, ... the commencement of the statute of limitations
> period may be delayed until the last discriminatory act in furtherance of it.'" _Gomes v.
> Avco Corp.,_ 964 F.2d 1330, 1333 (2d Cir.1992) (quoting _Miller v. International
> Telephone & Telegraph Corp.,_ 755 F.2d 20, 25 (2d Cir.), cert. denied, 474 U.S. 851, 106
> S.Ct. 148, 88 L.Ed.2d 122 (1985)). "If a continuing violation is shown, a plaintiff is
> entitled to have a court consider all relevant actions allegedly taken pursuant to a
> defendant's discriminatory policy or practice, including those that would otherwise be
> time barred." _Van Zant v. KLM Royal Dutch Airlines,_ 80 F.3d 708, 713 (2d Cir.1996);
> _Lambert v. Genesee Hospital,_ 10 F.3d 46, 53 (2d Cir.1993) (Under the continuing
> violation exception, a charge that is timely as to any incident of discrimination in
> furtherance of an ongoing policy of discrimination, all claims of acts of discrimination
> under that policy will be timely even if they would be untimely standing alone.), _cert.
> denied,_ 511 U.S. 1052, 114 S.Ct. 1612, 128 L.Ed.2d 339 (1994). Although the continuing
> violation exception is usually associated with a discriminatory policy, rather than with
> individual instances of discrimination, and although acts so "isolated in time ... from each
> other ... [or] from the timely allegations[ ] as to break the asserted continuum of
> discrimination" will not suffice, _Quinn v. Green Tree Credit Corp.,_ 159 F.3d at 766, a
> continuing violation may be found "where specific and related instances of discrimination
> are permitted by the defendant to continue unremedied for so long as to amount to a

discriminatory policy or practice." *Cornwell v. Robinson,* 23 F.3d 694, 704 (2d Cir.1994)."

70.    *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 120 S. Ct. 2097, 147 L. Ed. 2d 105 (2000) addresses mendacity with respect to intentional discrimination and is applicable to illegal and otherwise abusive acts and omissions that personnel of HRA, OTDA, and other defendants in this case have committed against me:

> "("Proof that the defendant's explanation is unworthy of credence is simply one form of circumstantial evidence that is probative of intentional discrimination, and it may be quite persuasive."); *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 511 (1993) ("The factfinder's disbelief of the reasons put forward by the defendant (particularly if disbelief is accompanied by a suspicion of mendacity) may, together with the elements of the prima facie case, suffice to show intentional discrimination. Thus, rejection of the defendant's proffered reasons will permit the trier of fact to infer the ultimate fact of intentional discrimination.")"

71.    *In re Kaiser*, 722 F.2d 1574 (2d Cir. 1983) similarly states the following:

> "the cumulative effect of all the falsehoods together evidences a pattern of reckless and cavalier disregard for the truth serious enough to supply the necessary fraudulent intent required".

72.    What is shown next is a relevant excerpt from *Southeastern Promotions, Ltd. v. Conrad, 420 U.S. 546, 95 S. Ct. 1239, 43 L. Ed. 2d 448 (1975)* that addressed what government personnel are required to do prior to imposing prior restraints on First Amendment over an extended period of time. This certainly concerns the fact that I have been illegally and pretextually barred from being able to lawfully again visit HRA's offices that are located at 150 Greenwich Street in Manhattan and OTDA's offices that are located at 14 Boerum Place in Brooklyn while absolutely no proper due process has been accorded to me about that in spite of the fact that I certainly have been required to be accorded such proper due process.

**Excerpt from *Southeastern Promotions, Ltd. v. Conrad*:**

"a system of prior restraint runs afoul of the First Amendment if it lacks certain safeguards: First, the burden of instituting judicial proceedings, and of proving that the

material is unprotected, must rest on the censor. Second, any restraint prior to judicial review can be imposed only for a specified brief period and only for the purpose of preserving the status quo. Third, a prompt final judicial determination must be assured."

73. _Walsh v. Enge_, 154 F. Supp. 3d 1113 (D. Or. 2015) also addresses illegal acts that government personnel commit that cause people to be prospectively banned from government offices without proper due process that are otherwise accessible to the public and includes the following pertinent findings:

"This case requires the Court to decide whether the First Amendment allows a Mayor or his or her designee, acting pursuant to a city ordinance, to exclude a person, potentially indefinitely, from attending future City Council meetings to which the public is otherwise invited to attend and present their opinions simply because the person has been disruptive at previous meetings. The First Amendment protects, among other things, "freedom of speech" and "petitioning for a governmental redress of grievances." U.S. Const. amend. I. The First Amendment is incorporated into the Fourteenth Amendment and thus applies to the states and local governmental bodies. _Gitlow v. New York_, 268 U.S. 652, 666, 45 S.Ct. 625, 69 L.Ed. 1138 (1925). No appellate opinion of which this Court is aware has ever held that the First Amendment permits prospective exclusion orders from otherwise public city council meetings. A presiding officer may remove a disruptive individual from any particular meeting, and a sufficiently disruptive person may even be prosecuted for such conduct if public law permits. But no matter how many meetings of a city council a person disrupts, he or she does not forfeit or lose the future ability to exercise constitutional rights and may not be prospectively barred from attending future meetings. Our democratic republic is not so fragile, and our First Amendment is not so weak."

74. _Connick v. Myers_, 461 U.S. 138, 103 S. Ct. 1684, 75 L. Ed. 2d 708 (1983), _Snyder v. Phelps_, 562 U.S. 443, 131 S. Ct. 1207, 179 L. Ed. 2d 172 (2011), _Matal v. Tam_, 137 S. Ct. 1744, 198 L. Ed. 2d 366, 582 U.S. (2017), and _Barboza v. D'Agata_, 151 F. Supp. 3d 363 (S.D.N.Y. 2015) confirm that people have a First Amendment and Fourteenth Amendment right to use crude, caustic, and offensive expression to criticize government agencies and their personnel while expressing views against them and that people may not be legally punished for doing so. In fact, _Matal v. Tam_ pointedly confirms that giving offense is a viewpoint.

75. _Elrod v. Burns_, 427 US 347 (1976) confirm that **a)** the loss of First Amendment freedoms for even minimal periods of time unquestionably constitutes irreparable injury and that **b)** the

"timeliness of political speech is particularly important".

76.     *Buckley v. American Constitutional Law Foundation, Inc.*, 525 U.S. 182, SPA.7 119 S.

Ct. 636, 142 L. Ed. 2d 599 (1999) includes the following findings that are about government

transparency and accountability:

> a.     A "public armed with information . . . is better able to detect" wrongdoing.

> b.     An "informed public opinion is the most potent of all restraints upon misgovernment".

> c.     "`Publicity is justly commended as a remedy for social and industrial diseases. Sunlight is said to be the best of disinfectants; electric light the most efficient policeman.'"

77.     The following are relevant excerpts from *Piesco v. City of New York,* 933 F.2d 1149,

1158 (2d Cir.) that address First Amendment rights, transparency, government accountability,

and fraudulent pretext that government personnel concoct to try to mask the actual illegal

motivations for violating constitutional rights:

> a.     "Whatever differences may exist about interpretations of the First Amendment, there is practically universal agreement that a major purpose of that Amendment was to protect the free discussion of governmental affairs. This of course includes discussions of candidates, structures and forms of government, the manner in which government is operated or should be operated, and all such matters relating to political processes."

> b.     "The Supreme Court has recognized that one of the critical purposes of the first amendment is to provide society with a basis to make informed decisions about the government."

> c.     The "first amendment guarantees that debate on public issues is "`uninhibited, robust, and wide open'".

> d.     Speech "on matters of public concern is that speech which lies `at the heart of the First Amendment's protection'".

> e.     A statement that is made about the competency of a police officer "clearly is a matter of public concern" because "the police officer represents the most basic unit of government, one which arguably most affects the day-to-day lives of the citizenry".

f.      "A court is required to accept as true a plaintiff's allegation that retaliatory actions by the City of New York were precipitated by prior testimony he or she gave to a committee."

g.      "Without a searching inquiry into these motives, those intent on punishing the exercise of constitutional rights could easily mask their behavior behind a complex web of post hoc rationalizations."

h.      Summary "judgment is inappropriate when `questions of motive predominate in the inquiry about how big a role" "protected behavior played in" causing an adverse action to occur.

78.     _Calvary Chapel Dayton Valley v. Sisolak_, 140 S. Ct. 2603, 207 L. Ed. 2d 1129, 591 U.S.

(2020), states the following:

"respecting some First Amendment rights is not a shield for violating others."

79.     The following excerpt from _Del Gallo v. Parent_, 545 F. Supp. 2d 162 (D. Mass. 2008)

applies to the fact that my HRA lawsuit and my OTDA litigation were conducted in bad-faith by

the New York State Supreme Court and OTDA administrative law judges, OTDA hearing

officers, and other OTDA administrators who were assigned to and otherwise dealt with that as

well as HRA's personnel partly as a result of the fact that HRA and OTDA personnel were able

to illegally get away with multiple acts of fraud and gamesmanship in those sets of litigation to

my detriment at the same time that I was fraudulently denied discovery material from HRA to

which I was entitled that would have otherwise enabled me to showcase such fraud and

gamesmanship by HRA and OTDA:

"The essence of a viewpoint discrimination claim is that the government has `intentionally tilt[ed] the playing field for speech.'" _Ridley v. Mass. Bay Transp. Auth.,_ 390 F.3d 65, 88 (1st Cir.2004). As the Supreme Court has noted, the government may not "license one side of a debate to fight freestyle, while requiring the other to follow Marquis of Queensberry rules." _R.A.V. v. City of St. Paul,_ 505 U.S. 377, 392, 112 S.Ct. 2538, 120 L.Ed.2d 305 (1992).

In addition to demonstrating "a pattern of unlawful favoritism," _Thomas v. Chi. Park Dist.,_ 534 U.S. 316, 325, 122 S.Ct. 775, 151 L.Ed.2d 783 (2002), a plaintiff alleging

viewpoint discrimination in this circuit must show invidious intent on the part of the relevant government officials. *See McGuire v. Reilly,* 386 F.3d 45, 63 (1st Cir.2004).[23] Ultimately, such a challenge depends "on the factual evidence provided as to how the statutory scheme has in fact operated vis-á-vis the plaintiff[ ]." *Id.*

80.    *Roman Catholic Diocese of Brooklyn v. Cuomo*, 592 S. Ct. (U.S. 2020) was a major case about First Amendment rights and the need for judges to diligently and continuously protect and uphold them. The following are relevant excerpts from that court decision that support granting me the relief that I seek in this complaint:

   a.    "Government is not free to disregard the First Amendment in times of crisis."

   b.    "we may not shelter in place when the Constitution is under attack. Things never go well when we do."

   c.    "Even if the Constitution has taken a holiday during this pandemic, it cannot become a sabbatical."

   d.    "judicial deference in an emergency or a crisis does not mean wholesale judicial abdication, especially when important questions of religious discrimination, racial discrimination, free speech, or the like are raised."

   e.    "In far too many places, for far too long, our first freedom has fallen on deaf ears."

   f.    "And while those who are shut out may in some instances be able to watch services on television, such remote viewing is not the same as personal attendance"

81.    *Alabama Association of Realtors v. Department of Health and Human Services*, 594 S. Ct. (U.S., August 26, 2021) states that "our system does not permit agencies to act unlawfully even in pursuit of desirable ends. *Agudath Israel of America v. Cuomo*, 983 F.3d 620 (2d Cir. 2020) similarly states that "No public interest is served by maintaining an unconstitutional policy when constitutional alternatives are available to achieve the same goal."

82.    *Capitol Records, Inc. v. Thomas-Rasset*, 692 F.3d 899 (8th Cir. 2012) states the following:

a. "a district court has authority to issue a broad injunction in cases where "a proclivity for unlawful conduct has been shown.""

b. "The district court is even permitted to "enjoin certain otherwise lawful conduct" where "the defendant's conduct has demonstrated that prohibiting only unlawful conduct would not effectively protect the plaintiff's rights against future encroachment.""

c. "If a party has violated the governing statute, then a court may in appropriate circumstances enjoin conduct that allowed the prohibited actions to occur, even if that conduct "standing alone, would have been unassailable.""

83. The following excerpts from _Securities & Exch. Com'n v. Management Dyn., Inc._, 515 F.2d 801 (2d Cir. 1975) also address a proclivity for unlawful conduct and injunctive relief that may be used to address that:

a. "the commission of past illegal conduct is highly suggestive of the likelihood of future violations."

b. "We have, accordingly, held that the "critical question" in issuing an injunction is whether "there is a reasonable likelihood that the wrong will be repeated.""

c. "Whether the inference that the defendant is likely to repeat the wrong is properly drawn, however, depends on the totality of circumstances, and factors suggesting that the infraction might not have been an isolated occurrence are always relevant."

84. The following excerpts from _Housing Works, Inc. v. Turner_, 00 Civ. 1122 (LAK)(JCF) (S.D.N.Y. Sept. 15, 2004) address how retaliation may be proven:

a. "The plaintiff can demonstrate a causal connection between its protected activities and the defendants' adverse actions either "indirectly by means of circumstantial evidence, . . . or directly by evidence of retaliatory animus.""

b. "Summary judgment is inappropriate when "questions concerning the employer's motive predominate the inquiry." Morris, 196 F.3d at 110. "Nonetheless, we have held that a plaintiff may not rely on conclusory assertions of retaliatory motive to satisfy the causal link . . . Instead, he must produce `some tangible proof to demonstrate that [his] version of what occurred was not imaginary.""

c. "A plaintiff's circumstantial evidence of retaliation could include the timing of the defendant's actions, such as when the alleged retaliation closely follows the plaintiff's speech."

    d.    "The plaintiff can also proffer evidence of unequal treatment, or an ongoing campaign of retaliation."

85.    *Vaher v. Town of Orangetown, NY*, 916 F. Supp. 2d 404 (S.D.N.Y. 2013) addresses the legal standard for proving violations of Fourteenth Amendment selective-enforcement and equal protection rights that stem from the class-of-one theory and states the following about that:

> "Where, as here, a plaintiff does not claim to be a member of a constitutionally protected class, he may bring an Equal Protection claim pursuant to one of two theories: (1) selective enforcement, or (2) "class of one."[36] In order to state a viable equal protection claim on a theory of selective enforcement or selective treatment, a plaintiff must show that: (1) "[he], compared with others similarly situated, was selectively treated, and (2) the selective treatment was motivated by an intention to discriminate on the basis of impermissible considerations, such as race or religion, or to punish or inhibit the exercise of constitutional rights, or by a malicious or bad faith intent to injure the [plaintiff]." Zahra v. Town of Southold, 48 F.3d 674, 683 (2d Cir.1995) (quoting FSK Drug Corp. v. Perales, 960 F.2d 6, 10 (2d Cir.1992)).
>
> In order to adequately allege an equal protection claim on a "class of one" theory, a plaintiff must demonstrate that: (1) he was "intentionally treated differently from others similarly situated," and (2) "that there is no rational basis for the difference in treatment." Vill. of Willowbrook v. Olech, 528 U.S. 562, 564, 120 S.Ct. 1073, 145 L.Ed.2d 1060 (2000) (per curiam); see also Engquist v. Oregon Dep't of Agric., 553 U.S. 591, 128 S.Ct. 2146, 170 L.Ed.2d 975 (2008) (examining Olech). Stated differently, a plaintiff asserting a "class of one" equal protection claim must allege that the intentional disparate treatment alleged to state the first element of the claim was "wholly arbitrary" or "irrational." Aliberti v. Town of Brookhaven, 876 F.Supp.2d 153, 163-64 (E.D.N.Y.2012) (citing Giordano v. City of New York, 274 F.3d 740, 751 (2d Cir. 2001)); see also Analytical Diagnostic Labs, Inc. v. Kusel, 626 F.3d 135, 140 (2d Cir.2010), cert. denied ___ U.S.___, 131 S.Ct. 2970, 180 L.Ed.2d 247 (2011).
>
> Plaintiff is required to allege differential treatment from "similarly situated" *434 individuals in order to state a viable equal protection claim under either theory."

86.    **a)** *Shakhnes v. Eggleston*, 740 F. Supp. 2d 602, 632 (S.D.N.Y. 2010), **b)** *Hills v. Hein*, No. 1: 18-cv-01240 (BKS/CFH) (N.D.N.Y. Sept. 20, 2019), and **c)** *Duncan v. Sullivan County*, No. 18-cv-9269 (VB) (S.D.N.Y. Mar. 2, 2020) were lawsuits against OTDA and HRA. *Shakhnes* contains applicable findings that confirm that unlawful delays with OTDA's fair hearing procedures cause people undue, material, and cumulative harm when they engage in litigation

that is assigned to OTDA as an administrative appellant forum and experience such delays by
OTDA. Findings in _Hills_ addressed deficiencies about OTDA's processes and procedures that
violated the due process rights of the plaintiff in that case that was about a matter that concerned
being issued retroactive government benefits. My OTDA litigation have also been partly about
being issued retroactive government benefits while they have been plagued by repeated and
major violations of my federal constitutional rights by OTDA and HRA personnel.  _Duncan_
points out that though a party "who objects to the act of an administrative agency must exhaust
available administrative remedies before being permitted to litigate in a court of law", that rule is
not inflexible and "need not be followed "when an agency's action is challenged as either
unconstitutional or wholly beyond its grant of power, or when resort to an administrative remedy
would be futile or when its pursuit when cause irreparable injury. This information about
bypassing normal procedures is equally applicable to OTDA fair hearings and state court article
78 proceedings to allow litigants the ability to pursue claims in federal court when history has
demonstrated that those first two options have failed them by violating their constitutional rights
in substantial ways. The following additional entirely true and accurate information about the
findings in _Duncan_ also confirms that supplemental jurisdiction over state-court and OTDA fair
hearing matters is warranted partly because the manner in which the article 78 proceeding in my
HRA lawsuit was conducted by Judge Bannon and Defendant Mosczyc was that of a sham while
her conduct in that case was clearly that of a cat's paw for HRA when she illegally granted an
illegal _ex-parte_ adjournment application on 4/11/17 that enabled her and Mr. Mosczyc to steal
my scheduled 4/12/17 oral arguments hearing in that case and when she illegally ignored
material and admissible evidence that I submitted in that case on 5/19/17 in conjunction with an
order to show cause application on a USB thumb drive that contained relevant audio recordings

that included my recording of my 4/11/17 OTDA fair hearing against HRA in parallel litigation that I had intended to play on 4/12/17 during what would have otherwise been my 4/12/17 oral arguments hearing in that case:

    a.    The judge in that case properly conducted himself as an astute fact-finder as he wisely refused to rush to judgment that would cause him to assume that an article 78 proceeding for the plaintiff in that case would provide that plaintiff a constitutionally adequate remedy.

    b.    It confirms that it's permissible to have a federal court to intervene in and exercise jurisdiction over a fair hearing matter that is assigned to OTDA in instances in which "an agency's action is challenged as either unconstitutional or wholly beyond its grant of power, or when resort to an administrative remedy would be futile or when its pursuit when cause irreparable injury."

        i.    It confirms that exhaustion of administrative remedies about such a matter isn't required "where only an issue of law is involved . . . or where the issue involved is purely the construction of the relevant statutory and regulatory framework."

    c.    It confirms that the doctrine of primary jurisdiction "is not usually applied "when the issue at stake is legal in nature and lies within the traditional realm of judicial competence."

    d.    The plaintiff in _Duncan_ alleged that OTDA practices had caused a stalled resolution of fair hearings in violation of his or her due process rights before the judge in that case refused to dismiss that case pursuant to the doctrine of primary jurisdiction.

87.     The upshot of the findings in *Matter of Yarde v. Roberts*, 60 Misc. 3d 686, 79 N.Y.S.3d 462 (NY: Supreme Court, Albany 2017) that was a lawsuit against a former OTDA commissioner was that OTDA and a New York State social services agency that is a counterpart of HRA were caught not following procedures to the detriment of someone who sought government benefits to which he or she was entitled.

88.     Findings that were issued in **a)** *Help Social Serv. Corp. v. Harris*, 2020 N.Y. Slip Op 50818 (Civ. Ct. 2020) and **b)** *Matter Of Volunteers of America-Greater New York, Inc. v. Almonte*, 65 A.D.3d 1155, 886 N.Y.S.2d 46 (App. Div. 2009), **c)** *512 E. 11TH ST. HDFC v. Grimmet*, 181 A.D.2d 488, 581 N.Y.S.2d 24 (App. Div. 1992) have established that sufficiently close entwinement has previously been determined to exist between HRA and their business partners that provide shelter services through contracts with HRA. Similarly close entwinement has existed between HRA and Urban.

89.     On 5/7/18, HRA provided me a copy of what was then its contract with Urban for my building. It did so in response to a FOIL demand that I submitted to it. That contract is a PDF file that is 95 pages in length. I have caused a copy of it to be available at https://drive.google.com/open?id=1uv2zQbC4dss_vcVkHo12CMtdRw3eY6L8. That contract's terms on page 67 confirm that Mr. Banks is authorized to replace Urban as the slumlord of my building with a different vendor that will conduct its operations properly and that Mr. Banks is authorized to do so in a relatively prompt fashion. Those terms also indicate that in the event that the City of New York may incur expenses to replace Urban as such, then Urban must reimburse the City of New York for those expenses. I have repeatedly urged Mr. Banks to do so and he has refused. That contract's terms – especially those that appear between pages 92 and 95 - also strongly suggest that HRA micromanages to a large degree how Urban operates as the slumlord

of my building that has caused Urban to act as an agent, proxy, and alter-ego of HRA in that respect while establishing that the operations of Urban are sufficiently entwined with those of HRA with respect to providing shelter services. A thorough review of that entire contract's terms and full compliance with discovery demands that I have submitted to HRA's personnel certainly is warranted before a judge may prejudicially claim that sufficient entwinement doesn't exist between Urban and HRA and/or the City of New York that would cause Urban and its personnel to function as state actors. This pertains to not judging a book by its cover and how some clever kids have been known to slip Pepsi labels around beer cans to not let their parents know what they are really drinking.

90.     The manner in which people who reside in my building have been issued apartments in it has been through a subleasing arrangement and illusory tenancy that is very similar to the matter that was litigated in _Oquendo v. Apex Asset Management, LLC_, No. 450077/18, (Sup. Ct., New York Cty.).

91.     My claims in this complaint are partly about the matters listed next that aren't barred by claim preclusion that correspond to K4 and K5. This is because hindsight confirms that I was illegally denied my rights pursuant to the First and Fourteenth Amendment to **a)** a full and fair hearing in K4 prior to its dismissal and **b)** file an amended complaint in K4 in response to U.S. District Judge Louis Stanton's plan to dismiss K4 that would have contained greater facts, evidence, and matters of law to support my claims before Judge Stanton prematurely, prejudicially, and irrationally dismissed K4 without prejudice. Also, the Second Circuit bizarrely violated my rights pursuant to the Fourteenth Amendment and First Amendment with respect to Federal Rules of Appellate Procedure ("FRAP") Rule 34 to be granted an oral arguments hearing for K5. That violated my rights to petition, seek redress, and be granted due process and equal

protection. The fact that K4 wasn't dismissed with prejudice entitles me to re-file K4 with such

greater facts, evidence, and matters of law as well as refined and alternative legal theories. It's

also worth pointing out that the Second Circuit **a)** confirmed between lines 16 and 19 on page 3

in its 12/20/21 order in K5 that Judge Stanton's attention to detail in K4 was lackluster by

repeatedly and materially misstating information from my complaint in K4 and **b)** didn't modify

Judge Stanton's dismissal of K4 to cause it to be dismissed with prejudice.

92.     The following excerpt from *In Re Payment Card Interchange Fee And Merchant*

*Discount Antitrust Litigation*, No. 05-MD-1720 (MKB) (E.D.N.Y. Aug. 30, 2018) that cites

Second Circuit decisions confirms this point about using other legal theories:

> ""Provided the amended pleading is based on the same series of transactions and
> occurrences alleged in the original pleading, the revised pleading will relate back to the
> original pleading, even where the revised pleading contains legal theories not included in
> the original." *White v. White Rose Food, a Div. of DiGiorgio Corp.,*128 F.3d 110, 116 (2d
> Cir. 1997) (first citing *Travelers Ins. Co. v. 633 Third Assocs.,*14 F.3d 114, 125 (2d Cir.
> 1994);[6] and then citing *Villante v. Dep't of Corrections of the City of New York,* 786
> F.3d 516, 520 (2d Cir. 1986)); *see also Mercier v. Greenwich Acad., Inc.,* No. 13-CV-4,
> 2013 WL 3874511, at *6 (D. Conn. July 25, 2013) ("The fact that an amendment changes
> the legal theory on which the action initially was brought is of no consequence if the
> factual situation upon which the action depends remains the same and has been brought
> to defendant's attention by the original pleading.""

93.     The decision that was issued in *Shollenberger v. New York State Unified Court System*,

No. 18-cv-9736 (VB) (S.D.N.Y. June 28, 2019) addresses *ex Parte Young* and confirms that the

New York State Unified Court System may be sued. What is shown next is a relevant excerpt

from it suggests that when plaintiffs may wish to sue OCA and/or the UCS to be granted relief,

they have to instead sue New York State Chief Administrative Judge Lawrence Marks to be

granted relief. He is among the top New York State judges who oversees how the New York

State court system operates and I talked with him on 5/3/18 inside of the offices of a law firm

named Proskauer at 1875 Broadway about judicial misconduct that Defendant Bannon

committed in my HRA lawsuit. He has repeatedly been sued partly because of the level of

control and influence that he has over how OCA operates.

**Excerpt from *Shollenberger*:**

"[A] plaintiff may sue a state official acting in his official capacity—notwithstanding the Eleventh Amendment—for prospective, injunctive relief from violations of federal law" under the well-known exception set forth in Ex parte Young, 209 U.S. 123 (1908). State Emp. Bargaining Agent Coal. v. Rowland, 494 F.3d 71, 95 (2d Cir. 2007) (internal quotation omitted). "In determining whether the doctrine of Ex parte Young avoids an Eleventh Amendment bar to suit, a court need only conduct a straightforward inquiry into whether the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." Verizon Md., Inc. v. Pub. Serv. Comm'n of Md., 535 U.S. 635, 645 (2002) (internal quotation marks and brackets omitted). Plaintiff must also name defendants in their official capacities who have "the authority to provide the requested relief." Ross v. New York, 2016 WL 626561, at *4 (S.D.N.Y. Feb. 16, 2016) (quoting Siani v. State Univ. of N.Y. at Farmingdale, 7 F. Supp. 3d 304, 317 (E.D.N.Y. 2014)). To state such a claim, a plaintiff need only allege the defendant has responsibility for the alleged conduct and the ability to redress the alleged violations. See CSX Transp., Inc. v. N.Y. State Office of Real Prop. Servs., 306 F.3d 87, 99 (2d Cir. 2002) ("Ex Parte Young allows for jurisdiction over the Individual Defendants inasmuch as it is in the performance of their duties that there may be an ongoing violation of federal law.").

94.   *Marquez v. Hoffman*, No. 18-cv-7315 (ALC)(GWG)(S.D.N.Y.) is an ongoing lawsuit

against

95.   *Hafer v. Melo*, 502 U.S. 21, 112 S. Ct. 358, 116 L. Ed. 2d 301 (1991) contains the

following findings that confirms that New York State government personnel may be sued for

damages in their individual capacity instead of them being immune from that because of the

Eleventh Amendment:

a.   ""it has been settled that the Eleventh Amendment provides no shield for a state official confronted by a claim that he had deprived another of a federal right under the color of state law.""

b.   "damages awards against individual defendants in federal courts "are a permissible remedy in some circumstances notwithstanding the fact that they hold public office."

c.   "the Eleventh Amendment does not erect a barrier against suits to impose

"individual and personal liability" on state officials under § 1983."

    d.    "Insofar as respondents seek damages against Hafer personally, the Eleventh Amendment does not restrict their ability to sue in federal court.

        We hold that state officials, sued in their individual capacities, are "persons" within the meaning of § 1983. The Eleventh Amendment does not bar such suits, nor are state officers absolutely immune from personal liability under § 1983 solely by virtue of the "official" nature of their acts."

96.    *McCray v. State of Maryland*, 456 F.2d 1 (4th Cir. 1972) is about an instance in which a court clerk was accused of impeding someone's First Amendment right to file court papers as the Court stated that immunity wouldn't cover that.  By using an illegal ex-parte application to steal my scheduled 4/12/17 oral arguments in my HRA lawsuit, Defendant Mosczyc illegally prevented me from submitting written opposition about his adjournment request before it was illegally granted. *McCray* also states the following about this point:

    "In cases where an official's lawful authority was exceeded[13] or the court order not followed[14] no immunity was recognized and the officer was held liable under section 1983 if his actions abridged an individual's federally protected rights. In the situation alleged by plaintiff in this case, the clerk is entitled to no more protection than any other state ministerial functionary who fails to discharge a mandatory duty."

97.    What I will discuss next is about the fact immunity that includes government attorney immunity isn't available to the defendants in this case for my claims against them. *Dory v. Ryan*, 25 F.3d 81, 83 (2d Cir. 1994) is cited by various court decisions that partly consists of *Hester v. Albany County District Attorney*, No. 1:20-cv-1153 (LEK/CFH) (N.D.N.Y. Apr. 22, 2021). This is partly because *Dory* confirms that people who are part of the judicial process that includes government attorneys and witnesses "enjoy immunity only for their actions in testifying, and are not immune for extra-judicial actions such as an alleged conspiracy to present false testimony." The reference in *Hester* to *Dory* appears in a section that also includes a citation from *Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123, 130 (2d Cir. 1997). That section is entitled "False

Testimony" and discusses what is known as the "extra-judicial conspiracy exception" that causes immunity to not be available to government personnel who "engage in a conspiracy to present false testimony, to tamper with, destroy, and manufacture evidence or to withhold exculpatory evidence." That section further confirms that a government official who commits illegal acts that violates someone's "constitutional right to a fair trial, and the harm occasioned by such an unconscionable action is redressable in an action for damages under 42 § U.S.C. 1983." The preceding discussion was presented to emphasize the fact that the decisions that are made about whether to grant government attorneys for how they conduct themselves needs to be the result of **a)** a diligent and fact-intensive process that analyzes the specific nature of the conduct about which government attorneys seek immunity instead of **b)** rubber-stamping immunity for government attorneys.  Immunity for government attorneys is a privilege that may not necessarily be granted instead of a right largely because that may be abused to deliberately commit illegal acts and omissions that do not constitute advocacy work that is what government immunity is about. For example, if a government attorney brings a canister of paint into a courtroom and spreads it over the opposing attorney's legal papers, and his client, that certainly would not be covered by immunity. Also, _Penate v. Kaczmarek_, 928 F.3d 128 (1st Cir. 2019) confirms that government attorney immunity isn't available for instances in which government attorneys illegally withhold evidence from others. It also confirms that such personnel are performing an administrative function as a custodian of such evidence that doesn't qualify for immunity protection. When government attorneys knowingly and/or recklessly lie in litigation in furtherance of a fraudulent scheme to deny someone of something to which they're legally entitled, that isn't about advocacy on behalf of a government and is instead fraud. When government attorneys illegally use false instruments that include illegally forged apartment lease

agreements in litigation to benefit those who they represent, that also isn't advocacy and is instead fraud. When government attorneys engage in illegal gamesmanship to steal an oral arguments hearing from a plaintiff in litigation through the use of illegal ex-parte communications, that isn't advocacy work and instead fraud and a crime against First and Fourteenth Amendment rights.

98.    *Cornetta v. Town of Highlands*, No. 18-cv-12070 (KMK) (S.D.N.Y. Jan. 22, 2020) contains the following excerpts from *Gingras v. Think Fin., Inc.,* 922 F.3d 112 (2d Cir. 2019) that confirm that a plaintiff's civil RICO claim may be viable against a municipal corporation:

> "Some district courts (and at least one treatise) endorse a rule that government entities, and their officers sued in their official capacities, cannot ordinarily be sued under RICO. At least as to suits for prospective, injunctive relief, their reasoning is not persuasive. We agree with the Third Circuit that courts exempting municipalities from RICO liability on the ground that they are incapable of forming a RICO mens rea have failed to furnish a defensible explanation for their conclusion, particularly given that private corporations are routinely held liable for damages under RICO."

99.    The following are additional excerpts from *Gingras* that **a)** further elaborate about why the Second Circuit decided in that case that civil RICO claims may be viable against the City of New York and other municipal corporations and **b)** showcases the Machiavellian irrelevance and deceitfulness of Judge Stanton's remark in the footnote section on page 13 of his 10/21/20 dismissal order in K4 in which he stated that "Courts have held that there is no municipal liability under civil RICO. *See, e.g.*, *Rogers v. City of New York*, 359 F. App'x 201, 204 (2d Cir. 2009) (summary order)":

> "It appears that the reasoning in these and other decisions has less to do with the inability of a public entity to form a criminal intent than with concern over the appropriateness of imposing the burden of punitive damages on taxpayers based on misconduct of a public official. For example, while the Ninth Circuit in *Lancaster Community Hospital v. Antelope Valley Hospital District,* 940 F.2d 397 (9th Cir. 1991), summarily asserts that "government entities are incapable of forming a malicious intent," it relies on the fact that "the taxpayers[ ] will pay if Lancaster's RICO claim is successful," and, in light of

RICO's treble damages provisions, be "made liable for extraordinary damages as a result of the actions of a few dishonest officials." *Id.* at 404. This outcome, the court observes, would offend "public policy."[2] *Id.*

But concern for the inappropriateness of saddling the taxpayers with the financial burden of punitive damages imposed on a government entity is plainly not implicated where, as here, the relief sought is an injunction and not money damages."

100.    Findings in *Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639, 128 S. Ct. 2131, 170 L. Ed. 2d 1012 (2008) confirm that no reliance is needed for mail and wire fraud acts that are used for civil RICO claims. In *Doe v. Trump*, No. 18-cv-9936 (LGS)(S.D.N.Y. July 24, 2019), Judge Schofield addressed civil RICO claims partly by stating that "a complaint must allege a causal connection between the substantive RICO violation and the plaintiff's injury that is not "too remote".

101.    New York State General Business Law §349(h) confirms that a court may award me up to $1,000 in damages for harm that I suffered as a result of violations of New York State General Business Law §349.

102.    The following excerpt from *Glus v. Brooklyn Eastern Dist. Terminal*, 359 U.S. 231, 79 S. Ct. 760, 3 L. Ed. 2d 770 (1959) concerns estoppel:

> "To decide the case we need look no further than the maxim that no man may take advantage of his own wrong."

103.    In the same vein, *Hansen v. Harris*, 619 F.2d 942 (2d Cir. 1980) states the following about governmental estoppel:

> "The Government may sometimes be estopped from enforcing its rules, based on the conduct of its agents."

104.    Section 4 of New York City Mayoral Executive Order 16 that is discussed in a report that is entitled "Reporting Obligations" that DOI issued and is available at

https://www1.nyc.gov/site/doi/report/reporting-obligation.page confirms that personnel of the

City of New York are required to report information about conflicts of interest, waste, and corruption to DOI or an inspector general. It also confirms that their failure to report such information is grounds for termination.

105.    NYC Charter §1116 concerns acts of fraud, neglect of duty, and intentional violations of law that are committed by personnel who work for the City of New York that is related to the jobs that they have with the City of New York. NYC Charter §1116(a) states the following:

> "Any council member or other officer or employee of the city who shall wilfully violate or evade any provision of law relating to such officer's office or employment, or commit any fraud upon the city, or convert any of the public property to such officer's own use, or knowingly permit any other person so to convert it or by gross or culpable neglect of duty allow the same to be lost to the city, shall be deemed guilty of a misdemeanor and in addition to the penalties imposed by law and on conviction shall forfeit such office or employment, and be excluded forever after from receiving or holding any office or employment under the city government."

106.    NYC Charter §1116(b) states the following:

> "Any officer or employee of the city or of any city agency who shall knowingly make a false or deceptive report or statement in the course of duty shall be guilty of a misdemeanor and, upon conviction, forfeit such office or employment."

107.    New York State Public Officer Law §30 is about the creation of vacancies for government jobs throughout New York State. It was previously used to strip Chaim Deutsch of the job that he had as a member of the City Council after he pled guilty to tax evasion that was after I wasted my time testifying to him during public hearings that the City Council held and otherwise talked with him outdoors. This Court has the power to invoke New York State Public Officer Law §30(1)(f) and (1)(g) to effectively fire people who hold government jobs throughout New York State that are subject to New York State Public Officer Law §30. New York State Public Officer Law §30(1)(f) confirms that the "entry of a judgment or order of a court of competent jurisdiction declaring him to be incompetent" is sufficient to create a vacancy for the government job that someone has that is subject to New York State Public Officer Law §30.

New York State Public Officer Law §30(1)(g) confirms that the "judgment of a court, declaring void his election or appointment, or that his office is forfeited or vacant" also is sufficient to create a vacancy for the government job that someone has that is subject to New York State Public Officer Law §30. Administrative law judges, hearing officers, and other personnel who work for OTDA who have their jobs as a result of appointments or elections are among government personnel in New York State whose government jobs as such appear to be subject to New York State Public Officer Law §30 and it seems that I don't need to sue them to cause them to be fired from their government jobs because I can instead use New York State Public Officer Law §30 in conjunction with ex Parte Young while suing OTDA's Commissioner to cause them to be fired immediately.

108.    New York City Charter §2604(2) and (3) state the following:

> "2.   No public servant shall engage in any business, transaction or private employment, or have any financial or other private interest, direct or indirect, which is in conflict with the proper discharge of his or her official duties."

> "3.   No public servant shall use or attempt to use his or her position as a public servant to obtain any financial gain, contract, license, privilege or other private or personal advantage, direct or indirect, for the public servant or any person or firm associated with the public servant."

109.    New York City Charter §2606(c) states the following partly about New York City Charter §2604:

> "Any person who violates section twenty-six hundred four or twenty-six hundred five of this chapter shall be guilty of a misdemeanor and, on conviction thereof, shall forfeit his or her public office or employment. Any person who violates paragraph ten of subdivision b of section twenty-six hundred four, on conviction thereof, shall additionally be forever disqualified from being elected, appointed or employed in the service of the city. A public servant must be found to have had actual knowledge of a business dealing with the city in order to be found guilty under this subdivision, of a violation of subdivision a of section twenty-six hundred four of this chapter."

110.    New York City Conflict of Interest Board Rule §1-17 states the following:

(a) It shall be a violation of Section 2604(b)(2) of the Charter for any public servant to intentionally or knowingly:

(1) solicit, request, command, importune, aid, induce, or cause another public servant to engage in conduct that violates any provision of Section 2604 of the Charter; or

(2) agree with one or more persons to engage in or cause conduct that violates any provision of Section 2604 of the Charter.

(b) For the purposes of this section, "any provision of Section 2604 of the Charter" shall not include a violation of Section 2604(b)(2) of the Charter that does not also violate a rule of the Board.

## Background Facts

1.      Since this case is largely about major deficiencies in violation of my federal constitutional rights and other laws that are with both OTDA's fair hearing program and article 78 proceedings that I have experienced, it's appropriate for me sufficiently identify and describe examples of those deficiencies that justify allowing me to commence this federal civil action instead of having to yet again resort to commencing an article 78 proceeding that would be filed with the New York State Supreme Court in Manhattan in which I can reasonably expect to again have my rights pursuant to the U.S. Constitution and other laws violated with impunity following a face-to-face conversation that I had with Defendant Marks about that on 5/3/18 to no avail after I recorded a video recording of him during the meeting in which I had that conversation with him. My conversation with him then occurred after I had a face-to-face conversation with former New York State Chief Judge Jonathan Lippman on 3/1/16 at the Yale Club in Manhattan as I then asked him why judges are able to decide recusal motions that are filed against them instead of having other people issue those decisions for obvious reasons that largely pertain to bias and prejudice. Mr. Lippman told me then that the system wasn't perfect about that. Hindsight confirms that that was a gross understatement by him and that practice has caused me substantial and irreparable harm that persists. The information that is presented next sufficiently identifies

and describes a sufficient number of examples of constitutional deficiencies with OTDA's fair

hearing program and article 78 proceedings.

**Constitutional Deficiencies with OTDA's Fair Hearing Program**

| # | Date | Description |
|---|------|-------------|
| 1 | 7/5/16 | An OTDA administrative law judge ("ALJ") illegally and abruptly terminated the fair hearing in which I was participating against HRA in OTDA's offices in Brooklyn at 14 Boerum Place for OTDA fair hearing number 7316477K in retaliation for how I lawfully expressed myself during that hearing in which she hadn't been paying proper attention to my remarks just 3 days after I was viciously assaulted by my former roommate for the apartment in which I reside. Her termination of that hearing flagrantly violated my First and Fourteenth Amendment rights. Remarks that I made as I left that building then were in the context of justifiably complaining about the fact that she had just violated my rights by retaliating against me during that hearing by suddenly terminating it at the same time that I was then struggling to recover from my recent assault that was enabled by the B&S. OTDA never allowed me to return to its building at that address thereafter and never accorded me any proper due process about that retaliatory and pretextual decision by it. |
| 2 | 9/27/16 | Defendant Scalia committed wire fraud against me on 9/27/16 in an e-mail message that I received from her at 11:19 am in which she fraudulently claimed that HRA would comply with OTDA's 9/15/16 fair hearing decision for fair hearing number 7316477K as quickly as possible. HRA has never fully complied with that in violation of my due process rights and other laws. |
| 3 | 10/26/16 | Someone who appears to have been Lori Kowslowski of OTDA made remarks on or about 10/26/16 that appear in a report that is known as an "evidence packet" that I received on 2/8/17 from HRA in which she committed wire fraud against me by fraudulently claiming that HRA fully complied with OTDA's 9/15/16 fair hearing decision for fair hearing number 7316477K that required HRA to pay for the entire cost of renting a storage unit on my behalf for the period between May of 2016 and September of 2016 partly by reimbursing me for the storage unit rental costs that I paid for the months of May, June, and July of 2016 that HRA had previously and fraudulently induced me to pay by shirking its legal duty to pay for those expenses instead on my behalf. When HRA issued a payment for storage unit rental costs on my behalf on or about 9/28/16, it was legally required by 18 NYCRR §352.31(f)(1) and my Fourteenth Amendment equal protection rights that apply to OTDA fair hearing decision number 3792259Q that OTDA issued on 11/12/02 that issue the reimbursement to me that I just discussed. However, HRA has illegally never reimbursed for that. What I just discussed violated my due process rights and equal protection rights that apply to full compliance with OTDA fair hearing decisions. |
| 4 | 1/24/17 | Lori Kowslowski of OTDA committed wire fraud against me by telling me during a telephone call that I had with her that HRA complied with OTDA's |

|   |   | 9/15/16 fair hearing decision. I then sent an e-mail message to Defendant Spitzberg on 1/24/17 at 9:46 pm in which I briefed him about my telephone call with Ms. Kowslowski. Ms. Kowslowski also fraudulently claimed that an OTDA judge would need to explicitly order HRA to reimburse me for storage expenses I paid in order for HRA to be found to be in non-compliance of such a decision if it then didn't issue such a reimbursement. |
|---|---|---|
| 5 | 1/25/17 | Defendant Spitzberg sent me an e-mail message on 1/25/17 at 2:08 pm in which he stated that he would provide a copy of OTDA's 2002 fair hearing decision for fair hearing number 3792259Q to an OTDA hearing officer who participated in a fair hearing that I had on 1/24/17 that was adjourned by OTDA. The fact that OTDA thereafter never compelled HRA to reimburse me for storage expenses that I paid confirms that OTDA violated my due process and equal protection rights that apply to that 2002 fair hearing decision. |
| 6 | 2/9/17 | After I faxed a 62-page fax to OTDA to apprise it about claims that I was asserting against HRA about additional matters to have OTDA conduct fair hearings about those matters within 30 days, OTDA illegally never conducted those hearings that it was legally required by it own policies to conduct within 30 days. That remains a due process, equal protection, and First Amendment violation. |
| 7 | 4/11/17 | The OTDA administrative law judge who presided over the fair hearing that OTDA conducted between HRA and I on that date for fair hearing number 7406570N told me at the beginning of it that that hearing wouldn't address any matter other than one that was about a storage expense matter. That established that OTDA had illegally and substantially changed the agenda for that hearing without providing me prior to notice to object to that prior to that hearing and otherwise be apprised about that in flagrant violation of my First Amendment and Fourteenth Amendment rights. That change totally blindsided me for that hearing and the matters that had which I had prepared for that had previously been scheduled by OTDA to be addressed during that hearing. It's reasonable to infer that OTDA and HRA engaged in illegal ex-parte communications to substantially change that hearing's agenda without notifying me.

Also, the OTDA administrative law judge who presided over that hearing illegally condoned the fact that Defendant Gerber committed wire fraud during it partly by claiming that a document to which she referred was the apartment lease agreement that I signed on 2/16/16 with Lisa Lombardi of Urban for apartment 4C in the building in which I reside. The OTDA administrative law judge stated during that hearing that she was then looking at what I signed on 2/16/16 and that it showed that it was for apartment 4C. The document to which Ms. Gerber had referred was a false instrument and forgery that illegally contained a photocopy of my signature from the lease that I signed on 2/16/16. That document that Ms. Gerber referred to was for Room 1 within apartment 4B in the building in which I reside. I never signed that forgery, agreed to its terms, nor authorized that forgery to be manufactured. HRA unilaterally and illegally did that or did so with Urban. |

| | | |
|---|---|---|
| | | Also, the OTDA administrative law judge who presided over that hearing illegally allowed Ms. Gerber to violate res judicata during it by fraudulently claiming that I wasn't eligible to have HRA to pay for storage unit rental expenses on my behalf while I resided where I reside. Ms. Gerber lied about that as she stated that HRA did yet another reassessment in 2017 about whether I was eligible to have HRA pay for storage unit rental expenses on my behalf in response to OTDA's 9/15/16 fair hearing decision for fair hearing number 7316477K. Ms. Gerber stated then that HRA's reassessment indicated that I wasn't eligible to have HRA to pay for storage unit rental expenses on my behalf while I still reside because HRA deemed that housing arrangement to be that of "permanent housing." However, HRA had absolutely no grounds to conduct that new reassessment and determination because no change in relevant facts, matters of law, and evidence had occurred after HRA previously determined that I actually was eligible. Also, I clearly pointed out during that 4/11/17 fair hearing that HRA issued me a notice dated 1/27/17 in which it expressed that it had just issued a payment for storage expenses on my behalf while I resided where I still reside and that it would continue to pay for those expenses on my behalf while I continued to reside where I reside. These facts confirm that HRA and OTDA violated my First Amendment and Fourteenth Amendment rights during that 4/11/17 hearing and that Ms. Gerber committed wire fraud against me during it as well that wasn't shielded by immunity because her remarks weren't advocacy work and were instead in furtherance of a criminal cover-up and conspiracy with others. Her reliance upon a false instrument that was a forgery during that hearing also demonstrated that her conduct then wasn't shielded by immunity. |
| 8 | 4/19/17 | OTDA committed mail fraud as it issued a fair hearing decision on this date for fair hearing number 7406570N by illegally accepting the revised determination that HRA made in March of 2017 in which HRA fraudulently claimed that I wasn't eligible to have HRA to pay for storage expenses on my behalf while I resided where I still reside because of HRA's fraudulent claim that the apartment in which I reside is permanent housing for me notwithstanding the fact that I have never had a valid lease for it that prevented HRA's claim from having a factual and legal basis. Also, the overarching fact that HRA continuously paid for storage expenses on my behalf while I resided where I still reside for the storage rental period between September of 2016 thru September of 2018 clearly proves that HRA was committing fraud against me all along that OTDA ignored as HRA was essentially saying completely different things about the same matter from 2 sides of its mouth that established that HRA's personnel had absolutely no credibility. The fact that OTDA refused to issue its 4/19/17 fair hearing decision in my favor was a clear First Amendment and Fourteenth Amendment violation. |
| 9 | 2/1/19 | After I sent an e-mail message jointly to Defendant Spitzberg, Mr. Banks, and Defendant Scalia on that date at 1:07 pm in which I informed Mr. Spitzberg that HRA had illegally not complied with discovery demands that I submitted to HRA via e-mail to prepare for an OTDA fair hearing on that date, OTDA illegally didn't intervene on my behalf against HRA to get HRA to comply |

| | | with my discovery demands in violation of my First Amendment and Fourteenth Amendment rights. |
|---|---|---|
| 10 | 5/13/19 | Mr. Spitzberg lied in an e-mail message that I received from him at 4:44 pm in which he fraudulently claimed that OTDA had or would conduct fair hearings about the matters in the 62-page fax that I transmitted to OTDA on 2/9/17 that OTDA had been required to conduct fair hearings for within 30 days. His lie violated my due process rights. |
| 11 | 11/13/19 | Defendant Marks lied in a letter that is dated 11/13/19 that he sent to me by making the following fraudulent claims in it:<br><br>a.  OTDA isn't required by my First Amendment and Fourteenth Amendment rights to provide me advance notice of the specific issues that will be addressed during fair hearings that OTDA conducts that involve me.<br><br>b.  OTDA wasn't required by my due process rights to grant me a pre-deprivation hearing about its decision to ban me from visiting its offices located in Brooklyn that are at 14 Boerum Place to caused me to be unable to participate in face-to-face fair hearings against HRA.<br><br>c.  HRA isn't required to fully comply with my rights to discovery material prior to OTDA fair hearings between HRA and I. |
| 12 | 3/22/21 | Defendant Gregory issued an OTDA fair hearing on 3/22/21 for OTDA fair hearing number 8227101K that was about the same fair hearing matter that my 7/5/16, 9/7/16 and 4/11/17 OTDA fair hearings were about. That 3/22/21 fair hearing decision was full of fraudulent findings to my detriment and ignored the history of my OTDA litigation that clearly confirmed this point. That hearing decision was based upon a fair hearing on 2/9/21 prior to which HRA yet again illegally didn't comply with my discovery demands and I apprised OTDA about that fact during that 2/9/21 fair hearing as well as during an earlier related fair hearing on 12/23/20. The fact Mr. or Ms. Gregory didn't properly consider that history was a flagrant violation of my First Amendment and Fourteenth Amendment rights. |
| 13 | 7/7/21 | Between 9/6/16 and 4/23/17, I sent numerous e-mail messages that prove that Defendant Pertsas committed wire fraud by lying in remarks that he made in a letter dated 7/7/21 that he issued to me in a letter that was transmitted to me in an e-mail message that I received from OTDA on 7/7/21. He lied about OTDA's 3/22/21 fair hearing decision for fair hearing number 8227101K. Instead of rehashing matters, the sum and substance of his remarks in that letter prove that he illegally didn't bother to review the history of my OTDA litigation that proved that he lied in his remarks in his 7/7/21 letter to me. That violated my First Amendment and Fourteenth Amendment rights. |
| 14 | 8/27/21 | Defendant Marks fraudulently omitted the material fact in a PDF file that was attached to an e-mail message that I received from him at 4:14 pm that OTDA had the legal duty pursuant to 18 NYCRR §358-3.7(b)(4) to intervene on my behalf about the fact that HRA was continuing to illegally violate my rights to |

|    |    | receive the entirety of the discovery from it that I previously ordered HRA's personnel partly pursuant to 18 NYCRR §358-3.7(b)(2) to provide to me prior to OTDA fair hearings.<br><br>OTDA's refusal to intervene on my behalf against HRA about discovery matters was a First Amendment and Fourteenth Amendment violation. |
|----|----|----|
| 15 | 11/27/20 | Defendant Marks lied in a letter that is dated 11/27/20 that he sent to me by making the following fraudulent claims in it:<br><br>    a.  No valid grounds existed for OTDA to reopen prior OTDA fair hearings that OTDA conducted between HRA and I. Contrary to his lie, his letter was in response to an e-mail message that I sent to him on 11/23/20 in which I pointed out to him very clearly that I had recently received new evidence from personnel of Urban that further confirmed that HRA had committed fraud about material matters throughout all of the fair hearings that OTDA conducted between HRA and I.<br><br>    b.  I had ample opportunities to present evidence in the earlier fair hearings. Contrary to his lie, I repeatedly apprised him and other OTDA personnel that HRA was illegally defying my discovery demands leading up to OTDA fair hearings between HRA and I.<br><br>    c.  The record for earlier OTDA fair hearings was complete before a fair hearing decision was issued. What I just stated about HRA's noncompliance with my discovery demands applies to this as well. |
| 16 | 10/25/21 | Defendant Marks illegally cancelled a scheduled fair hearing between HRA and I that would address the fact that HRA illegally cancelled a cash-assistance benefit issuance on 10/22/21. I was entitled to participate in that fair hearing partly to ascertain the identities of all of HRA's personnel who were involved in causing that cancellation to occur, condoning that, directing that, and delaying having that fixed. The cancellation of that fair hearing violated my First Amendment and Fourteenth Amendment rights that included my right to obtain discovery material from HRA that I ordered HRA's personnel to provide to prior to that fair hearing. |
| 17 | 1/24/19,<br>8/7/19,<br>12/31/19,<br>5/12/20,<br>10/26/21 | These are the dates of letters that I received from Greg Harrington of OTDA in which he continued to inform me that OTDA was continuing to illegally prevent me from being able to participate in OTDA fair hearings from within OTDA's offices that are located at 14 Boerum Place while no due process was ever accorded to me about that. |

## Constitutional Deficiencies with Article 78 Proceedings

| #  | Date | Description |
|----|------|-------------|
| 1  | 1/17/17 | Judge Ostrager issued an order in my HRA lawsuit on 1/17/17 that granted a request that I made to proceed in that case anonymously and to have that case sealed. However, HRA personnel violated that sealing order on or prior to 6/28/17 by |

| | | |
|---|---|---|
| | | illegally causing non-HRA personnel of the City of New York to have information about my HRA lawsuit that they then promptly and illegally shared with other City of New York personnel. Judge Bannon also illegally violated Judge Ostrager's 1/17/17 order in her 8/10/17 decision in my HRA lawsuit by ending my ability to proceed anonymously in that case while lying as she claimed then that I had made a request to end that privacy and ignoring the fact that it certainly wasn't appropriate for her to modify a fellow judge's order who she didn't outrank and was assigned to the same courthouse as her. After I learned that personnel of HRA and other City of New York personnel violated Judge Ostrager's 1/17/17 sealing order, I sought to be awarded sanctions in my HRA lawsuit in response to those violations. However, Judge Bannon issued an order on 9/14/21 in which she lied by claiming that I could not be granted sanctions about that and other relief. What I just discussed were violations of my rights pursuant to the First and Fourteenth Amendment. |
| 2 | 4/11/17 | Judge Bannon's court clerk (Jerome Noriega) left me a voicemail message on 4/11/17 in which he informed me that Judge Bannon granted a application that Defendant Mosczyc submitted to her to adjourn my scheduled 4/12/17 oral arguments hearing in my HRA lawsuit and that the new date for that hearing was 6/7/17. Mr. Noriega omitted the fact that Mr. Mosczyc and Ms. Bannon criminally stole my 4/12/17 hearing from me through Mr. Mosczyc's use of an illegal and pretextual ex-parte adjournment application that violated my right to receive notice of his application before Judge Bannon could lawfully issue a decision about whether to deny or grant it. Mr. Mosczyc faxed his application to Judge Bannon's chambers on 4/5/17 and never apprised me about that application. By doing so, he criminally stole my right to submit opposition in my HRA lawsuit about his application and have my opposition fully considered by Judge Bannon before she could lawfully issue a decision about whether to deny or grant Mr. Mosczyc's 4/5/17 adjournment application.

Since my HRA lawsuit was then parallel litigation with respect to my OTDA litigation and I participated in an OTDA fair hearing on 4/11/17 that I recorded on audio and intended to testify about on 4/12/17 in my HRA lawsuit, that circumstance is sufficient for it to be objectively reasonable to infer that Mr. Mosczyc's illegal ex-parte adjournment application was a ploy to illegally prevent me from being able to exercise my First Amendment and Fourteenth Amendment right to timely testify in my HRA lawsuit about how Defendant Gerber committed wire fraud on 4/11/17 during my OTDA fair hearing in addition to testifying about the fact that OTDA illegally changed that hearing's agenda without notifying me prior to that hearing in flagrant violation of my rights while OTDA likely illegally did so while acting in concert with HRA for that purpose.

The simple fact that I had a bar mitzvah when I was a kid and HRA has other lawyers who could have been used in place of Mr. Mosczyc during my scheduled 4/12/17 oral arguments hearing, and Mr. Banks was recorded on video on 4/13/17 while he was Jewish and not complying with Passover's restrictions at the same time that he also continues to be a deceitful attorney like Mr. Mosczyc all confirm that no valid grounds existed to adjourn my 4/12/17 oral arguments hearing and that |

| | | |
|---|---|---|
| | | it was patently illegal to have done so. I still have Mr. Noriega's 4/11/17 voicemail audio recording. By allowing my 4/12/17 oral arguments hearing to be illegally adjourned while Mr. Mosczyc's application for that was submitted in an illegal fashion at the same time that Judge Bannon was then running for re-election as a corrupt judge, Judge Bannon and Mr. Mosczyc jointly proved that an article 78 proceeding in which I'm involved with claims against HRA egregiously violate my First Amendment and Fourteenth Amendment rights to petition for redress, receive information, and be accorded due process, and equal protection instead of falling victim to an illegal abuse of process, discrimination, and First Amendment retaliation. |
| 2 | 5/19/17 | On 5/19/17, I filed an order to show cause application in my HRA lawsuit partly in response to the fact that Judge Bannon and Mr. Mosczyc criminally stole my 4/12/17 oral arguments hearing that cost me my right to testify in it partly about my 4/11/17 OTDA fair hearing just 1 day after that hearing and the fact that Mr. Banks lied to my face yet again on 4/11/17 about why HRA had fallen short of its legal duty to make certain that I had access to legal assistance from its business partners that HRA funds for the purpose of providing such assistance. When I filed that order to show cause application, I included a USB thumb drive that contained numerous exhibits that were comprised of computer files that included admissible and relevant audio and video recordings in support of my request for relief in that application. However, Judge Bannon illegally ignored the entirety of that USB thumb drive. Also I made a request in that application to add the City of New York as a defendant in my HRA lawsuit. Judge Bannon then partly ignored that request by not explicitly stating whether she would let me add the City of New York as a defendant in that case. She also flagrantly abused her discretion in response to that 5/19/17 application by not granting requests that I made in it that would cause the City of New York to immediately preserve critically significant video recording evidence that was recorded on 4/27/17 in Queens by a video security camera that contained valuable evidence for my claims in K1 about illegal acts and omissions that were committed against me on 4/27/17 in Queens. I first asserted those claims about 4/27/17 in my HRA lawsuit on 5/19/17. Due to Judge Bannon's criminal negligence by not granting my request for those video recordings to be preserved one of them was overwritten for a period of time on 4/27/17 that I sought those recordings for. I also urged Judge Bannon in my 5/19/17 application to be granted injunctive relief in response to illegal acts and omissions that were committed against me on 4/27/17 in Queens in relation to a public town hall meeting that was a public forum to prevent City of New York personnel from being able to continue to violate my constitutional rights in regards to such and similar public meetings. She contumaciously refused to grant me that relief in her 5/22/17 order that was in response to my 5/19/17 application. Hindsight also confirms that she fraudulently denied my 5/19/17 request stemming from her illegal 4/11/17 adjournment for her to recuse herself in her 5/22/17 order. |
| 3 | 6/5/17 | After Defendants Bannon and Mosczyc stole my 4/12/17 oral arguments hearing in my HRA lawsuit, I reported an entirely valid complaint against Judge Bannon to Denis Reo while he then was a court attorney who worked for New York State Supreme Court Administrative Judge George Silver to try to have **a)** Judge Bannon |

immediately and severely disciplined and **b)** my HRA lawsuit to be reassigned to a judge who would uphold my legal rights in that case. In response to that complaint, I received an e-mail message from Mr. Reo on 6/5/17 at 9:09 am that includes the excerpt shown next that confirms that Judge Silver fraudulently condoned Judge Bannon's theft of my 4/12/17 oral arguments hearing and violations of my constitutional rights that resulted from that. Mr. Silver condoned that before he became a defendant in the ongoing case of _Marquez v. Hoffman_, No. 18-cv-7315 (ALC)(GWG)(S.D.N.Y.) that was filed by a female attorney who worked for the UCS. Her filings in that case speak volumes about Mr. Silver's lack of character and how judges who work for the UCS cover up for one another like maggots on moldy meat. This excerpt from that e-mail message confirms that Mr. Silver lied in it by fraudulently claiming that the adjournment of my 4/11/17 oral arguments hearing didn't HRA a procedural or tactical advantage over me in my HRA lawsuit and that it was requested by Mr. Mosczyc because of the Passover holiday that simply was a pretext instead to steal time to prepare for my oral arguments hearing while costing me my right to testify about my 4/11/17 OTDA fair hearing while that was still very fresh in my head just one day after it ended.

> **From:** Denis Reo <dreo@nycourts.gov>
> **Subject:** RE: Complaints against New York Supreme Court Judge Nancy Bannon re: Index number 100054/2017
> **Date:** June 5, 2017 at 9:09:53 AM EDT
> **To:** Towaki_Komatsu <towaki_komatsu@yahoo.com>
> **Cc:** "moscczycj@hra.nyc.gov" <moscczycj@hra.nyc.gov>, "calhounm@hra.nyc.gov" <calhounm@hra.nyc.gov>, "George J. Silver" <gjsilver@nycourts.gov>
>
> Judge Silver has reviewed petitioner's May 31, 2017 submission requesting that Anonymous v New York City Human Resources Administration, Index No. 10005-2017, be transferred from Judge Bannon to another judge.  For the reasons set forth below, Judge Silver is denying petitioner's application in its entirety.
>
> Pursuant to Section 100.3 [B][6] [a] of the Rules of the Chief Administrative Judge, "[e]x parte communications that are made for scheduling or administrative purposes and that do not affect a substantial right of any party are authorized, provided the judge reasonably believes that no party will gain a procedural or tactical advantage as a result of the ex parte communication, and the judge, insofar as practical and appropriate, makes provision for prompt notification of other parties or their lawyers of the substance of the ex parte communication and allows an opportunity to respond."
>
> Judge Bannon's decision to adjourn petitioner's order to show from April 12, 2017 to June 7, 2017 at the request of respondent's counsel because of the Passover holiday was made for scheduling purposes and did not give respondent a procedural or tactical advantage over petitioner in the litigation as

| | | |
|---|---|---|
| | | Judge Bannon did not address the merits of the order to show cause.  Further, Judge Bannon took the practical and appropriate step of notifying petitioner of the adjournment by voicemail on the morning of April 11, 2017.  Therefore, petitioner's May 31, 2017 written application that the proceeding be reassigned to a different judge and that the respondent be deemed in default as of April 12, 2017 is denied. |
| 4 | 6/7/17 | While presenting my oral arguments on 6/7/17 in my HRA lawsuit, I recall that I asked Judge Bannon for more time to do so in order to make certain that she fully understood the entirety of my remarks about relevant facts, matters of law, and evidence. Hindsight confirms that she irrationally refused to grant me that additional time. |
| 5 | 8/10/17 | Judge Bannon's 8/10/17 decision marked what was originally the end of the article 78 component of my HRA lawsuit. While severing other claims of mine in that hybrid case that caused them to be reassigned to New York State Supreme Court Judge Alexander Tisch, other parts of Judge Bannon's decision confirms that she illegally ignored the exhibits that were stored on the USB thumb drive that I submitted in conjunction with my 5/19/17 order to show cause application. She also expressed the following lies in that decision:<br><br>    a.  By suggesting that I hadn't had an OTDA fair hearing against HRA on 4/11/17.<br><br>    b.  I hadn't exhausted my administrative remedies with respect to OTDA fair hearings<br><br>    c.  I claimed that HRA committed wage-theft against me. I never claimed that and never worked for HRA.<br><br>    d.  OTDA's 9/15/16 fair hearing decision for fair hearing number 7316477K didn't require HRA to reimburse me for storage unit rental expenses that I paid for the storage unit rental period of May of 2016 thru July of 2016 in the event that HRA thereafter made a determination that I was eligible in May of 2016 to have HRA to pay for storage unit rental expenses on my behalf while I resided where I still reside.<br><br>    e.  HRA had been entitled to issue a reassessment in March of 2017 about whether I was eligible to have HRA to issue storage unit rental expense payments on my behalf while I resided where I still reside and as no change with applicable laws, facts, nor evidence had occurred to allow HRA to do so and violate res judicata in the process.<br><br>    f.  I had requested to end my ability to proceed anonymously in my HRA lawsuit. |
| 6 | 1/31/18 | After I filed a motion to renew and reargue Judge Bannon's 8/10/17 decision in my HRA lawsuit in August of 2017, the fact that HRA continued to pay for storage unit rental expenses on my behalf while I resided where I still reside after Judge Bannon |

|  |  | expressed in her 8/10/17 decision that HRA wasn't obligated to issue those payments and after HRA fraudulently claimed during my 4/11/17 OTDA fair hearing and my 6/7/17 oral arguments hearing in my HRA lawsuit that I wasn't eligible to have HRA to issue those payments decisively established that HRA had been committing fraud all along in both my OTDA litigation and my HRA lawsuit by claiming that I wasn't eligible to have HRA to issue those payments on my behalf. Actions speak louder than words and HRA's actions were paying for what it was claiming in litigation against me that I wasn't eligible for it to pay. That is the epitome of quintessential hypocrisy and behavior of a con artist. In Judge Bannon's 1/31/18 decision in my HRA lawsuit, she lied by claiming that she hadn't overlooked nor misapprehended anything as she criminally engaged in another act of obstruction of justice by dismissing my HRA lawsuit then in spite of the fact that I continued to have claims that were pending to be addressed by a different judge as a result of the fact that she previously severed claims of mine in that case for that purpose in her 8/10/17 decision. |
|---|---|---|

**Other**

2.      I have been engaged in ongoing litigation against HRA since 2016 partly by participating in legal proceedings that OTDA has held that are known as fair hearings that is a really bad misnomer because hindsight about such hearings that I have participated in against HRA and how OTDA has otherwise dealt with them has been patently, consistently, and outrageously biased, and prejudicial in favor of HRA. My experience with OTDA's fair hearings and processes pertaining to them has demonstrated that they are a sham and charade. I also just had the Second Circuit issue a materially baseless, biased, and prejudicial order on 12/20/21 in K5 after it irrationally violated my rights pursuant to FRAP Rule 34, the First Amendment, and Fourteenth Amendment to be granted an oral arguments hearing for that appeal.

3.      The Second Circuit's 12/20/21 order in that appeal was issued with the adverse findings that it contained largely because Mr. Banks and other HRA personnel willfully violated their legal duties pursuant to 18 NYCRR §358-3.7(b)(2) the First and Fourteenth Amendment; FOIL; promissory estoppel in relation to my HRA contract that Defendant Scalia issued to me on 8/1/17 on HRA's behalf and her own in which she stated that she and HRA would assist me "in any

way possible"; and 18 NYCRR §352.23(a) in furtherance of a criminal cover-up about illegal

acts and omissions that they and others that partly include Urban and its personnel have been

committing against me since 2016 to try to avoid liability about such illegal acts and omissions.

4.      This fact is true because such illegal acts by HRA's personnel caused me to be deprived

of material evidence that I certainly would have used in the appeal of mine that the Second

Circuit just decided. Although OTDA was legally required by 18 NYCRR §358-3.7(b)(4) to

respond to HRA's illegal failure to provide me the entirety of the discovery material that I

ordered HRA's personnel to provide to me prior to fair hearings that OTDA conducted between

us, Defendant Nigel Marks instead committed wire fraud against me on 8/27/21 through

fraudulent remarks that he expressed in an e-mail message that he sent to me in which he lied by

claiming that HRA wasn't legally required by 18 NYCRR §358-3.7(b)(2) to provide me the

entirety of the discovery material that I ordered HRA's personnel to provide to me prior to

OTDA fair hearings.

5.      Defendant Banks made remarks to me on 8/24/21 that I recorded on audio while he and I

attended a public resource meeting in Staten Island as he confirmed that HRA's personnel

intentionally didn't provide me the entirety of discovery material that I previously ordered him

and other HRA personnel partly pursuant to 18 NYCRR §358-3.7(b)(2) to provide to me prior to

fair hearings that OTDA prejudicially conducted in HRA's favor against me in December of

2020 and February of 2021. During those fair hearings and thereafter, OTDA's personnel

illegally condoned the fact that HRA illegally hadn't complied with my discovery demands prior

to those hearings and allowed me to be harmed by that partly as a result adverse and baseless fair

hearing decisions that OTDA personnel issued in response to those fair hearings.

## Statement of Facts

1.      I think that the best way to begin this section is by addressing the significance of the exhibits that are attached to this complaint mostly in relation to what I discussed in the section and subsections in this complaint that are entitled **a)** "Constitutional Deficiencies with OTDA's Fair Hearing Program", **b)** "Constitutional Deficiencies with Article 78 Proceedings", and **c)** "Summary of My Claims in This Case".

2.      The first exhibit within the annexed **<u>Exhibit A</u>** is a copy of the e-mail message that Defendant Scalia sent to me on 8/1/17 that I received from her at 5:58 pm that included a copy of my HRA contract. The names of Mr. Banks and Defendant Calhoun are shown in my HRA contract and the last sentence in that contract states, "We will continue to try to address your concerns and assist you in any way possible". In the opening sentence in that contract, Ms. Scalia stated that she was contacting me then in response to communications that I had recently had with Mr. Banks in Queens. My communications to which she was then referring were on 7/18/17 and 7/19/17 during a public resource fair meeting in Kew Gardens and a town hall meeting in Astoria. Mr. Banks made remarks to me during a public meeting after 8/1/17 in which he confirmed that he had caused Ms. Scalia to contact me and that most of the people who receive services from HRA don't have access to her as he told me then that she is HRA's Deputy General Counsel. I recorded that conversation with him on audio. This information is sufficient to cause it to be objectively reasonable to infer that Ms. Scalia's use of "We" at the beginning of the last sentence of my HRA contract was a reference that included Mr. Banks in regards to those to whom Ms. Scalia then was referring by her use of "We".

3.      The court decisions that are listed in this complaint's "Legal Standards" section between the numbered paragraphs of 47 and 53 sufficiently confirm that my HRA contract is a permanent, binding, and fully-enforceable agreement. That fact and circumstance essentially

causes mootness to apply to the relief that I'm seeking to be granted through this complaint that pertains to HRA and its personnel on the grounds that they're legally required by my HRA contract to assist me "**in any way possible**". Moreover, the fact that my HRA contract confirms that Ms. Scalia stated that HRA had recently made a payment on my behalf for storage unit rental costs while I continued to reside where I still resides establishes that HRA committed fraud in both my OTDA litigation and my HRA lawsuit by fraudulently claiming that I wasn't eligible to have it do so.

4.      The second exhibit within the annexed **Exhibit A** is a copy of a binding and fully-enforceable agreement dated 1/27/17 that HRA mailed to me in which it stated that it would continuously pay for storage unit rental costs on my behalf to Cubesmart while I resided where I still reside and that it had recently paid for such an expense on my behalf to Cubesmart. I talked about that agreement during my 4/11/17 OTDA fair hearing to counter Defendant Gerber's fraudulent claim in which she contended that I wasn't eligible to have HRA to pay for storage unit rental expenses on my behalf while I resided where I still reside.

5.      The third exhibit within the annexed **Exhibit A** is a copy of the letter dated 7/2/16 that Defendant Spitzberg issued to me in which he informed me that he listened to the audio recording of the fair hearing that OTDA recorded on 7/5/16 of the fair hearing that it conducted between HRA and I in OTDA's offices that are located in Brooklyn at 14 Boerum Place and that it confirmed that the OTDA administrative law judge who presided over that hearing abruptly terminated that hearing as I was attempting to answer a question that I was asked during it.

6.      The following shows the e-mail message that Defendant Scalia sent to me on 9/27/16 that I received from her at 11:19 am in which she committed wire fraud by fraudulently claiming that HRA would comply with OTDA's 9/15/16 fair hearing decision for fair hearing number

7316477K as quickly as possible that HRA has never fully complied with by having not

reimbursed me for the storage unit rental expenses that I paid for the storage unit rental period of

May of 2016 thru July of 2016 to Cubesmart while I resided where I still reside that HRA

fraudulently induced me to pay.

> **From:** "Scalia, Ann Marie" <scaliaa@hra.nyc.gov>
> **Subject:** RE: Fair Hearing
> **Date:** September 27, 2016 at 11:19:01 AM EDT
> **To:** "Spitzberg, Samuel L (OTDA)" <samuel.spitzberg@otda.ny.gov>, Towaki_Komatsu <towaki_komatsu@yahoo.com>
> **Cc:** "Aaronson, Nicola" <aaronsonn@hra.nyc.gov>, "Pertsas, Konstantinos (OTDA)" <konstantinos.pertsas@otda.ny.gov>, "Liranzo, Nelly (OTDA)" <nelly.liranzo@otda.ny.gov>, "Okello, Joab (OTDA)" <joab.okello@otda.ny.gov>, "Marks, Nigel A (OTDA)" <nigel.marks@otda.ny.gov>, "Allen, Mike (OTDA)" <mike.allen@otda.ny.gov>, "McArdle, Thomas (OTDA)" <thomas.mcardle@otda.ny.gov>, "Flores, Ramon" <floresra@hra.nyc.gov>, "Gaut, Gwen" <gautg@hra.nyc.gov>
>
> Mr. Komatsu
> HRA is in receipt of the decision and will take steps to comply with the decision as quickly as possible.  THank you.

7.       The next screenshot is from what appears on page 3 of the evidence packet report that I

received from HRA on 2/8/17 and shows remarks that appear to be attributable to Lori

Kowslowski of OTDA in which she fraudulently claimed on or about 10/26/16 that HRA

complied with OTDA's 9/15/16 fair hearing decision for fair hearing number 7316477K.

```
***** PER C/UNIT (LK, ALBANY):
"I CALLED THE STORAGE COMPANY AND THE AUTOMATED SYSTEM SAID CLIENT
STILL HAS A BALANCE OF $426.00 BUT IT DOESN'T SAY WHY OR FOR WHAT PERIOD".
AS THE DECISION ONLY ADDRESSED A DENIAL OF STORAGE AND STORAGE HAS BEEN PAID
THROUGH THE MONTH OF THE DECISION DATE, COMPLIANCE IS SATISFIED"
PER FH7316477K "SECU ADDED PER INCIDENT REPORT AND SS"
REVD W/ EGR
10/26/16 LMN
```

8.       The next screenshot is from what appears on page 43 of the evidence packet report that I

received from HRA on 2/8/17 and shows remarks that are attributable to one of HRA's personnel

whose last name is Ross. That person then indicated that HRA issued a payment on my behalf to Cubesmart for storage unit rental costs while I resided where I still reside. That payment was made in response to OTDA's 9/15/16 fair hearing decision and triggered HRA's legal duty to reimburse me within 30 days thereafter for the storage unit rental payments that I paid to Cubesmart for the storage unit rental period of May of 2016 thru July of 2016.

| | | | |
|---|---|---|---|
| 9/28/2016 | Non-Food Emerg/Special Grant | Ross,S | AS PER COMPLAINT FH#7316477K, COLLATERAL CONTACT WAS MADE TO 6604 CUBESMART ON 9/28/16 @ 12:36 PM @ 347-897-4446 &amp; I SPOKE WITH MS.SARAH WHOM VERIFIED TOTAL STORAGE AMOUNT DUE IS FOR 984.00 INCLUDING ALL FEES &amp; THAT PAYMENT IS DUE BY 10/20/16 TO AVOID A LIEN FEE. THEREFORE, ISSUING STORAGE PAYMENT FOR 984.00 5/1/16-9/30/16 CODE 21. |

9.     What is shown next is the header section from an e-mail message that I sent partly to Defendant Spitzberg on 1/24/17 at 9:46 pm and a pertinent excerpt from that e-mail message that is about the fact that I then reported to Mr. Spitzberg that Lori Kowslowski of OTDA committed wire fraud against me by telling me during a telephone call on that date that HRA had complied with OTDA's 9/15/16 fair hearing decision.

> **From:** Towaki Komatsu [mailto:towaki_komatsu@yahoo.com]
> **Sent:** Tuesday, January 24, 2017 9:46 PM
> **To:** Spitzberg, Samuel L (OTDA)
> **Cc:** Scalia, Ann Marie (HRA); Aaronson, Nicola (HRA); Pertsas, Konstantinos (OTDA); Liranzo, Nelly (OTDA); Okello, Joab (OTDA); Marks, Nigel A (OTDA); Allen, Mike (OTDA); McArdle, Thomas (OTDA)
> **Subject:** RE: 2nd Due process violation by OTDA during today's Fair Hearing
>
> Furthermore, after I left that HRA office today, I called your colleague Lori Koslowski at 2:20 pm and talked with her for several minutes. During our conversation, she committed wire fraud yet again by phone by claiming yet again that HRA complied with the decision dated 9/15/16 OTDA issued for Fair Hearing number 7316477K. She also fraudulently claimed today that an OTDA judge would need to explicitly order HRA to reimburse me for storage expenses I paid in order for HRA to be found to be in non-compliance of such a decision if it then didn't issue such a reimbursement.

10.     What is shown next are e-mail messages that Mr. Spitzberg and I sent to each other on 1/25/17 in which he stated that he would provide a copy of OTDA's 2002 fair hearing decision

for fair hearing number 3792259Q to an OTDA hearing officer who participated in a fair hearing

that I had on 1/24/17 that was adjourned by OTDA. Mr. Spitzberg was referring to OTDA fair

hearing decision number 3792259Q I his remarks to me then. That fair hearing decision ordered

a New York State social services agency to reimburse the appellant for storage unit rental

expenses.

> **From:** "Spitzberg, Samuel L (OTDA)" <Samuel.Spitzberg@otda.ny.gov>
> **Subject:** RE: 2nd Due process violation by OTDA during today's Fair Hearing
> **Date:** January 25, 2017 at 2:08:48 PM EST
> **To:** Towaki_Komatsu <towaki_komatsu@yahoo.com>
> **Cc:** "Scalia, Ann Marie (HRA)" <scaliaa@hra.nyc.gov>, "Aaronson, Nicola (HRA)"
> <aaronsonn@hra.nyc.gov>, "Pertsas, Konstantinos (OTDA)"
> <Konstantinos.Pertsas@otda.ny.gov>, "Liranzo, Nelly (OTDA)"
> <Nelly.Liranzo@otda.ny.gov>, "Okello, Joab (OTDA)" <Joab.Okello@otda.ny.gov>,
> "Marks, Nigel A (OTDA)" <Nigel.Marks@otda.ny.gov>, "Allen, Mike (OTDA)"
> <Mike.Allen@otda.ny.gov>, "McArdle, Thomas (OTDA)"
> <Thomas.McArdle@otda.ny.gov>
>
> I will provide the 2002 decision to the Hearing Officer.
>
> ---
>
> **From:** Towaki_Komatsu [mailto:towaki_komatsu@yahoo.com]
> **Sent:** Wednesday, January 25, 2017 2:06 PM
> **To:** Spitzberg, Samuel L (OTDA)
> **Cc:** Scalia, Ann Marie (HRA); Aaronson, Nicola (HRA); Pertsas, Konstantinos (OTDA);
> Liranzo, Nelly (OTDA); Okello, Joab (OTDA); Marks, Nigel A (OTDA); Allen, Mike
> (OTDA); McArdle, Thomas (OTDA)
> **Subject:** Re: 2nd Due process violation by OTDA during today's Fair Hearing
>
> Not true again. I asked for the audio during yesterday's hearing and was told I would need
> to contact OTDA to ask for it in spite if the fact that yesterday's judge is an OTDA
> employee. I similarly asked her to give me an e-mail address or fax number to which I
> could send a copy of the 2002 OTDA decision I referred to. She told me she couldn't do
> that in spite an earlier ALJ did in a Fair Hearing with OTDA.

11.     The next screenshot is from the "Exhibit 8" that was attached to a court filing that

Defendant Mosczyc filed in my HRA lawsuit on 4/7/17 and was about the fact that OTDA

confirmed receipt of the 62-page fax that I faxed to it on 2/9/17 that I addressed to Jackie

Donovan of OTDA. That fax contained information about additional claims that I asserted

against HRA for which I sought to have OTDA conduct fair hearings within 30 days. OTDA

illegally never conducted hearings for those additional claims.

```
NOT COVERED BY 7316477<.
*62 PAGE FAX REC'D FROM CLIENT ADDRESSED TO J.D. ON  2/10/17 WITH VARIOUS
DOCUMENTS INCLUDING            /NOTICES/ETC...   FORWARDED FAX TO J.D.
ON 2/14/17.   2/16/17-LJK
PACKET SENT TO FILE REGARDING ADDITIONAL ISSUES APPELLANT WANTS TO ADDRESS.
JMD 3-3-17
.....
(NYC) ADDITIONAL DOCUMENTS RECEIVED FROM ALBANY ONE SET 19 PAGES AND 2ND SET
ARE                                          3 PAGES.
ALL DOCUMENTS RECEIVED AND PLACED INSIDE FILE FOLDER.       3-8-9/LPS.
```

12.    The fourth exhibit within the annexed **Exhibit A** is a copy of OTDA's 4/19/17 fair

hearing decision for OTDA fair hearing number 7406570N and confirms what I previously

stated in this complaint about that fair hearing decision.

13.    The fifth exhibit within the annexed **Exhibit A** is a copy of the e-mail message that I sent

partly to Defendants Spitzberg, Banks, Scalia, and Calhoun on 2/1/19 at 1:07 pm and discussed

earlier in this complaint.

14.    The following shows the e-mail message that Defendant Spitzberg sent to me on 5/13/19

at 4:44 pm in which he lied that I discussed earlier in this complaint.

> **From:** "Spitzberg, Samuel L (OTDA)" <Samuel.Spitzberg@otda.ny.gov>
> **Subject:** RE: HRA/DHS's liability for not having adequate security in Bellevue Men's
> shelter
> **Date:** May 13, 2019 at 4:44:48 PM EDT
> **To:** Towaki Komatsu <towaki_komatsu@yahoo.com>
> **Cc:** "Scalia, Ann Marie (HRA)" <scaliaa@dss.nyc.gov>, "Banks, Steven (HRA)"
> <banksst@dss.nyc.gov>, "Calhoun, Martha (HRA)" <calhounm@dss.nyc.gov>,
> "Mosczyc, Jeffrey (HRA)" <mosczycj@dss.nyc.gov>
>
> With regard to your question regarding your fair hearing request of February 2017,
> OTDA has or will schedule each of the issues raised for a fair hearing.

15.    The sixth exhibit within the annexed **Exhibit A** is the letter dated 11/13/19 that

Defendant Nigel Marks sent to me that I discussed earlier in this complaint.

16.    The seventh exhibit within the annexed **Exhibit A** is OTDA's 3/22/21 fair hearing

decision for fair hearing number 8227101K that I discussed earlier in this complaint.

17.     The eighth exhibit within the annexed **Exhibit A** is a copy of an e-mail message that I received at 6:55 am on 7/7/21 from Naeem Mann of OTDA that included a PDF file. That PDF file was of a letter dated 7/7/21 that Defendant Pertsas issued to me that I discussed earlier in this complaint and was about OTDA fair hearing number 8227101K.

18.     The ninth exhibit within the annexed **Exhibit A** is a copy of an e-mail message that I received at 4:14 pm on 8/27/21 from Defendant Nigel Marks with the PDF file attached to it that I discussed earlier in this complaint. Prior to receiving that e-mail message, I had a telephone call with Mr. Marks on 8/27/21 at 11:24 am and legally recorded an audio recording of that conversation. That audio recording is available at

https://drive.google.com/file/d/10Yr4wCU0Y80m6WO_ljaJ4Zq0_QFJAqip/view?usp=sharing.

He and I talked during that call about the fact that HRA hadn't complied with discovery demands that I submitted to HRA's personnel prior to fair hearings that prejudiced my ability to better substantiate my claims in OTDA fair hearings between HRA and I as well as in other related litigation.

19.     The tenth exhibit within the annexed **Exhibit A** is a copy of OTDA's 9/15/16 fair hearing decision for fair hearing number 7316477K.

20.     The eleventh exhibit within the annexed **Exhibit A** is comprised of letters dated 1/24/19, 8/7/19, 12/31/19, 5/12/20, and 10/26/21 that Greg Harrington mailed to me that I discussed earlier in this complaint and in which he continued to inform me that OTDA was continuing to illegally prevent me from being able to participate in OTDA fair hearings from within OTDA's offices that are located at 14 Boerum Place while no due process was ever accorded to me about that.

21.     The first exhibit within the annexed **Exhibit B** is a copy of a notice dated 10/25/21 that I discussed earlier in this complaint and confirms that Defendant Nigel Marks illegally cancelled a scheduled fair hearing between HRA and I that would address the fact that HRA illegally cancelled a cash-assistance benefit issuance on 10/22/21.

22.     The second exhibit within the annexed **Exhibit B** is an HRA Statement of Benefits report dated 12/9/21 that confirms that HRA illegally cancelled my 10/22/21 cash assistance payment before waiting until 10/28/21 to fully rectify that.

23.     The third exhibit within the annexed **Exhibit B** is an e-mail message that Defendant Scalia sent to me on 10/25/21 at 3:22 pm about HRA's illegal cancellation of my scheduled 10/22/21 cash-assistance benefit payment by HRA.

24.     The fourth exhibit within the annexed **Exhibit B** is an e-mail message that I sent to Ms. Scalia on 10/22/21 at 7:51 pm e-mail in which I informed her that HRA had illegally cancelled the scheduled cash-assistance payment by HRA to me on that date and directed her to immediately and fully fix that.

25.     On 10/28/21, I recorded a video recording with my cell phone at 4 pm while I attended a public resource fair meeting in Manhattan at John Jay College as I talked with Defendant Jenkins partly about the fact that HRA had recently and illegally cancelled the cash-assistance government that I was scheduled to receive from HRA on that date and I sought to investigate that matter further. He had a duty to report that matter to DOI or an inspector general then since that constituted a conflict of interest in regard to actions taken by HRA to impede my ability to pursue ongoing litigation that I have against HRA by depriving me of financial resources. I have no reason to believe that he properly reported that. That video recording is available at https://drive.google.com/file/d/1eD7xjGs9VzFx8-LFLEZGTEQs8u32Zdka/view?usp=sharing.

Prior to that date, I recorded a video recording of Mr. Banks on 9/23/21 at1:46 pm during a public resource fair meeting that was held in the same building in Kew Gardens in Queens in which I previously talked with him on 7/18/17 during an earlier public resource fair meeting. That 9/23/21 video recording is available at https://drive.google.com/file/d/1yuaEKbRsaYZ-80K1gHngjK3r8rvdUjwe/view?usp=sharing. It confirms that he illegally harassed me then by trying to coerce me to move away from where I lawfully stood in that public forum as he informed me that he felt threatened by entirely valid litigation that I commenced as he was referring to litigation that I commenced against him and HRA that partly included K4, K5, my HRA lawsuit, my HRA appeal, and my OTDA litigation. He also stated then that he feel threatened by remarks that I expressed in e-mail messages that I sent to him as he fraudulently omitted the material fact that my remarks were protected First Amendment expression that consisted of criticism, sarcasm, and updates about the likelihood that he would badly lose in litigation I commenced. His remarks to me then clearly tied his illegal behavior against me then to protected First Amendment litigation that I commenced against HRA and him that dates back to 2016. Moreover, his behavior towards me then was a continuing violation that related back to illegal acts and omissions that he and other City of New York personnel committed against me since April of 2017 that causes equitable tolling to apply to additional claims of mine against City of New York personnel that occurred between April 2017 and the present.

26.     The fifth exhibit within the annexed **Exhibit B** is an e-mail message that I sent to Defendants Banks, Scalia, Calhoun, Nigel Marks, Spitzberg, and Rock on 12/5/20 at 3:16 pm in which I ordered Mr. Banks and other HRA personnel to provide me the discovery material that I identified and otherwise described in that e-mail message by 12/9/20 that was prior to an OTDA fair hearing that I was scheduled to participate in against HRA on 12/23/20. I didn't receive any

response from HRA after I sent that e-mail message and didn't receive any of the discovery material that I specified in it in flagrant violation of my legal rights.

27.     The sixth exhibit within the annexed **Exhibit B** is an e-mail message that I sent to Defendants Banks, Scalia, Calhoun, Nigel Marks, Spitzberg, and Rock on 1/31/21 at 12:08 am in which I ordered Mr. Banks and other HRA personnel to provide me the discovery material that I identified and otherwise described in that e-mail message prior to an OTDA fair hearing that I was scheduled to participate in against HRA on 2/9/21. I didn't receive any response from HRA after I sent that e-mail message and didn't receive any of the discovery material that I specified in it in flagrant violation of my legal rights.

28.     As I pointed out earlier in this complaint, I talked with Mr. Banks on 8/24/21 while attending a public resource fair meeting in Staten Island. While talking with him then, I recorded an audio recording of our conversation at 1:45 pm. That recording is available at https://drive.google.com/file/d/1JeqqeiHprpoCkUL-RskRuKk9MHjhdBHR/view?usp=sharing. That recording confirms that Mr. Banks is heard in it at the elapsed time of 2 minutes and 40 seconds as he claimed that OTDA had expressed that HRA didn't have to provide me the discovery material that I ordered HRA on 12/5/20 and 1/31/21 to provide to me for OTDA fair hearings between HRA and I.

29.     On 9/10/20, the New York Law School hosted a public meeting that was conducted remotely during which Mr. Banks was the speaker. During that meeting, he fielded questions from a moderator for that meeting. That meeting was recorded on video that is available at https://www.youtube.com/watch?v=OjVqKiRYfQg. What is seen and heard in that video between the elapsed times of **a)** 30 minutes and 4 seconds and **b)** 31 minutes and 13 seconds clearly confirms that Mr. Banks avoided answering a critically significant question that I

submitted to the moderator for that meeting for Mr. Banks to answer during it about the extent to which HRA and DHS have been and continue to be legally responsible for providing proper oversight of how Urban operates. The following is the specific question that I submitted to the moderator for that meeting that he read at the elapsed time of 30 minutes and 4 seconds in the video that I just mentioned for Mr. Banks to answer during that meeting:

> "To what extent are HRA and DHS legally responsible for how Urban Pathways operates in proving shelters through contracts with HRA and DHS and where are the details written about this?"

30.     That video recording confirms that Mr. Banks fraudulently refused to answer the exact question that I then asked and instead changed the subject.

31.     The seventh exhibit within the annexed **Exhibit B** is an e-mail message that I received on 7/14/17 at 4:32 pm from Defendant Schmeidler in which he fraudulently claimed that he would provide me e-mails that Annette Holm sent on 3/17/17 about me as well as e-mail communications that Paul Ligestri and Patricia Birch of HRA had about me on 4/4/16 and 5/20/16. I never received copies of the e-mail messages that he claimed that he would provide to me to which I just referred.

32.     The eighth exhibit within the annexed **Exhibit B** is an e-mail message that I sent on 5/7/18 at 12:20 pm e-mail to HRA's FOIL Office to submit a discovery demand to HRA largely about the B&S before HRA illegally didn't comply with that demand that was submitted to HRA after Ms. Scalia issued me my HRA contract on 8/1/17.

33.     The ninth exhibit within the annexed **Exhibit B** is an e-mail message Defendant Schmeidler sent to me on 5/7/18 at 4:46 pm in which he illegally denied my 5/7/18 FOIL demand to HRA.

34.     The tenth exhibit within the annexed **Exhibit B** is a copy of the sealing order that Judge

Ostrager issued on 1/17/17 in my HRA lawsuit.

35.      The eleventh exhibit within the annexed **Exhibit B** is a copy of Judge Bannon's 8/10/17

decision in my HRA lawsuit.

36.      The twelfth exhibit within the annexed **Exhibit B** is a copy of Judge Bannon's 1/31/18

decision in my HRA lawsuit that confirms that she illegally dismissed my HRA while I

continued to then have claims that remained pending to be addressed in that case by a different

judge.

37.      On 8/22/18, I recorded an audio recording at 1:47 pm of a face-to-face conversation that I

had with Mr. Banks while I attended a public resource fair meeting in Brooklyn. That recording

is available at https://drive.google.com/open?id=1Hh9eTwCLr2MDKP2BlxlAu7jMSyieXEY9.

That recording confirms that he made remarks to me at roughly the elapsed time of 23 minutes

and 14 seconds in which he condoned the fact that Mr. Mosczyc illegally used an ex-parte

adjournment application to steal my scheduled 4/12/17 oral arguments hearing in my HRA

lawsuit.

38.      What is shown next is a screenshot of an e-mail message that Defendant Rothenberg sent

on 6/28/17 at 5:18 pm that is from page 365 in the 374-page PDF file. That e-mail message

confirms that she and those who received it violated Judge Ostrager's 1/17/17 sealing order in

my HRA lawsuit because none of them were authorized to have access to any information about

my HRA lawsuit that was then sealed. The remarks in that e-mail message are about an order to

show cause application that I filed in my HRA lawsuit and served upon HRA at its headquarters.

**From:** Rothenberg, Jaclyn
**Sent:** Wednesday, June 28, 2017 17:18
**To:** Ramos, Jessica
**Cc:** Phillips, Eric; Redmond, Howard DI.; Hagelgans, Andrea; Casca, Michael; Arslanian, Kayla; Carrion, Marco A.; Wolfe, Emma
**Subject:** RE: town halls

Confirmed that he appeared at 4WTC on June 6 and served an Order to Show Cause.  That OSC and another pending matter were submitted to the court for a decision on June 7.  HRA is still waiting for the written decision.

39.    What is shown next is a screenshot of an e-mail message that Defendant Ramos sent on 6/28/17 at 5:42 pm that is from page 368 and 369 in the 374-page PDF file. That e-mail message confirms that she also violated Judge Ostrager's 1/17/17 sealing order in my HRA lawsuit because she wasn't authorized to have access to any information about my HRA lawsuit then. The remarks in that e-mail message are also about what I just discussed, though Ms. Ramos lied about me throughout that e-mail message. She also violated New York State Social Services Law §136(2) and 18 NYCRR §357 as well as my Fourteenth Amendment rights by commenting about the issue about a storage unit expense reimbursement benefit that I sought from HRA. She sent that e-mail message to a whistleblower news censor in journalism named Erin Durkin who didn't ask her about that storage matter.

On Wed, Jun 28, 2017 at 5:42 PM, Ramos, Jessica
<JRamos@cityhall.nyc.gov> wrote:

Page 368

Mr. Komatsu wanted a storage allowance, for which he was
ineligible because he had an apartment. We also referred him to
multiple legal services providers about this specifically and all of
them denied him.

Mr. Komatsu has been served an Order to Show Cause due to his
appearance at HRA in June, when he showed disruptive behavior.
That OSC and another pending matter were submitted to the
court for a decision on June 7.  HRA is still waiting for the written
decision.

Sent from my BlackBerry 10 smartphone.

**Causes of Action**

I'm making use of the face that I have presented sufficient information in this complaint from
which implied claims exists. I will use my right to file an amended complaint to flesh out my
claims in this complaint further.

**1st Claim for Relief:** Violations of the First Amendment right to receive information and of

access to the courts to petition for redress partly by illegally withholding public records and discovery material from me

**(Against Defendants City of New York, Aaronson, Banks, Calhoun, Gerber, Marks, Mosczyc, Okello, Pertas, Rock, Scalia, Schmeidler, Spitzberg, Tietz)**

1.      I incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

2.      The individual defendants violated my First Amendment rights insofar as this claim is concerned through their acts and omissions against me that I have articulated in this complaint.

**2nd Claim for Relief:** Violations of the First Amendment right of access to and assembly within offices of OTDA

**(Against Defendants Esnard, Marks, Rock, Spitzberg, Tietz)**

3.      I incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

4.      The individual defendants violated my First Amendment rights insofar as this claim is concerned through their acts and omissions against me that I have articulated in this complaint.

**3rd Claim for Relief:** First Amendment Retaliation and Viewpoint Discrimination

**(Against Defendants City of New York, Banks, Calhoun, Marks, Mosczyc, Scalia, Spitzberg)**

5.      I incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

6.      The individual defendants' acts and omissions that apply to this claim cause them to be liable for it.

**4th Claim for Relief:** Violations of Fourteenth Amendment due process and equal protection rights under the class-of-one theory

**(Against Defendants City of New York, Aaronson, Banks, Calhoun, Gerber, Marks, Mosczyc, Scalia, Spitzberg)**

7.     I incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

8.     The individual defendants' acts and omissions that apply to this claim cause them to be liable for it.

**5th Claim for Relief:** Violations of the Fourteenth Amendment prohibitions against discrimination and selective-enforcement

**(Against Defendants City of New York, Aaronson, Banks, Calhoun, Gerber, Marks, Mosczyc, Rock, Scalia, Schmeidler, Spitzberg)**

9.     I incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

10.    The individual defendants' acts and omissions that apply to this claim cause them to be liable for it.

**6th Claim for Relief:** Conspiracy to Violate My Civil Rights

**(Against Defendants City of New York, Aaronson, Banks, Calhoun, Gerber, Marks, Mosczyc, Scalia, Schmeidler, Spitzberg)**

11.    I incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

12.    The individual defendants' acts and omissions that apply to this claim cause them to be liable for it.

**7th Claim for Relief:** Municipal Liability

**(Against Defendant City of New York)**

13.    I incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

14.    The individual defendants' acts and omissions that apply to this claim cause them to be liable for it.

**8th Claim for Relief:** Negligence

**(Against Defendants City of New York, Aaronson, Arslanian, Banks, Calhoun, Carrion, Casca, Esnard, Gerber, Gregory, Hagelgans, Lucas, Marks, Mosczyc, Okello, Pertas, Phillips, Ramos, Redmond, Rock, Rothenberg, Scalia, Schmeidler, Spitzberg, Tietz, Wolfe)**

15.     I incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

16.     The individual defendants' acts and omissions that apply to this claim cause them to be liable for it.

**9th Claim for Relief:** Wire Fraud

**(Against Defendants City of New York, Banks, Gerber, Gregory, Marks, Mosczyc, Pertas, Scalia, Schmeidler, Spitzberg)**

17.     I incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

18.     The individual defendants' acts and omissions that apply to this claim cause them to be liable for it.

**10th Claim for Relief:** Civil RICO

**(Against Defendants City of New York, Banks, Gerber, Gregory, Marks, Mosczyc, Pertas, Scalia, Schmeidler, Spitzberg)**

19.     I incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

20.     The individual defendants' acts and omissions that apply to this claim cause them to be liable for it.

**11th Claim for Relief:** Breach of Contract

**(Against Defendants City of New York, Aaronson, Banks, Calhoun, Gerber, Lucas, Mosczyc, Scalia, Schmeidler)**

21.     I incorporate by reference the allegations set forth in all preceding paragraphs as if fully

set forth herein.

22.    The individual defendants' acts and omissions that apply to this claim cause them to be liable for it.

**12th Claim for Relief:** Fraud

**(Against Defendants City of New York, Banks, Gerber, Gregory, Marks, Mosczyc, Okello, Pertas, Scalia, Schmeidler, Spitzberg)**

23.    I incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

24.    The individual defendants' acts and omissions that apply to this claim cause them to be liable for it.

**13th Claim for Relief:** Violation of New York State Judiciary Law 487

**(Against Defendants City of New York, Aaronson, Banks, Calhoun, Gerber, Gregory, Marks, Mosczyc, Okello, Pertas, Rock, Scalia, Spitzberg)**

25.    I incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

26.    The individual defendants' acts and omissions that apply to this claim cause them to be liable for it.

**14th Claim for Relief:** Intentional and Negligent Infliction of Emotional Distress

**(Against Defendants City of New York, Arslanian, Banks, Calhoun, Carrion, Casca, Esnard, Gerber, Gregory, Hagelgans, Lucas, Marks, Mosczyc, Okello, Pertas, Phillips, Ramos, Redmond, Rock, Rothenberg, Scalia, Schmeidler, Spitzberg, Wolfe)**

27.    I incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

28.    The individual defendants' acts and omissions that apply to this claim cause them to be liable for it.

**15th Claim for Relief:** Violation of New York General Business Law 349

**(Against Defendants City of New York, Banks, Calhoun, Gerber, Gregory, Marks, Mosczyc, Okello, Pertas, Scalia, Schmeidler, Spitzberg)**

29.     I incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

30.     The individual defendants' acts and omissions that apply to this claim cause them to be liable for it.

**16th Claim for Relief:** Failure to Train and Supervise

**(Against Defendants City of New York, Banks, Calhoun, Esnard, Marks, Okello, Pertas, Rock, Scalia, Schmeidler, Spitzberg)**

31.     I incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

32.     The individual defendants' acts and omissions that apply to this claim cause them to be liable for it.

**17th Claim for Relief:** Violation of My Privacy Rights

**(Against Defendants City of New York, Arslanian, Banks, Calhoun, Carrion, Casca, Hagelgans, Lucas, Mosczyc, Phillips, Ramos, Redmond, Rothenberg, Scalia, Wolfe)**

33.     I incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

34.     The individual defendants' acts and omissions that apply to this claim cause them to be liable for it.

**18th Claim for Relief:** Tortious Interference

**(Against Defendants City of New York, Banks, Calhoun, Gerber, Mosczyc, Scalia)**

35.     I incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

36.     The individual defendants' acts and omissions that apply to this claim cause them to be liable for it.

**20th Claim for Relief:** Violation of My Property Rights under the U.S. Constitution

**(Against Defendants City of New York, Banks, Calhoun, Gerber, Mosczyc, Scalia)**

37.     I incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

38.     The individual defendants' acts and omissions that apply to this claim cause them to be liable for it.

**21th Claim for Relief:** Failure to Intervene

**(Against Defendants City of New York, Aaronson, Banks, Calhoun, Esnard, Gregory, Marks, Okello, Pertas, Rock, Scalia, Spitzberg)**

39.     I incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

40.     The individual defendants' acts and omissions that apply to this claim cause them to be liable for it.

**22nd Claim for Relief:** Deliberate Indifference

**(Against Defendants City of New York, Aaronson, Banks, Calhoun, Esnard, Gerber, Gregory, Marks, Mosczyc, Okello, Pertas, Rock, Scalia, Schmeidler, Spitzberg)**

41.     I incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

42.     The individual defendants' acts and omissions that apply to this claim cause them to be liable for it.

**23rd Claim for Relief:** Abuse of Process

**(Against Defendants City of New York, Banks, Calhoun, Gerber, Gregory, Marks, Mosczyc, Okello, Pertas, Scalia, Spitzberg)**

43.     I incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

44.     The individual defendants' acts and omissions that apply to this claim cause them to be liable for it.

### Demand for a Jury Trial

I demand a trial by jury in this action on each and every one of my damage claims.

### Prayer for Relief

WHEREFORE, I respectfully demand judgment against the defendants individually and jointly and pray for relief as follows:

1.     Having this Court declare that my HRA contract is a permanent, binding, and fully-enforceable agreement that requires all of HRA's personnel to continuously assist me "in any way possible."

2.     Having this Court declare that article 78 proceedings are not always conducted in accordance with federal constitutional rights and weren't conducted in that way in my HRA lawsuit.

3.     Having this Court order HRA to provide me all discovery material and other information that I have requested from it within 24 hours in electronic and text-searchable form to the greatest extent possible.

4.     Declaring that HRA's personnel committed fraud in my HRA lawsuit and my OTDA litigation about my claims about storage unit rental expenses.

5.     Declaring that the exceptions that apply to the Younger Abstention doctrine apply to allow and warrant having this Court to exercise supplemental jurisdiction over my OTDA litigation and consolidate those matters in this action.

6.      Authorizing me to file a further amended complaint.

7.      Ordering the City of New York to reimburse me with treble damages for all expenses that I paid to commence and otherwise proceed in my HRA lawsuit and my OTDA litigation.

8.      Ordering the City of New York to provide me an exact copy of the discovery material that I received on 2/1/21 from the Law Department in connection with K1 that will not be subject to any confidentiality order nor protective order.

9.      Ordering the City of New York to reimburse me within 24 hours for my storage bills with treble damages, accumulated interest added, and further and trebled reimbursement for the value of the property of mine that was auctioned in April of 2019 by Cubesmart due to nonpayment of storage unit rental expenses by HRA.

10.     Such other and further relief as this Court deems just and proper.


Dated:          New York, New York
                December 27, 2021


                                        Respectfully submitted,



                                        _____
                                        Towaki Komatsu
                                        *Plaintiff, Pro Se*
                                        802 Fairmount Pl., Apt. 4B
                                        Bronx, NY 10460
                                        (347) 316-6180
                                        Towaki_Komatsu@yahoo.com

**Plaintiff's Certification and Warnings:**

By signing below, I certify to the best of my knowledge, information, and belief that: (1) the complaint is not being presented for an improper purpose (such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation); (2) the claims are supported by existing law or by a non-frivolous argument to change existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Federal Rule of Civil Procedure 11.

I agree to notify the Clerk's Office in writing of any changes to my mailing address. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Each Plaintiff must sign and date the complaint. Attach additional pages if necessary. If seeking to proceed without prepayment of fees, each plaintiff must also submit an IFP application.

Dated:  New York, New York
        December 27, 2021

Towaki Komatsu
*Plaintiff, Pro Se*
802 Fairmount Pl., Apt. 4B
Bronx, NY 10460
(347) 316-6180
Towaki_Komatsu@yahoo.com

# Exhibit A

## Your concerns

From:   Scalia, Ann Marie (scaliaa@hra.nyc.gov)

To:      towaki_komatsu@yahoo.com

Date:   Tuesday, August 1, 2017, 05:58 PM EDT

Dear Mr. Komatsu,

Attached you will find a letter that addresses concerns you raised with Commissioner Banks at a town hall meeting in Queens.  Thank you.

Ann Marie Scalia
Senior Deputy General Counsel/ Fair Hearings

 image2017-08-01-174611.pdf
27.8kB



**Human Resources
Administration**
Department of
Social Services

**Office of the
Legal Affairs**

W-2-110N
Rev. 12/15

·Steven Banks
Commissioner

Martha A. Calhoun
General Counsel

Ann Marie Scalia
Senior Deputy General
Counsel/Fair Hearings

150 Greenwich Street
New York, NY 10007

929 221 5408

August 1, 2017

Mr. Towaki Komatsu

Re:  Addressing your concerns

Dear Mr. Komatsu:

I am the Senior Deputy General Counsel for the Fair Hearing Administration of the Department of Social Services.  I am responding to the concerns you recently raised with Commissioner Banks at a town hall meeting in Queens.

1.  Storage Fees: HRA has contacted Cube Smart in order to address your outstanding storage fees. The account is paid in full and there is currently a credit of $108. They confirmed that there is no longer an auction date on your storage account.
2.  Urban Pathways building:  An initial attempt was made on or about July 21, 2017, by staff from New York City Housing Preservation Development (HPD) to inspect your premises, however they were unable to gain access to your unit.  Another attempt was made over the weekend of July 22nd and they were again unable to gain access.
3.  Job opportunities: The NYC Department of Veterans Services reached out to you by phone and email on July 24, 2017.  They are, as they have been in the past, willing to assist you with employment related services. Please respond to their outreach in order to avail yourself of their services.
4.  Request for a legal services provider: We have identified a legal services provider that is able to conduct an intake appointment with you regarding your legal matters. The organization is Mobilization for Justice and you should contact:  John Bart, Esq. at (212) 417-3766, in order to make an intake appointment. Their address is 100 William Street, 6th Floor, New York, NY 10038.

We will continue to try to address your concerns and assist you in any way possible.

Sincerely,

Ann Marie Scalia

A1

FIA-1127 (E) 09/23/14
LLF

**NYC** Human Resources | Family Independence
Administration | Administration
Department of
Social Services

CROTONA JOB CENTER (046)
1910 MONTEREY AVENUE,1ST FLOOR

BRONX, NY 10457

Date: <u>01/27/2017</u>

*0101250000000026*

Case Number: ███████████

KOMATSU    TOWAKI

Case Name: <u>KOMATSU TOWAKI</u>

798-802 FAIRMONT  PL       4B
BRONX, NY  10460-

Center: <u>046</u>

## Notice to Household of Storage Fee Payment to Vendor

Dear <u>KOMATSU TOWAKI                          </u>:

We are notifying you that the agency has agreed to pay your storage fee of $<u> 339.00                      </u>
beginning <u> 01  </u> / <u> 27  </u> / <u> 2017  </u>. This payment is being made to:

Vendor's Name <u> CUBESMART STORAGE FR K #6006                    </u>

Vendor's Address: <u>  33-24 WOODSIDE AVE.                       </u>

City: <u> QUEENS                </u>    State: <u> NY   </u>    Zip Code: <u> 11101          </u>

The account number assigned to you by the <u> CUBESMART STORAGE FR K #6006                  </u>
facility is <u> #6006                                                </u>.

This payment will continue to be made as long as you reside in a Department of Homeless Services (DHS)
shelter.

A2

 **NEW YORK** STATE OF OPPORTUNITY.  | **Office of Temporary and Disability Assistance**

ANDREW M. CUOMO
Governor

SAMUEL D. ROBERTS
Commissioner

MICHAEL PERRIN
Executive Deputy Commissioner

July 21, 2016

Mr. Towaki Komatsu
1 Penn Plaza, Ste. 621
New York, New York 10119

Subject: Komatsu, Towaki FH#7316477K

Dear Mr. Komatsu:

Please accept this response to your letter, dated July 6, 2016, concerning a fair hearing you attended at 14 Boerum Place on July 5, 2016. In your letter, you contend that Administrative Law Judge Roberts and Ms. Fernandez, the representative from HRA, failed to give you an opportunity to provide complete answers to questions regarding payment of your storage fees at the hearing. You further contend that Administrative Law Judge Roberts asked you the same question multiple times, indicating that she was not paying proper attention to the answers you provided to her questions. Administrative Law Judge Roberts ended your hearing and entered a default. You argue that you were denied an opportunity to be heard in violation of your due process rights at a fair hearing.

A review of the recording of the hearing shows that Administrative Law Judge Roberts asked you multiple questions to elicit necessary factual information from you about your request for storage fees in order for her to properly review the issue for the hearing. The recording does show at one point a contentious exchange between you and Administrative Law Judge Roberts regarding the conduct of the hearing. However following this exchange, you made an effort to answer the question she asked concerning when you applied for storage fees but then the hearing concluded.

Based on a review of the entire record of the hearing, together with your letter, your hearing should be re-opened, pursuant to 18 NYCRR 358-6.6(b). You will be afforded another opportunity to provide testimony and documentary evidence regarding the issue of payment and/or reimbursement for storage fees.

The reopened fair hearing (FH#7316477K) will be scheduled on the next appropriate fair hearing calendar prepared for New York City. Confirming notification of the date and location will be forwarded to all parties under separate cover.

Thank you.

A3

Sincerely,

Samuel L. Spitzberg
Director Office of Administrative Hearings

cc:  Ann Marie Scalia, Esq. NYC-HRA Office of Legal Affairs
     Nicola Aaronson, Esq. NYC-HRA Office of Legal Affairs
     Nigel Marks, Assistant Director
     James Dalton, Principal Hearing Officer
     Akinwale Akinrefon, Supervising Hearing Officer
     Diane Roberts, Hearing Officer
     James W. Ryan, III, Supervising Hearing Officer

**STATE OF NEW YORK**                          **REQUEST:** October 20, 2016
**OFFICE OF TEMPORARY AND DISABILITY ASSISTANCE**    **CASE #:** ███████
                                               **CENTER #:** 46
                                               **FH #:** 7406570N

---

In the Matter of the Appeal of                 :

Towaki Komatsu                                 :    **DECISION
                                                    AFTER**
                                               :    **FAIR
                                                    HEARING**
from a determination by the New York City      :
Department of Social Services
                                               :

---

## JURISDICTION

Pursuant to Section 22 of the New York State Social Services Law (hereinafter Social Services Law) and Part 358 of Title 18 NYCRR, (hereinafter Regulations), a fair hearing was held on April 11, 2017, in New York City, before C. Gamble, Administrative Law Judge.  The following persons appeared at the hearing:

> For the Appellant

Towaki Komatsu, Appellant (by telephone)

> For the Social Services Agency

Marin Gerber, Esq., Fair Hearing Representative
S. Jatto, Fair Hearing Representative

J. Okello, Supervising Hearing Officer (Observer)

## ISSUE

Was the determination of the Agency not to provide the Appellant with reimbursement for storage fees for May 2016, June 2016 and July 2016 correct?

## FINDINGS OF FACT

An opportunity to be heard having been afforded to all interested parties and evidence having been taken and due deliberation having been had, it is hereby found that:

1.    The Appellant is in receipt of Public Assistance Benefits for a household of one.

A4

FH# 7406570N

2.      The Appellant seeks review of the Agency's determination not to reimburse the Appellant for storage fees he paid covering the period for May 2016, June 2016 and July 2016.

3.      On October 20, 2016, the Appellant requested this fair hearing.

## APPLICABLE LAW

At a fair hearing concerning the denial of an application for or the adequacy of Public Assistance, Medical Assistance, HEAP, SNAP benefits or services, the appellant must establish that the agency's denial of assistance or benefits was not correct or that the appellant is eligible for a greater amount of assistance or benefits. Except where otherwise established by law or regulation, in fair hearings concerning the discontinuance, reduction or suspension of Public Assistance, Medical Assistance, SNAP benefits or services, the social services agency must establish that its actions were correct. 18 NYCRR 358-5.9(a).

Resources shall be so utilized as to eliminate or reduce the need for assistance, rehabilitate the client and conserve public funds through assignment and recovery. 18 NYCRR 352.23(a).

Pursuant to Section 352.6(f) of the Regulations, an allowance for storage of furniture and personal belongings shall be made when it is essential, for circumstances such as relocation, eviction or temporary shelter, so long as eligibility for Public Assistance continues and so long as the circumstances necessitating the storage continue to exist.

## DISCUSSION

The record in this case establishes that the Appellant seeks review of the Agency's determination not to reimburse the Appellant for storage fees paid for May 2016, June 2016 and July 2016. The Appellant testified that he applied to the Agency for payment of storage fees for May 2016, June 2016 and July 2016, August 2016 and September 2016. He testified that the Agency failed to pay the storage fees. On September 7, 2016, the Appellant had a Fair Hearing (FH 7316477K)) on the Agency's determination to deny the Appellant's application for storage fees. A decision on Fair Hearing (FH 7316477K) was issued on September 15, 2016. That decision directed the Agency to make a determination as to the Appellant's eligibility for Storage of Possession expenses from May 2016 to present time; advise the Appellant of any additional documents which are required to make this determination and; advise the Appellant in writing of its determination and provide any allowances to which the Appellant may be entitled. The decision also, stated that if the Appellant was eligible for Storage of Possession expenses, the Agency was directed to make payments retroactive to the date of request.

At the hearing, the Agency presented a Notice of Special Grant dated September 28, 2016 which states that "a check was issued to you at the Job Center on :9/28/2016. $984.00 from 5/1/2016 to 9/30/2016 for storage fees." A monthly invoice from CubeSmart for rent for unit 6006 in the amount of $984.00 covering the period August 20, 2016 thru October 19, 2016 was submitted at the hearing. The notice date on the invoice is September 28, 2016. A monthly invoice from CubeSmart for rent for unit 6006 in the amount of $447.00 covering the period

FH# 7406570N

October 20, 2016 thru November 19, 2016 was submitted at the hearing.  The notice date on the invoice is November 9, 2016.  This invoice does not show rent for unit 6006 for the period August 20, 2016 thru October 19, 2016.  Based on this evidence, the Agency provided storage fees for August 20, 2016 thru October 19, 2016 in the amount of $984.00.

The Appellant contends that the storage fees were not paid by the Agency.  He testified that he paid the storage fees for May 2016, June 2016 and July 2016.  In support of his testimony, the Appellant submitted an invoice from CubeSmart showing a VISA transaction on June 7, 2016 in the amount of $430.75.  According to the invoice, unit 6006 rent: (May 20, 2016 thru June 19, 2016) $379.80. He submitted an invoice from CubeSmart showing a VISA transaction on June 19, 2016 in the amount of $427.95.  According to the invoice unit 6006 rent: (June 20, 2016 thru Jul 19, 2016) $399.00.  He submitted an invoice from CubeSmart showing a VISA transaction on July 31, 2016 in the amount of $438.00.  According to the invoice unit 6006 rent: (Jul 20, 2016 to Aug 19, 2016) $399.00.  The Appellant testified that he is seeking reimbursement for the above invoices which total $1296.70.

Based on the Appellant's documentation, he obtained funds to pay for the storage fees he incurred during the following periods: May 20, 2016 thru June 19, 2016, June 20, 2016 thru July 19, 2016 and July 20, 2016 to August 19, 2016.  Resources shall be so utilized as to eliminate or reduce the need for assistance, rehabilitate the client and conserve public funds through assignment and recovery.  18 NYCRR 352.23(a).  There is no provision in the Social Services Law or in Department Regulations that authorizes reimbursement for storage fees paid by an applicant or recipient of Public Assistance benefits.  In fact, the above regulation states that a recipient shall utilize resources to eliminate or reduce the need for assistance and to conserve public funds.  The Appellant's obtaining of resources to pay for his storage fees is in keeping with that regulation.  Therefore, the Agency's determination in this case is proper.

**DECISION**

The determination of the Agency not to provide the Appellant with reimbursement for storage fees for May 2016, June 2016 and July 2016 is correct.

DATED:   Albany, New York
04/19/2017

NEW YORK STATE OFFICE OF
TEMPORARY AND DISABILITY ASSISTANCE

By

Commissioner's Designee

# Preparations for today's OTDA fair hearing against HRA

| | |
|---|---|
| From: | Towaki Komatsu (towaki_komatsu@yahoo.com) |
| To: | samuel.spitzberg@otda.ny.gov |
| Cc: | scaliaa@dss.nyc.gov; banksst@dss.nyc.gov; calhounm@dss.nyc.gov; Press.office@exec.ny.gov |
| Date: | Friday, February 1, 2019, 01:07 PM EST |

Mr. Spitzberg,

As you're aware, I sent the following e-mail to HRA's Ann Marie Scalia, its Commissioner Steven Banks as well as HRA's Martha Calhoun (General Counsel), and the governor's office prior to a public hearing that will be held in New York City's City Hall at 1 pm that concerns attempts people make to receive government benefits from HRA.

To date, I have received no response whatsoever from HRA in regards to the following discovery demands that apply to today's scheduled OTDA fair hearing:

I'm invoking the legal rights that scheduling notice confirms that I have to order HRA to immediately provide me the following information:

1. Whatever evidence HRA has that clearly and definitively confirms that I have resided in permanent housing since 3/7/16. In regards to this demand for evidence, "permanent housing" is defined by the federal regulation of 24 CFR §578.3 that supersedes whatever other contrary view HRA and OTDA may have about how "permanent housing" is defined and what its prerequisites are. 24 CFR §578.3 definition of "permanent housing" includes the following terms:

"**To be permanent housing, the program participant must be the tenant on a lease for a term of at least one year**, which is renewable for terms that are a minimum of one month long, and is terminable only for cause."

(boldface formatting added for emphasis)

2. Whatever evidence HRA has that clearly and definitively establishes that the determinations it issued on 1/8/19 were valid in regards to applications that I submitted to it on 10/19/18 and 12/27/18 to have HRA pay for storage expenses on my behalf while I have continued to reside in a dwelling that has been and continues to be temporary shelter instead of permanent partly because I have never had a valid apartment lease for the specific dwelling in which I reside. In regards to this demand for evidence, 18 NYCRR § 352.6(f) is an applicable New York State regulation that governs the circumstances in which HRA is required by law to pay for storage expenses when an individual receiving public assistance from it submits an application to it to pay for storage expenses while that individual is residing in temporary shelter. A copy of the text of 18 NYCRR § 352.6(f) is available on the Internet at the following address:

https://govt.westlaw.com/nycrr/Document/I50c3bd4bcd1711dda432a117e6e0f345?viewType=FullText&originationContext=documenttoc&transitionType=CategoryPageItem&contextData=(sc.Default)

A diligent review of the text of 18 NYCRR § 352.6(f) on 1/19/19 from the Internet address just listed above confirms that 18 NYCRR § 352.6(f) contains the following terms:

> "(f) **An allowance for storage of furniture and personal belongings must be made when it is necessary for circumstances such as** relocation, eviction or **temporary shelter**, so long as eligibility for public assistance continues and so long as the circumstances necessitating the storage continue to exist, and no other storage options exist."

(boldface formatting added for emphasis)

3. The parts in my case record with HRA that contains the following information:

a) The dates when HRA has issued payments for storage expenses on my behalf that is to include the amount of the payments that it made on those dates and the storage rental periods those payments covered.

b) A record that identifies the date when HRA first received a copy of the binding and fully-enforceable apartment lease agreement that I signed on 2/16/16 in HRA's offices located at 33 Beaver Street in Manhattan with Lisa Lombardi of Urban Pathways, Inc. to be issued the entirety of apartment **4C** in a fully-furnished state shortly thereafter that is located in the building in which I have resided since 3/7/16.

c) A copy of the actual and only apartment lease agreement that I signed with Ms. Lombardi on 2/16/16 in HRA's offices that HRA received thereafter.

d) Detailed records of all documents that have been in HRA's possession that relate to valid complaints that I reported to HRA beginning on or about 3/10/16 against Urban Pathways, Inc. in which I informed HRA that Urban Pathways, Inc. had subjected me to an illegal bait-and-switch fraud and forgery concerning the apartment lease agreement that I signed on 2/16/16 in HRA's offices with Ms. Lombardi in the presence of witnesses.

For this reason, OTDA is legally obligated to grant me an adjournment of today's fair hearing, since HRA's failure to comply has violated my due process rights in advance of that hearing.

I'm now pursuing legal remedies against both HRA and OTDA in federal court.

From,

Towaki Komatsu

Begin forwarded message:

**From:** Towaki Komatsu <towaki_komatsu@yahoo.com>
**Subject: Re: Preparations for 1/22/19 OTDA fair hearing against HRA**
**Date:** January 19, 2019 at 4:42:05 PM EST
**To:** "Scalia, Ann Marie" <scaliaa@dss.nyc.gov>
**Cc:** "Banks, Steven (HRA)" <bankss@dss.nyc.gov>, "Calhoun, Martha (HRA)" <calhounm@dss.nyc.gov>, "Spitzberg, Samuel L (OTDA)" <samuel.spitzberg@otda.ny.gov>, Press.office@exec.ny.gov

Ms. Scalia,

I'm sending you this message in regards to the OTDA fair hearing for fair hearing number 7891961H that I"m scheduled to have at 1:30 pm on 1/22/19. Information shown on page 2 of that notice dated 1/10/19 explicitly states that I have the following legal rights with respect to that fair hearing:

- To "examine opposing witnesses and evidence".

- To review my case record with HRA.

- To "obtain copies of documents which the local agency will present at the hearing as well as copies of other documents you need for your hearing at no cost"

I'm invoking the legal rights that scheduling notice confirms that I have to order HRA to immediately provide me the following information:

1. Whatever evidence HRA has that clearly and definitively confirms that I have resided in permanent housing since 3/7/16. In regards to this demand for evidence, "permanent housing" is defined by the federal regulation of 24 CFR §578.3 that supersedes whatever other contrary view HRA and OTDA may have about how "permanent housing" is defined and what its prerequisites are. 24 CFR §578.3 definition of "permanent housing" includes the following terms:

> "**To be permanent housing, the program participant must be the tenant on a lease for a term of at least one year**, which is renewable for terms that are a minimum of one month long, and is terminable only for cause."

> (boldface formatting added for emphasis)

2. Whatever evidence HRA has that clearly and definitively establishes that the determinations it issued on 1/8/19 were valid in regards to applications that I submitted to it on 10/19/18 and 12/27/18 to have HRA pay for storage expenses on my behalf while I have continued to reside in a dwelling that has been and continues to be temporary shelter instead of permanent partly because I have never had a valid apartment lease for the specific dwelling in which I reside. In regards to this demand for evidence, 18 NYCRR § 352.6(f) is an applicable New York State regulation that governs the circumstances in which HRA is required by law to pay for storage expenses when an individual receiving public assistance from it submits an application to it to pay for storage expenses while that individual is residing in temporary shelter. A copy of the text of 18 NYCRR § 352.6(f) is available on the Internet at the following address:

> https://govt.westlaw.com/nycrr/Document/I50c3bd4bcd1711dda432a117e6e0f345?viewType=FullText&originationContext=documenttoc&transitionType=CategoryPageItem&contextData=(sc.Default)

A diligent review of the text of 18 NYCRR § 352.6(f) on 1/19/19 from the Internet address just listed above confirms that 18 NYCRR § 352.6(f) contains the following terms:

> "(f) **An allowance for storage of furniture and personal belongings must be made when it is necessary for circumstances such as** relocation, eviction or **temporary shelter**, so long as eligibility for public assistance continues and so long as the circumstances necessitating the storage continue to exist, and no other storage options exist."

> (boldface formatting added for emphasis)

3. The parts in my case record with HRA that contains the following information:

a) The dates when HRA has issued payments for storage expenses on my behalf that is to include the amount of the payments that it made on those dates and the storage rental periods those payments covered.

b) A record that identifies the date when HRA first received a copy of the binding and fully-enforceable apartment lease agreement that I signed on 2/16/16 in HRA's offices located at 33 Beaver Street in Manhattan with Lisa Lombardi of Urban Pathways, Inc. to be issued the entirety of

apartment **4C** in a fully-furnished state shortly thereafter that is located in the building in which I have resided since 3/7/16.

c) A copy of the actual and only apartment lease agreement that I signed with Ms. Lombardi on 2/16/16 in HRA's offices that HRA received thereafter.

d) Detailed records of all documents that have been in HRA's possession that relate to valid complaints that I reported to HRA beginning on or about 3/10/16 against Urban Pathways, Inc. in which I informed HRA that Urban Pathways, Inc. had subjected me to an illegal bait-and-switch fraud and forgery concerning the apartment lease agreement that I signed on 2/16/16 in HRA's offices with Ms. Lombardi in the presence of witnesses.


A copy of this e-mail message will most likely be filed within 4 days in a federal court lawsuit that I have against the City of New York.


From,

Towaki Komatsu



**NEW YORK**
STATE OF
OPPORTUNITY.

## Office of Temporary and Disability Assistance

**ANDREW M. CUOMO**
Governor

**MICHAEL P. HEIN**
Commissioner

**BARBARA C. GUINN**
Executive Deputy Commissioner

(518) 473-4968

November 13, 2019

Towaki Komatsu
802 Fairmount Place
Apt. 4B
Bronx, NY 10460

Re: FH: 8030861K and 8042087Q

Dear Mr. Komatsu:

On October 29, 2019, Mr. Samuel Spitzberg, Director of the Office of Administrative Hearings (OAH) forwarded me a sting of emails which discussed several fair hearing-related issues. In addition to Mr. Spitzberg, some of the emails included communication between you and several employees of the New York City Human Resources Administration (HRA), including Ann Marie Scalia, Steven Banks and Nicola Aaronson. My response will only address the issues that pertain to OAH.

Your October 27, 2019, email to Mr. Spitzberg stated that HRA is in violation of the notice the Office of Temporary and Disability Assistance (OTDA) issued on October 19, 2019, which stated that "The local office is DIRECTED to continue assistance unchanged until the Fair Hearing decision is issued." You also allege in your email that HRA "[i]s in violation of providing me with a complete and comprehensive evidence packet prior to tomorrow's OTDA fair hearing." Since your email did not reference the fair hearing number that is the subject of your emails, I write under the assumption that you were referring to fair hearing 8060861K which was scheduled for October 28, 2019, at 10:00 a.m.

Our records for fair hearing 8060861K indicate that the HRA was not directed to continue your benefits unchanged. Therefore, there was no violation of an OTDA directive to continue your assistance unchanged until a decision has been issued.

With respect to the second "violation" you cited in your email, the regulations state that at "any reasonable time before the date of your fair hearing and also at the fair hearing, you or your authorized representative have the right to examine the contents of your case record and all documents and records to be used by the social services agency at your fair hearing." 18 New York Codes Rules and Regulations Section 358-3.7 (a)(1). Section 358-3.7(b)(4) states that if "the social services agency fails to comply with the requirements of this subdivision the hearing officer may adjourn the case, allow a brief recess for the appellant to review the documents, preclude the introduction of the documents where a delay would be prejudicial to the appellant, or take other appropriate action to ensure that the appellant is not harmed by the agency's failure to comply with these requirements." Therefore, to obtain relief for the alleged violation you must attend the scheduled hearing and notify the Hearing Officer of the violation.

On October 28, 2019, you emailed Mr. Spitzberg and inform him of your decision not to participate in the hearing which was scheduled to take place telephonically. Mr. Spitzberg informed you that the hearing was scheduled for the morning and he pleaded with you to "[p]lease answer the phone when the Hearing Officer calls." Instead of participating in the hearing in an email that was received at 12:04 p.m. you listed three "prerequisites" that were "to occur prior" to the hearing. You alleged that the following did not occur:

    a) Notice to be issued by OTDA in writing of the specific issues to be addressed during today's hearing in order to enable me to sufficiently prepare for it.
    b) A pre-deprivation hearing to be conducted to enable me to challenge the validity of OTDA's decision to prevent me from having OTDA fair hearings in its Brooklyn office at Boehrom Place (sic).
    c) HRA to have fully complied with my demands for information to prepare for today's fair hearing.

None of the items you listed are prerequisites for a fair hearing. However, Section D of the Notice of Fair Hearing advised you of the issue of the fair hearing. With respect to fair hearing 8030861K, you did not state a specific reason for your fair hearing request. Therefore, a specific reason could not be stated in Section D of the Notice of Fair Hearing.

There is no right to a "pre-deprivation hearing" for you to challenge the validity of OTDA's determination to restrict your hearings to telephonic hearings. This restriction is based on your frequent abusive conduct towards OTDA's staff. OTDA is responsible for ensuring that hearings are conducted in an environment that safe for its staff and appellants.

Regarding your allegation that HRA has not "fully complied with [your] demands for information to prepare for today's fair hearing," as noted above you must notify the Hearing Officer at the hearing of the alleged violation.

In addition to the three reasons listed above, you also stated in an October 29, 2019, email to Mr. Spitzberg that since you waited more than one hour for the Hearing Officer to call you, you "sufficiently complied with the requirement for waiting as it was specifically written in OTDA's notice." The hearing in question was scheduled for October 28, 2019, at 10:00 a.m. The Notice of Telephone Hearing explicitly states, "[i]f you have a morning appointment, you must be available at your telephone from 9:00 to 12:00 noon to accept a call from the Hearing Officer." Our records indicate that the Hearing Officer called you at least three times. The calls went directly to your voicemail and the Hearing Officer left messages for you. Since you failed to participate in the hearing, your fair hearing request has been deemed abandoned.

On October 18, 2019, you copied Mr. Spitzberg on one of your emails to Ms. Scalia. Part of the email was directed to Mr. Spitzberg. (Since you did not mention which fair hearing you were referring to, my response assumes that you were referring to fair hearing 8042084Q. The assumption is because that hearing is about the HRA's determination to discontinue your cash assistance and SNAP benefits because you allegedly failed to recertify). It stated, "[s]ince HRA is still proving to be incompetent, immediately order it to fully reinstate the benefits that it ended for both SNAP and the cash assistance." Mr. Spitzberg responded on October 20, 2019, informing you that "[a]id to continue was directed for the PA matter. It cannot be directed for SNAP because the certification period expired. Federal law does not permit AC in SNAP cases the certification period." Mr. Spitzberg is correct. The Federal Regulations at 7 CFR § 273.14 (a) state that no

"household may participate beyond the expiration of the certification period assigned in accordance with section 273.10(f) without a determination of eligibility for a new period."  Since you have not been recertified, it would be improper for OTDA to direct HRA to provide you with SNAP benefits.

I hope this addresses the issues you raised in your emails.  In the future kindly include the fair hearing number of the hearing you are referring to in all your correspondence with OTDA.  Doing so will expedite our responses to your queries.

Yours truly,

Nigel A. Marks, Assistant Director
Office of Administrative Hearings

A6

**STATE OF NEW YORK**  **REQUEST:** November 23, 2020
**OFFICE OF TEMPORARY AND DISABILITY ASSISTANCE**  **CASE #:** ▬▬▬▬▬
**CENTER #:** 62
**FH #:** 8227101K

_____

            In the Matter of the Appeal of         :

                                               : **DECISION**

            Towaki Komatsu                      **AFTER**

                                               : **FAIR**

                                               **HEARING**

from a determination by the New York City      :
Department of Social Services

                                                  :

_____

## JURISDICTION

Pursuant to Section 22 of the New York State Social Services Law (hereinafter Social Services Law) and Part 358 of Title 18 NYCRR (hereinafter Regulations), a fair hearing was held on February 9, 2021, in New York City, before Marsha Oresky, Administrative Law Judge. The following persons appeared at the hearing:

     For the Appellant

     Towaki Komatsu, Appellant (by telephone)

     For the Social Services Agency

     Abiola Balogun, Fair Hearing Representative (by telephone)

## ISSUE

Was the Agency's failure to pay the Appellant's storage fees for the period from February 2016, correct?

## FACT FINDING

An opportunity to be heard having been afforded to all interested parties and evidence having been taken and due deliberation having been had, it is hereby found that:

1.     The Appellant has been in receipt of Public Assistance benefits for a household of one person.

2.     The Appellant seeks review of the Agency's failure to pay storage fees for the period from February 2016.

FH# 8227101K

3.    On November 23, 2020, this fair hearing was requested.  At the fair hearing, the issue was clarified without objection by the parties.

## APPLICABLE LAW

**Burden of Proof**
Section 358-5.9.* Fair hearing procedures.
(a) At a fair hearing concerning the denial of an application for or the adequacy of public assistance, medical assistance, HEAP, SNAP (SNAP) benefits or services; or an exemption from work activity requirements the appellant must establish that the agency's denial of assistance or benefits was not correct or that the appellant is eligible for a greater amount of assistance or benefits or is exempt from work requirements pursuant to Part 385 of this Title. Except, where otherwise established by law or regulation, in fair hearings concerning the discontinuance, reduction or suspension of public assistance, medical assistance, SNAP (SNAP) benefits or services, the social services agency must establish that its actions were correct.

## DISCUSSION

The Appellant's household receives Public Assistance benefits.  The Appellant requested this hearing concerning the adequacy of payment of storage fees.  However, it was clarified at the hearing that the Appellant was contesting the Agency's failure to pay storage fees from February 2016, not that the amount of fees paid was incorrect.

The Appellant testified at the fair hearing that the Agency did not timely pay his storage fees, although requested, and that as a result his property was sold at auction due to the non-payment.

Regarding the non-payment of storage fees for the period from February 2016, the Appellant failed to establish any facts upon which a finding of inadequacy or failure to make payment may be based.  He did not establish that he made a request for payment of storage fees from February 2016.  Appellant did not establish that he had property in storage.  Appellant did not establish the amount of household income for each month from February 2016, the household composition for each month, the household's rent expense for each month, the amount of the household's Public Assistance needs for each month, the name and location of the storage facility in question and identification of the unit in question, the monthly storage fee, the period in question for payment of fees and the amount that was due and left unpaid that the Appellant believes the Agency was required to pay and failed to pay.

At a fair hearing concerning the denial of an application or the adequacy of benefits provided, the Appellant must establish that the Agency's denial of assistance or benefits was not correct or that the Appellant is eligible for a greater amount of assistance or benefits.  The Appellant has failed to meet his burden of proof and did not establish that his household was eligible for payment of storage fees or even that he incurred storage fees.  Furthermore, the

FH# 8227101K

Appellant failed to establish that the Agency failed to pay his storage fees and that his property was sold at auction.

The Appellant has failed to establish that he made a request for payment of storage fees in February 2016 and also failed to establish that such a request, if made, was approved and that the Agency failed to act upon it.  Finally, as Appellant's property is no longer in storage, there is no issue to determine with respect to the Agency's failure to pay Appellant's storage fees for the period from February 2016.

## DECISION

There is no issue for the Commissioner to determine with respect to the Agency's failure to pay Appellant's storage fees for the period from February 2016.

DATED:   Albany, New York
          03/22/2021

NEW YORK STATE OFFICE OF
TEMPORARY AND DISABILITY ASSISTANCE

By

H Cooper Gregory

Commissioner's Designee

A7

# Encrypt: 8227101K Final response

Hearings, Litigationmail <Litigationmail@otda.ny.gov>

Wed 7/7/2021 6:55 AM

📎 2 attachments (800 KB)
Encrypted E-mails Instructions.pdf; 8227101K Komatsu final sustaining response.pdf;

Good Afternoon,

Please see the attached letter for the above-referenced Fair Hearing.

Thanks,

**Naeem Mann**
Fair Hearings Specialist 1, Office of Administrative Hearings

**Office of Temporary and Disability Assistance**
40 North Pearl Street, Albany, NY 12243

www.otda.ny.gov

---

CONFIDENTIALITY NOTICE: This communication with its contents may contain confidential, personal, private, sensitive and/or legally privileged information. It is solely for the use of the intended recipient(s). Unauthorized interception, review, use or disclosure is prohibited and may violate applicable laws including, but not limited to, the Electronic Communications Privacy Act. If you are not the intended recipient, please contact the sender immediately to notify him/her of the misdirection and destroy all copies of the communication.

A8



**Office of Temporary
and Disability Assistance**

| **ANDREW M. CUOMO** | **MICHAEL P. HEIN** | **BARBARA C. GUINN** |
|---|---|---|
| Governor | Commissioner | Executive Deputy Commissioner |

July 7, 2021

Towaki Komatsu
802 Fairmount Place
Apt. 4B
Bronx, NY.10460

RE: FH: 8227101K, Towaki Komatsu

Dear Towaki Komatsu:

This is in response to your March 29, 2021 email correspondence to our office wherein you took issue with the accuracy of the above-noted Fair Hearing Decision #8227101K which was heard on February 9, 2021. Specifically you contend that Fair Hearing Decision improperly framed the issue to be the adequacy of storage fees since February 2016, arguing instead that the issue related to the Agency's failure to properly comply with the directives in Fair Hearing Decision #7316477K which was issued on September 14, 2016.

Having had an opportunity to review the Fair Hearing Record and all subsequent correspondence submitted in this regard we find no basis upon which to disturb the Decision as rendered.  The audio recording of the hearing reveals that one of the first questions posed by the Administrative Law Judge (ALJ) was whether the issue for the February 9, 2021 fair hearing related to the adequacy of storage fees, to which you replied that it did. From there you spent a considerable amount of time arguing that the Agency had failed to provide you with certain documents which you had requested, which apparently lay outside your case record but which you felt were relevant to the storage fee issue under review. However, at no point during the hearing did you request an adjournment for your continued pursuit of such documents. While you expressed dissatisfaction with the suggestion that the Agency be directed to provide you with your case record for review, you never did provide any evidence or testimony relating to the storage fee adequacy issue other than to offer further argument regarding the documentation requested as well as the Agency's failure to comply with the September 14, 2016 Decision.

With regard to the September 14, 2016 Decision, it must be noted that the decision directed the Agency to make a determination regarding your eligibility for storage fees from May 2016 froward and to advise you of any documentation that you must provide to the Agency for them to make such determination. In compliance with said directives the Agency advised the Office of Administrative Hearings (OAH) that you had failed to keep an appointment scheduled  for October 6, 2016 to submit requested documentation, but that the Agency had nevertheless issued storage fees in the amount of $984.00 for the period May 2016 through September 2016. You were advised of the Agency's compliance action by letter from OAH dated October 7, 2016. If, as you appear to contend, that the $984.00 storage fee benefit issuance amount was somehow inadequate and that you are still owed monies for the period in question, you should have provided some evidence at your February 9, 2021 hearing to establish the alleged insufficiency of the benefit issuance. As was mentioned earlier there was no evidence offered into evidence to support any claim that the compliance action which the Agency took with regard to the directives

A8

in September 14, 2016 Decision was inadequate. Accordingly, I can not agree that the Decision #8227101K misstated the issue, or that any action should be taken to Amend or Correct such Decision.

We trust this addresses the concerns raised in your inquiry and helps you to better understand the basis for our decision.

Sincerely,

Konstantinos Pertsas
Principal Hearing Officer

KP: nnm
cc:     Stephanie Feinberg, Esq, NYC-HRA Office of Legal Affairs

## RE: Lies by Steven Banks of HRA today

| | |
|---|---|
| From: | Marks, Nigel A (OTDA) (nigel.marks@otda.ny.gov) |
| To: | towaki_komatsu@yahoo.com |
| Cc: | Samuel.Spitzberg@otda.ny.gov; nyspio@otda.ny.gov; Krista.Rock@otda.ny.gov; scaliaa@dss.nyc.gov; calhounm@dss.nyc.gov |
| Date: | Friday, August 27, 2021, 04:14 PM EDT |

Good afternoon,
Please see the attached for the results of my investigation into your complaint. Thank you.

Nigel A. Marks
Downstate Director,
Office of Administrative Hearings

Office of Temporary and Disability Assistance
14 Boerum Place, Brooklyn, NY 11201
(718) 923-4210 | Nigel.Marks@otda.ny.gov

www.otda.ny.gov

-----Original Message-----
From: Towaki_Komatsu <towaki_komatsu@yahoo.com>
Sent: Tuesday, August 24, 2021 5:02 PM
To: Marks, Nigel A (OTDA) <Nigel.Marks@otda.ny.gov>
Cc: Spitzberg, Samuel L (OTDA) <Samuel.Spitzberg@otda.ny.gov>; otda.sm.co.nyspio <nyspio@otda.ny.gov>;
Rock, Krista (OTDA) <Krista.Rock@otda.ny.gov>; Scalia, Ann Marie (HRA) <scaliaa@dss.nyc.gov>; Calhoun, Martha
(HRA) <calhounm@dss.nyc.gov>
Subject: Lies by Steven Banks of HRA today

ATTENTION: This email came from an external source. Do not open attachments or click on links from unknown
senders or unexpected emails.

Mr. Marks,

HRA Commissioner Steven Banks likely lied again to my face today by claiming that he and HRA had authorization
from OTDA to not comply with my discovery demands for the OTDA fair hearings that HRA conducted between HRA
and i since December of 2020 for fair hearing number 8227101K.

Since you and Mr. Spitzberg were cc-ed on my e-mails to Mr. Banks on 12/5/20 and 1/30/21 that concerned
discovery demands, can you confirm whether OTDA authorized HRA to not comply with those discovery demands?

From,

Towaki Komatsu

_____

CONFIDENTIALITY NOTICE: This communication with its contents may contain confidential, personal, private, sensitive
and/or legally privileged information. It is solely for the use of the intended recipient(s). Unauthorized interception,
review, use or disclosure is prohibited and may violate applicable laws including, but not limited to, the Electronic
Communications Privacy Act. If you are not the intended recipient, please contact the sender immediately to notify
him/her of the misdirection and destroy all copies of the communication.

 Komatsu 08-24-21 Email Reply NAM.pdf
118.1kB



**Office of Temporary and Disability Assistance**

| KATHY HOCHUL | MICHAEL P. HEIN | BARBARA C. GUINN |
|---|---|---|
| Governor | Commissioner | Executive Deputy Commissioner |

August 27, 2021

**Via Email**

Towaki Komatsu
802 Fairmount Place
Apt. 4B
Bronx, NY 10460

Dear Towaki Komatsu:

This is in response to your August 24, 2021, email in which you asked that we "confirm whether OTDA authorized HRA not to comply with [your] discovery demands" dated December 5, 2020 and January 30, 2021.

I have thoroughly investigated this matter. During my investigation I have reviewed your emails, listened to the fair hearing recording of fair hearing 8227101K, and read the Decision After Fair Hearing. My review has found no evidence that OTDA has ever instructed HRA not to comply with your "discovery demands."

Fair hearing 8227101K was requested to address an alleged failure by HRA to pay your storage expense. During the hearing, which was held on February 9, 2021, the presiding Administrative Law Judge (ALJ) asked you if you received the evidence packet and you stated that you received it. You subsequently testified that you did not receive "documents" from HRA. The ALJ asked you if you were referring to your case record. You stated that you were not referring to your case record. You informed the ALJ that you were speaking about documents stated in your emails to me and Director Samuel Spitzberg. The ALJ informed you that she does not have access to those emails. You then read portions of one of your emails listing the documents you requested.

Your December 5, 2020, and January 31, 2021, emails cite 18 NYCRR Section 358-3.7 as the basis for your demand for certain documents from HRA. The regulation you reference specifically refers to: "**Examination of case record before the hearing**." Since you testified that you were not asking for documents in the evidence packet or your case record, your document request is beyond the scope of the fair hearing process. OTDA has no jurisdiction over your demands for documents that are beyond the scope of the fair hearing process.

I hope this addresses the issues you raised in your emails.

Yours truly,

Nigel A. Marks
Assistant Director
Office of Administrative Hearings

**STATE OF NEW YORK**                          **REQUEST:** June 6, 2016
**OFFICE OF TEMPORARY AND DISABILITY ASSISTANCE** ▮▮▮▮▮▮▮037876365A
                                               **CENTER #:** 46
                                               **FH #:** 7316477K

---

In the Matter of the Appeal of                     :

Towaki Komatsu                                     :   **DECISION**
                                                       **AFTER**
                                                   :   **FAIR**
                                                       **HEARING**
from a determination by the New York City          :
Department of Social Services
                                                   :

---

## JURISDICTION

Pursuant to Section 22 of the New York State Social Services Law (hereinafter Social Services Law) and Part 358 of Title 18 NYCRR, (hereinafter Regulations), a fair hearing was held on September 7, 2016, in New York City, before Joab Okello, Administrative Law Judge. The following persons appeared at the hearing:

For the Appellant

Towaki Komatsu, Appellant (by telephone)

For the Social Services Agency

James Calttrell, Fair Hearing Representative

## ISSUE

Was the Agency's determination to deny the Appellant's application for Storage of Possession expenses correct?

## FINDINGS OF FACT

An opportunity to be heard having been afforded to all interested parties and evidence having been taken and due deliberation having been had, it is hereby found that:

1.      The Appellant is in receipt of Public Assistance benefits.

2.      The Appellant's household consists of one person.

3.      On May 26, 2016, the Appellant requested that the Agency provide for Storage of Possession expenses.

FH# 7316477K

4.      On May 27, 2016, the Agency denied the Appellant's application for Storage of Possession expenses.

5.      On June 6, 2016, the Appellant requested this fair hearing.

## APPLICABLE LAW

Section 352.6 of 18 NYCRR provides that an allowance for storage of furniture and personal belongings shall be made when it is essential, for circumstances such as relocation, eviction or temporary shelter, so long as eligibility for public assistance continues and so long as the circumstances necessitating the storage continue to exist.

Section 370.3 of 18 NYCRR provides that Agencies must authorize emergency and short term assistance to provide for the effective and prompt relief of identified needs which cannot be met under Emergency Assistance to Needy Families with Children (EAF), Family Assistance, the Home Energy Assistance Program (HEAP) or Safety Net Assistance. In cases where the need is determined to be temporary, the grant may be limited to those items for which there is immediate need. Emergency Safety Net Assistance can only be provided where there is an identified emergency need and where the applicant is without income or resources immediately available to meet the emergency need. The household's gross income at the time of application cannot exceed 125 percent of the federal income official poverty line unless the emergency is the result of a fire, flood or other like catastrophe or the emergency assistance is granted in accordance with Section 352.5(c), (d) and (e) of 18 NYCRR. An emergency is defined as a serious occurrence or situation needing prompt attention. Emergency Safety Net Assistance is not available if the emergency arose because the applicant failed to comply with the requirements of Part 385 of the regulations relating to employment and training and was therefore disqualified from receiving assistance.

## DISCUSSION

During a telephone hearing, the Appellant stated that he applied to the Agency for assistance to pay Storage of Possession expenses on May 26, 2016, because he was residing in a temporary residence which was a very small room in an apartment that he shared with a roommate. The Appellant testified further that he was residing in a very hostile environment, his roommate having assaulted him on one occasion and also threw away his personal belongings. The Appellant testified that his personal belongings, already in storage, will be auctioned if the Agency does not pay for the storage fee from May 2016 to the present time.

The Agency presented a notice of denial dated May 27, 2016, indicating that the Agency determined to deny the Appellant's application for storage fee because the Appellant "did not get three moving estimates to move items from storage". The Agency did not offer any explanation as to why the Agency's denial was addressing "moving expenses" instead of the Appellant's

3

FH# 7316477K

request for Storage fee". The Agency did not present any other documents to sustain its determination.

Section 352.6 of 18 NYCRR provides that an allowance for storage of furniture and personal belongings shall be made when it is essential, for circumstances such as relocation, eviction or temporary shelter, so long as eligibility for public assistance continues and so long as the circumstances necessitating the storage continue to exist.

The Appellant's testimony is found to be credible to sustain his claim that he met *prima facia* eligibility for Storage fee Expenses on the grounds that he was residing in a temporary shelter which was too small to accommodate all his personal belongings and that he was a recipient of Public Assistance. Accordingly, the Agency's determination to deny the Appellant's request for Storage of Possession expenses cannot be sustained.

## <u>DECISION AND ORDER</u>

The Agency's determination to deny the Appellant's application for Storage of Possession expenses is not correct and is reversed.

1.  The Agency is directed to make a determination as to the Appellant's eligibility for Storage of Possession expenses from May 2016 to present time.

2.  The Agency is directed to advise the Appellant of any additional documents which are required to make this determination.

3.  The Agency is further directed to advise the Appellant in writing of its determination to provide any allowances to which the Appellant may be entitled.

4.  In the event that the Appellant is found to be eligible for Storage of Possession expenses, the Agency is directed to make payments retroactive to the date of request.

Should the Agency need additional information from the Appellant in order to comply with the above directives, it is directed to notify the Appellant promptly in writing as to what documentation is needed. If such information is requested, the Appellant must provide it to the Agency promptly to facilitate such compliance.

As required by 18 NYCRR 358-6.4, the Agency must comply immediately with the directives set forth above.

FH# 7316477K

DATED:   Albany, New York
         09/15/2016

NEW YORK STATE OFFICE OF
TEMPORARY AND DISABILITY ASSISTANCE

By

*[signature]*

Commissioner's Designee



**NEW YORK STATE OF OPPORTUNITY.**

# Office of Temporary and Disability Assistance

**ANDREW M. CUOMO**
Governor

**SAMUEL D. ROBERTS**
Commissioner

**BARBARA C. GUINN**
Executive Deputy Commissioner

January 24, 2019

Mr. Towaki Komatsu
802 Fairmount Place, Apt. # 4-B
Bronx, NY  10460

Re: Fair Hearing #7891961H

Dear Mr. Komatsu:

This is in reference to your recent fair hearing request to review a determination by the New York City Human Resources Administration, Rider Job Center # 38 pertaining to the denial of Emergency Assistance benefits.

Please be advised that due to a prior incident at 14 Boerum Place, you will not be allowed to return to that office for the above-referenced hearing.  Accordingly, we will schedule a telephone hearing on your behalf.

You will soon receive a Notice of Scheduling telling you the date and time of your telephone hearing.  If you have a morning appointment, you must be available at your telephone, (718) 450-6951, from 9:00 a.m. to 12:00 noon Eastern Time to accept a call from the Hearing Officer.  If you have an afternoon appointment, you must be available at your telephone from 1:00 p.m. to 5:00 p.m. Eastern Time to accept a call from the Hearing Officer.  You will be able to hear the agency's presentation over the telephone and you (as well as your representative, if any) will have a chance to question the agency representative and any witnesses.  You will also have a chance to tell your own side of the issue under review.

It may be helpful for you to send us any documents relevant to the issue under review in advance so that they will be available to the Hearing Officer at the hearing.  If you want to do this, the documents should be mailed as soon as possible to the following address:

Office of Temporary and Disability Assistance
Office of Administrative Hearings
P.O. Box 1930
Albany, NY 12201

If you have a representative, your representative should appear at the hearing site on the date and time specified with written authorization to represent you and documents you wish the

Hearing Officer to see.  Your representative will have a chance to examine the agency file and to question the agency representative and any witnesses.

Should you have any questions regarding the above procedures, please call the Office at 1-800-342-3334.


Sincerely,


Greg Harrington, Legal Affairs Specialist 3
Office of Administrative Hearings


GSH:GH



**Office of Temporary and Disability Assistance**

**ANDREW M. CUOMO**
Governor

**MICHAEL P. HEIN**
Commissioner

**BARBARA C. GUINN**
Executive Deputy Commissioner

August 7, 2019

Mr. Towaki Komatsu
802 Fairmount Place, Apt. # 4-B
Bronx, NY  10460

Re: Fair Hearing #8007225N

Dear Mr. Komatsu:

This is in reference to your recent fair hearing request to review a determination by the New York City Human Resources Administration pertaining to the adequacy of Public Assistance benefits.

Please be advised that due to a prior incident at 14 Boerum Place, you will not be allowed to return to that office for the above-referenced hearing.  Accordingly, we will schedule a telephone hearing on your behalf.

You will soon receive a Notice of Scheduling telling you the date and time of your telephone hearing.  If you have a morning appointment, you must be available at your telephone, (718) 450-6951, from 9:00 a.m. to 12:00 noon Eastern Time to accept a call from the Hearing Officer.  If you have an afternoon appointment, you must be available at your telephone from 1:00 p.m. to 5:00 p.m. Eastern Time to accept a call from the Hearing Officer.  You will be able to hear the agency's presentation over the telephone and you (as well as your representative, if any) will have a chance to question the agency representative and any witnesses.  You will also have a chance to tell your own side of the issue under review.

It may be helpful for you to send us any documents relevant to the issue under review in advance so that they will be available to the Hearing Officer at the hearing.  If you want to do this, the documents should be mailed within three weeks of receipt of this letter to the following address:

> Office of Temporary and Disability Assistance
> Office of Administrative Hearings
> P.O. Box 1930
> Albany, NY 12201

If you have a representative, your representative should appear at the hearing site on the date and time specified with written authorization to represent you and documents you wish the Hearing Officer to see.  Your representative will have a chance to examine the agency file and to question the agency representative and any witnesses.

Should you have any questions regarding the above procedures, please call the office at 1-800-342-3334.

Sincerely,

Greg Harrington, Fair Hearings Specialist 3
Office of Administrative Hearings

GSH:GH



**NEW YORK STATE OF OPPORTUNITY.**

# Office of Temporary and Disability Assistance

| **ANDREW M. CUOMO**<br>Governor | **MICHAEL P. HEIN**<br>Commissioner | **BARBARA C. GUINN**<br>Executive Deputy Commissioner |
|---|---|---|

December 31, 2019

Mr. Towaki Komatsu
802 Fairmount Place, Apt. # 4-B
Bronx, NY  10460

Re: Fair Hearing #8084256L

Dear Mr. Komatsu:

This is in reference to your recent fair hearing request to review a determination by the New York City Human Resources Administration, Rider Job Center # 38 pertaining to an action to discontinue Public Assistance and SNAP benefits.

Please be advised that due to a prior incident at 14 Boerum Place, you will not be allowed to return to that office for the above-referenced hearing. Accordingly, we will schedule a telephone hearing on your behalf.

You will soon receive a Notice of Scheduling telling you the date and time of your telephone hearing. If you have a morning appointment, you must be available at your telephone, (718) 450-6951, from 9:00 a.m. to 12:00 noon Eastern Time to accept a call from the Hearing Officer. If you have an afternoon appointment, you must be available at your telephone from 1:00 p.m. to 5:00 p.m. Eastern Time to accept a call from the Hearing Officer. You will be able to hear the agency's presentation over the telephone and you (as well as your representative, if any) will have a chance to question the agency representative and any witnesses. You will also have a chance to tell your own side of the issue under review.

It may be helpful for you to send us any documents relevant to the issue under review in advance so that they will be available to the Hearing Officer at the hearing. If you want to do this, the documents should be mailed within <u>three weeks</u> of receipt of this letter to the following address:

> Office of Temporary and Disability Assistance
> Office of Administrative Hearings
> P.O. Box 1930
> Albany, NY 12201

If you have a representative, your representative should appear at the hearing site on the date and time specified with written authorization to represent you and documents you wish the Hearing Officer to see. Your representative will have a chance to examine the agency file and to question the agency representative and any witnesses.

---

Should you have any questions regarding the above procedures, please call the Office at 1-800-342-3334.

Sincerely,

Greg S Harrington, Fair Hearings Specialist 3
Office of Administrative Hearings

GSH:GSH



**NEW YORK** STATE OF OPPORTUNITY. | # Office of Temporary and Disability Assistance

**ANDREW M. CUOMO**
Governor

**MICHAEL P. HEIN**
Commissioner

**BARBARA C. GUINN**
Executive Deputy Commissioner

May 12, 2020

Mr. Towaki Komatsu
802 Fairmount Place, Apt. #4-B
Bronx, NY  10460

Re: Fair Hearing #8148335P

Dear Mr. Komatsu:

This is in reference to your recent fair hearing request to review a determination by the New York City Human Resources Administration pertaining to a possible discontinuance of Public Assistance benefits.

Please be advised that due to a prior incident at 14 Boerum Place, you will not be allowed to return to that office for the above-referenced hearing.  Accordingly, we will schedule a telephone hearing on your behalf.

You will soon receive a Notice of Scheduling telling you the date and time of your telephone hearing.  If you have a morning appointment, you must be available at your telephone, (347) 872-1205, from 9:00 a.m. to 12:00 noon Eastern Time to accept a call from the Hearing Officer.  If you have an afternoon appointment, you must be available at your telephone from 1:00 p.m. to 5:00 p.m. Eastern Time to accept a call from the Hearing Officer.  You will be able to hear the agency's presentation over the telephone and you (as well as your representative, if any) will have a chance to question the agency representative and any witnesses.  You will also have a chance to tell your own side of the issue under review.

It may be helpful for you to send us any documents relevant to the issue under review in advance so that they will be available to the Hearing Officer at the hearing.  If you want to do this, the documents should be mailed within <u>three weeks</u> of receipt of this letter to the following address:

> Office of Temporary and Disability Assistance
> Office of Administrative Hearings
> P.O. Box 1930
> Albany, NY 12201

If you have a representative, your representative should appear at the hearing site on the date and time specified with written authorization to represent you and documents you wish the Hearing Officer to see.  Your representative will have a chance to examine the agency file and to question the agency representative and any witnesses.

Should you have any questions regarding the above procedures, please call the Office at 1-800-342-3334.

Sincerely,

Greg S Harrington, Fair Hearings Specialist 3
Office of Administrative Hearings

GSH:WLW



**Office of Temporary
and Disability Assistance**

October 26, 2021

Towaki Komatsu
802 Fairmount Place, Apt. # 4-B
Bronx, NY  10460

Re: Fair Hearing #8363917Z

Dear Towaki Komatsu:

This is in reference to your recent fair hearing request to review a determination by the New York City Human Resources Administration, Michael J. Handy Veterans' Service Center pertaining to an action to discontinue Public Assistance and SNAP benefits.

Please be advised that due to a prior incident at 14 Boerum Place, you will not be allowed to return to that office for the above-referenced hearing. Accordingly, we will schedule a telephone hearing on your behalf.

You will soon receive a Notice of Scheduling telling you the date and time of your telephone hearing. If you have a morning appointment, you must be available at your telephone, (347) 316-6180, from 9:00 a.m. to 1:00 p.m. Eastern Time to accept a call from the Hearing Officer. If you have an afternoon appointment, you must be available at your telephone from 1:00 p.m. to 5:00 p.m. Eastern Time to accept a call from the Hearing Officer. You will be able to hear the agency's presentation over the telephone and you (as well as your representative, if any) will have a chance to question the agency representative and any witnesses. You will also have a chance to tell your own side of the issue under review.

It may be helpful for you to send us any documents relevant to the issue under review in advance so that they will be available to the Hearing Officer at the hearing. If you want to do this, the documents should be submitted at least two business days before the hearing to the following:

Email:  appdocs@otda.ny.gov
Fax:    518-473-6735
Mail:   Office of Administrative Hearings, 40 N. Pearl St, Fl 15B, Albany NY 12243
             or
        PO Box 1930 Albany NY 12201

If you have a representative, your representative should appear at the hearing site on the date and time specified with written authorization to represent you and documents you wish the Hearing Officer to see. Your representative will have a chance to examine the agency file and to question the agency representative and any witnesses.

Should you have any questions regarding the above procedures, please call the Office at 1-800-342-3334.

Sincerely,

Greg S Harrington, Fair Hearings Specialist 3
Office of Administrative Hearings

GSH:GSH

# Exhibit B

STATE OF NEW YORK
OFFICE OF TEMPORARY AND DISABILITY ASSISTANCE

REQUEST: October 25, 2021
CASE #: ███████
CENTER #: 62
FH #: 8363917Z

---

In the Matter of the Appeal of

TOWAKI KOMATSU

from a determination by the New York City
Department of Social Services

:
:
:
:
:
:

**DISPOSITION
OF
FAIR
HEARING
REQUEST**

---

The above-named Appellant requested a fair hearing on October 25, 2021 to review the following determination(s):

| ACTION | ISSUE | NOTICE ID | NOTICE DATE |
|---|---|---|---|
| DISCONTINUANCE | FA - FAILURE TO COMPLY WITH ELIGIBILITY REQUIREMENTS | N057A93704 | -- |
| DISCONTINUANCE | FA - FAILURE TO RETURN AND/OR COMPLETE PERIODIC REPORT | N057A93704 | -- |
| ADEQUACY | FA - TELEPHONE HEARING FOR NON-HOMEBOUND APPELLANTS | -- | -- |

Upon receipt of the Appellant's hearing request, the New York State Office of Temporary and Disability Assistance, Office of Administrative Hearings, forwarded such request to the Agency for their review of the determinations in issue.  After such review, the agency has agreed to take no further action on the notice(s) in question.

Inasmuch as the Agency agreed to take no further action regarding the determination(s) listed above, all of the issues for which the Appellant requested this hearing have been resolved in the Appellant's favor.  Therefore, instead of scheduling a fair hearing, this Disposition of Fair Hearing Request, which has the same force and effect as a fair hearing decision, is being issued to all of the parties.

**Since the issue(s) above have been resolved in the Appellant's favor, a fair hearing will NOT be scheduled**.

The Agency is hereby directed to comply with its agreement to take no further action on the notice(s) in question.  Should the Agency in the future determine to implement its previous action(s), it is directed to procure and review the Appellant's complete relevant case record, to issue a new Notice of Intent and to produce the required case record at any subsequent fair hearing.

If it has not already done so, the Agency should immediately take action to restore any assistance and benefits lost by the Appellant as a result of the Agency's actions.

By: NYS OTDA - Office of Administrative Hearings  Dated: 10/27/2021

*Nigel Minker*

B1



**Date:** 12/09/2021
**Case Name:** TOWAKI KOMATSU
**Case Number:** ███████████
**Case Category:** Cash Assistance (SNNC)
**Next Recertification Due:** 04/28/2022

## Statement of Benefits

## Household

| Case Member | CA Status | SNAP Status | MA Status |
|---|---|---|---|
| TOWAKI KOMATSU ████████ | Active | Active | Active |

Note: Medicaid <u>only</u> cases are not available on ACCESS HRA. Call the HRA Medicaid helpline at 1(888) 692-6116 to check your case status or request a budget letter.

## Benefit Payments

| Payment Date | Amount | Benefit Type | Status | Paid To | Payment Period |
|---|---|---|---|---|---|
| 12/07/2021 | $86.93 | Regular Cash Assistance Benefit | Payment Made | EBT | 12/08/2021 - 12/22/2021 |
| 12/07/2021 | $250.00 | Regular SNAP/Food Stamp Benefit | Payment Made | EBT | 12/01/2021 - 12/31/2021 |
| 11/23/2021 | $95.00 | SNAP Payment for Previous Months | Payment Made | EBT | 11/01/2021 - 11/30/2021 |
| 11/22/2021 | $86.93 | Regular Cash Assistance Benefit | Payment Made | EBT | 11/23/2021 - 12/07/2021 |
| 11/08/2021 | $86.93 | Regular Cash Assistance Benefit | Payment Made | EBT | 11/08/2021 - 11/22/2021 |
| 11/08/2021 | $250.00 | Regular SNAP/Food Stamp Benefit | Payment Made | EBT | 11/01/2021 - 11/30/2021 |
| 11/02/2021 | $52.16 | Final Benefit (pro-rated) | Payment Made | EBT | 10/30/2021 - 11/07/2021 |
| 10/28/2021 | $52.16 | Extra Cash Assistance Benefit (Current Month) | Payment Made | EBT | 10/23/2021 - 11/07/2021 |
| 10/26/2021 | $95.00 | SNAP Payment for Previous Months | Payment Made | EBT | 10/01/2021 - 10/31/2021 |
| 10/22/2021 | $34.77 | Cash Assistance Benefit | Payment Made | EBT | 10/23/2021 - 10/29/2021 |
| 10/22/2021 | $86.93 | Regular Cash Assistance Benefit | Cancelled | EBT | 10/23/2021 - 11/07/2021 |
| 10/07/2021 | $86.93 | Regular Cash Assistance Benefit | Payment Made | EBT | 10/08/2021 - 10/22/2021 |

| Payment Date | Amount | Benefit Type | Status | Paid To | Payment Period |
|---|---|---|---|---|---|
| 10/07/2021 | $250.00 | Regular SNAP/Food Stamp Benefit | Payment Made | EBT | 10/01/2021 - 10/31/2021 |
| 09/24/2021 | $95.00 | SNAP Payment for Previous Months | Payment Made | EBT | 09/01/2021 - 09/30/2021 |
| 09/22/2021 | $86.93 | Regular Cash Assistance Benefit | Payment Made | EBT | 09/23/2021 - 10/07/2021 |
| 09/08/2021 | $86.93 | Regular Cash Assistance Benefit | Payment Made | EBT | 09/08/2021 - 09/22/2021 |
| 09/08/2021 | $234.00 | Regular SNAP/Food Stamp Benefit | Payment Made | EBT | 09/01/2021 - 09/30/2021 |
| 08/24/2021 | $95.00 | SNAP Payment for Previous Months | Payment Made | EBT | 08/01/2021 - 08/31/2021 |
| 08/21/2021 | $86.93 | Regular Cash Assistance Benefit | Payment Made | EBT | 08/23/2021 - 09/07/2021 |
| 08/07/2021 | $86.93 | Regular Cash Assistance Benefit | Payment Made | EBT | 08/08/2021 - 08/22/2021 |
| 08/07/2021 | $234.00 | Regular SNAP/Food Stamp Benefit | Payment Made | EBT | 08/01/2021 - 08/31/2021 |
| 07/27/2021 | $95.00 | SNAP Payment for Previous Months | Payment Made | EBT | 07/01/2021 - 07/31/2021 |
| 07/22/2021 | $86.93 | Regular Cash Assistance Benefit | Payment Made | EBT | 07/23/2021 - 08/07/2021 |
| 07/08/2021 | $86.93 | Regular Cash Assistance Benefit | Payment Made | EBT | 07/08/2021 - 07/22/2021 |
| 07/08/2021 | $234.00 | Regular SNAP/Food Stamp Benefit | Payment Made | EBT | 07/01/2021 - 07/31/2021 |
| 06/24/2021 | $95.00 | SNAP Payment for Previous Months | Payment Made | EBT | 06/01/2021 - 06/30/2021 |
| 06/22/2021 | $86.93 | Regular Cash Assistance Benefit | Payment Made | EBT | 06/23/2021 - 07/07/2021 |
| 06/07/2021 | $86.93 | Regular Cash Assistance Benefit | Payment Made | EBT | 06/08/2021 - 06/22/2021 |
| 06/07/2021 | $234.00 | Regular SNAP/Food Stamp Benefit | Payment Made | EBT | 06/01/2021 - 06/30/2021 |
| 05/25/2021 | $95.00 | SNAP Payment for Previous Months | Payment Made | EBT | 05/01/2021 - 05/31/2021 |
| 05/22/2021 | $86.93 | Regular Cash Assistance Benefit | Payment Made | EBT | 05/23/2021 - 06/07/2021 |
| 05/07/2021 | $86.93 | Regular Cash Assistance Benefit | Payment Made | EBT | 05/08/2021 - 05/22/2021 |
| 05/07/2021 | $234.00 | Regular SNAP/Food Stamp Benefit | Payment Made | EBT | 05/01/2021 - 05/31/2021 |
| 04/24/2021 | $95.00 | SNAP Payment for Previous Months | Payment Made | EBT | 04/01/2021 - 04/30/2021 |
| 04/22/2021 | $86.93 | Regular Cash Assistance Benefit | Payment Made | EBT | 04/23/2021 - 05/07/2021 |
| 04/07/2021 | $86.93 | Regular Cash Assistance Benefit | Payment Made | EBT | 04/08/2021 - 04/22/2021 |

| Payment Date | Amount | Benefit Type | Status | Paid To | Payment Period |
|---|---|---|---|---|---|
| 04/07/2021 | $234.00 | Regular SNAP/Food Stamp Benefit | Payment Made | EBT | 04/01/2021 - 04/30/2021 |
| 03/22/2021 | $86.93 | Regular Cash Assistance Benefit | Payment Made | EBT | 03/23/2021 - 04/07/2021 |
| 03/06/2021 | $86.93 | Regular Cash Assistance Benefit | Payment Made | EBT | 03/08/2021 - 03/22/2021 |
| 03/06/2021 | $234.00 | Regular SNAP/Food Stamp Benefit | Payment Made | EBT | 03/01/2021 - 03/31/2021 |
| 02/22/2021 | $86.93 | Regular Cash Assistance Benefit | Payment Made | EBT | 02/23/2021 - 03/07/2021 |
| 02/06/2021 | $86.93 | Regular Cash Assistance Benefit | Payment Made | EBT | 02/08/2021 - 02/22/2021 |
| 02/06/2021 | $234.00 | Regular SNAP/Food Stamp Benefit | Payment Made | EBT | 02/01/2021 - 02/28/2021 |
| 01/26/2021 | $30.00 | SNAP Payment for Previous Months | Payment Made | EBT | 01/01/2021 - 01/31/2021 |
| 01/23/2021 | $86.93 | Regular Cash Assistance Benefit | Payment Made | EBT | 01/23/2021 - 02/07/2021 |
| 01/08/2021 | $86.93 | Regular Cash Assistance Benefit | Payment Made | EBT | 01/08/2021 - 01/22/2021 |
| 12/22/2020 | $86.93 | Regular Cash Assistance Benefit | Payment Made | EBT | 12/23/2020 - 01/07/2021 |

**Legend:**
- SNAP - Supplemental Nutrition Assitance Program
- CA - Cash Assistance
- MA - Medicaid

B2

Case 1:21-cv-11115-LTS  Document 2  Filed 12/27/21  Page 147 of 183

## RE: [EXTERNAL] Demand for immediate fair hearing

From: Scalia, Ann Marie (scaliaa@dss.nyc.gov)

To:  towaki_komatsu@yahoo.com

Cc:  aaronsonn@dss.nyc.gov

Date: Monday, October 25, 2021, 03:22 PM EDT

Hi Mr. Komatsu

We are looking into your case and will get back to you as soon as possible.

---

**From:** Towaki Komatsu <towaki_komatsu@yahoo.com>

**Sent:** Monday, October 25, 2021 9:37 AM
**To:** Marks, Nigel A (OTDA) <nigel.marks@otda.ny.gov>
**Cc:** Spitzberg, Samuel L (OTDA) <samuel.spitzberg@otda.ny.gov>; Scalia, Ann Marie <scaliaa@dss.nyc.gov>;
Calhoun, Martha <calhounm@dss.nyc.gov>; Banks, Steven <bankss@dss.nyc.gov>; Rock, Krista (OTDA)
<krista.rock@otda.ny.gov>
**Subject:** [EXTERNAL] Demand for immediate fair hearing

**CAUTION:** This email originated from outside of the organization. Do not click links or open attachments unless
you recognize the sender and know the content is safe.  Forward suspect email to phish@cyber.nyc.gov as an
attachment (Click the More button, then forward as attachment).
 Mr. Marks,

I'm ordering you to cause me to be immediately provided a fair hearing within 24 hours in response to the fact that
HRA illegally did the following without providing me prior notice in flagrant violation of my due process rights:

a) It reduced my cash assistance benefit to $36 and change for the benefit that I received on Friday.

The following shows an e-mail that Ann Marie Scalia of HRA sent to me on 10/6/21 in which she committed wire
fraud by fraudulently leading me to believe that HR would properly process the recertification form for benefits to
prevent HRA from taking adverse actions against me that would affect the benefits that I receive from it. That wire
fraud has clearly caused me a financial injury. It's the latest act of wire and mail fraud by HRA that also constitutes
sufficient predicate acts to enable me to pursue civil RICO claims.  Since OTDA has acted in concert with HRA in the
past to jointly, pretextually, and illegally deprive me of government benefits through the OTDA fair hearing processes,
I'm seriously evaluating my options to pursue civil RICO claims against both HRA and OTDA personnel immediately.

This e-mail is mainly being sent as a formality to establish that I noticed you, Mr. Spitzberg, Ms. Rock, Ms. Calhoun,
Mr. Banks, and Ms. Scalia of the fact that HRA yet again violated my rights in regards to benefits that I receive from

B3

it.


Also, I received a notice (notice #: N057A93704) dated 10/19/21 in the mail on Friday from HRA that indicates that it will terminate my benefit as of 10/30/21 on the grounds that it didn't received the recertification forms that I e-mailed to Ms. Scalia on 10/4/21 after I received that paperwork from HRA in the mail late and problems with HRA's web site prevented me from submitting that recertification information by using its web site.


Immediately order HRA to fix my cash assistance to restore the amount that I can use today to the full amount of $86 and change that I should have received on Friday.


From,


Towaki Komatsu



**From:** "Scalia, Ann Marie" <scaliaa@dss.nyc.gov>

**Subject: RE: [WARNING: ATTACHMENT(S) MAY CONTAIN MALWARE]Re: [EXTERNAL] Recertification problem**

**Date:** October 6, 2021 at 8:41:42 AM EDT

**To:** Towaki Komatsu <towaki_komatsu@yahoo.com>

**Cc:** "Calhoun, Martha" <calhounm@dss.nyc.gov>


We will make sure the Mailer gets processed.

-----Original Message-----
From: Towaki Komatsu <towaki_komatsu@yahoo.com>
Sent: Monday, October 04, 2021 9:20 PM
To: Scalia, Ann Marie <scaliaa@dss.nyc.gov>
Cc: Calhoun, Martha <calhounm@dss.nyc.gov>
Subject: [WARNING: ATTACHMENT(S) MAY CONTAIN MALWARE]Re: [EXTERNAL] Recertification problem

Have HRA's application fixed.

I just tried using it several times and keep getting error messages on my cell phone while wasting time by trying to use that garbage application.

Attached is the completed form.

## Re: Confirmation from HRA today that you again committed wire fraud

From: Towaki Komatsu (towaki_komatsu@yahoo.com)

To: scaliaa@dss.nyc.gov

Cc: calhounm@dss.nyc.gov; banksst@dss.nyc.gov

Date: Friday, October 22, 2021, 07:51 PM EDT

I learned today that HRA illegally yet again reduced my cash assistance benefit without prior notice.

HRA illegally reduced the amount that I was scheduled to receive today for cash assistance from its usual amount of $86 and change to $36 and change without informing of its intent to do so beforehand in flagrant violation of my due process. Fix that within 24 hours completely to make up the difference.

Also, I received mail from HRA in which HRA indicated that it's ending my public assistance on 10/30/21. This confirms that there remarks that you made in your e-mail to me on 10/6/21 were a lie. Fix that immediately too.

I am so fucking tired of HRA's BS. This horseshit is absolutely the last thing I need to be grappling with in the wake of my father's passing.

There is a public resource fair meeting next week at which I can show the e-mail that you sent to me on 8/1/17 with the one you sent me on 10/6/21 with the mail I got from HRA to prove to everyone there that HRA commits wire fraud.

> On Oct 6, 2021, at 8:41 AM, Scalia, Ann Marie <scaliaa@dss.nyc.gov> wrote:
>
> We will make sure the Mailer gets processed.
>
> -----Original Message-----
> From: Towaki Komatsu <towaki_komatsu@yahoo.com>
> Sent: Monday, October 04, 2021 9:20 PM
> To: Scalia, Ann Marie <scaliaa@dss.nyc.gov>
> Cc: Calhoun, Martha <calhounm@dss.nyc.gov>
> Subject: [WARNING: ATTACHMENT(S) MAY CONTAIN MALWARE]Re: [EXTERNAL] Recertification problem
>
> Have HRA's application fixed.
>
> I just tried using it several times and keep getting error messages on my cell phone while wasting time by trying to use that garbage application.
>
> Attached is the completed form.
>

B4

## Re: Demand for records

From:  Towaki Komatsu (towaki_komatsu@yahoo.com)

To:  banksst@dss.nyc.gov; scaliaa@dss.nyc.gov

Cc:  calhounm@dss.nyc.gov; krista.rock@otda.ny.gov; Nigel.Marks@otda.ny.gov; samuel.spitzberg@otda.ny.gov

Date:  Saturday, December 5, 2020, 03:16 PM EST

Mr. Banks,

18 NYCRR §358-3.7 explicitly confirms that I have rights that include the following:

1.    To have the New York City Resources Administration ("HRA"), New York City Department of Social Services ("DSS"), and New York City Department of Homeless Services ("DHS") provide me copies of any additional documents for free at a reasonable time prior to fair hearings that the New York State Office of Temporary and Disability Assistance ("OTDA") conducts between HRA and I that I order HRA to provide to me to facilitate my ability to prepare for such fair hearings. 18 NYCRR §358-3.7(b)(2) confirms this.

2.    To have HRA provide me copies of all documents for free at a reasonable time prior to fair hearings that OTDA conducts between HRA and I that HRA will thereafter present in support of its claims during such fair hearings. 18 NYCRR §358-3.7(b)(1) confirms this.

Also, _Cityspec, Inc. v. Smith_, 617 F. Supp. 2d 161 (E.D.N.Y. 2009) includes the following controlling findings of law:

1.    When the government obstructs an individual's effort to seek judicial redress, this First Amendment rights are violated.

2.    Protected First Amendment rights include the right to seek administrative and judicial relief and complain to public officials.

3.    The First Amendment protects the right of access to the courts.

On 8/1/17, Ann Marie Scalia issued me a binding and fully-enforceable agreement via e-mail in which she stated the following at the end of it:

"We will continue to try to address your concerns and assist you in any way possible."

No disclaimer, caveat, nor qualifying remark exist in that agreement and no disclaimer, caveat, nor qualifying remark exist in the e-mail message that she sent to me on 8/1/17 that included that agreement.

This means that controlling findings that were issued in both _The Carlton Group, Ltd. v. Mirabella SG SpA_, No. 16 Civ. 6649 (LGS) (S.D.N.Y. July 19, 2018) and _Forcelli v. Gelco Corp._, 109 A.D.3d 244, 972 N.Y.S.2d 570 (App. Div. 2013) confirm that the agreement that Ms. Scalia issued to me on 8/1/17 on her behalf and that of HRA's to which you're also legally-bound was and remains entirely binding and fully-enforceable.

In the ongoing case of _Komatsu v. City of New York_, No. 18-cv-3698 (LGS)(GWG)(S.D.N.Y.), I currently have a former General Counsel of HRA (Gabriel Gorenstein) assigned to that case as a U.S. Magistrate Judge and the author of _The Carlton Group, Ltd. v. Mirabella SG SpA_ as the U.S. District Judge assigned to _Komatsu v. City of New York_.

B5

This is relevant partly because if you and others at HRA continue to illegally refuse to immediately provide me discovery materials for OTDA fair hearings, I can immediately submit a request to them and then to the U.S. Court of Appeals for the Second Circuit to compel you and HRA to immediately and fully comply. In fact, it's likely that I will pursue that route by the end of today.

Yesterday, I received the attached from OTDA in the mail in which it informed me that it will schedule a fair hearing between HRA and I about storage matters.

However, OTDA personnel have repeatedly lied to me and are continuing to illegally prevent me from having fair hearings in-person in its offices in Brooklyn that I intended to lawfully discuss with you partly **a)** on 4/27/17 during the public town hall meeting that you conducted with members of the public and others in Long Island City in Queens and **b)** on 5/23/17 during the public resource fair meeting that you conducted with members of the public and others inside of the Veterans Memorial Hall chamber inside of the Bronx Supreme Court.

OTDA is required by one of its own rules that states the following to conduct fair hearings within 30 days of requests for them:

> "When a hearing is requested pursuant to this Chapter, Section G, the hearing will be held within 30 days of the request, unless delayed by, or adjourned at the request of, the appellant."

That rule requires OTDA to conduct a fair hearing by 12/23/20 about storage matters between HRA and I.

As a result, I'm ordering you and HRA to immediately provide me all of the following materials by 12/9/20:

1. All documents that have been in the possession of the personnel of HRA, DSS, and DHS in unedited form and without redactions that are about the following matters:

a.    The actual apartment lease agreement that I signed with Lisa Lombardi of Urban Pathways, Inc. ("Urban") on 2/16/16 in DHS' offices located at 33 Beaver Street in Manhattan to be issued possession of apartment 4C with no roommate and in its entirety that is located in the building in which I reside. This includes all communications in unedited and unredacted form that all personnel of HRA, DHS, and DSS have had about that lease agreement.

b.    My visit to DHS at 33 Beaver Street in Manhattan on 2/16/16 that is to partly include the identifies of everyone who was in the small conference room with Ms. Lombardi and I when I signed the apartment lease agreement with her for apartment 4C.

c.    My visit to DHS at 33 Beaver Street in Manhattan on 3/10/16 that is to partly include the identifies of members of the Ombudsman office that I then met with as I discussed the fact that I had just learned that I had fallen victim to an illegal bait-and-switch fraud and forgery concerning the apartment lease agreement that I signed on 2/16/16 with Ms. Lombardi.

d.    The entirely invalid and fraudulent lease agreement that I never signed and was issued to me on 3/7/16 by Urban's personnel.

e.    The chain of custody that copies of the apartment lease agreement that I signed with Ms. Lombardi on 2/16/16 have had within HRA, DHS, and DSS from the moment that I signed that lease on 2/16/16 to the present.

f.

Detailed information about the matters listed right after the screenshot that appears next that is from an evidence packet I received that is comprised of some of HRA's records about me:

a) Exactly why did someone named Kristin Benjamin-Solis record information about me on 2/18/16 in which she expressed that a correction to an apartment number associated with me was made in records that HRA, DHS, or DSS maintained about me?

b) What information did HRA, DHS, and DSS have about where I resided **a)** immediately prior to 2/16/16 and **b)** immediately prior to Ms. Benjamin-Solis having recorded on 2/18/16 that a correction to an apartment number associated with me was made?

c) Who are all of the people who were involved in having a correction made to an apartment number associated with me that Ms. Benjamin-Solis reported on 2/18/16 and who did all of those people then work for?

d) Who directed the correction to an apartment number associated with me to be made that Ms. Benjamin-Solis reported on 2/18/16?

e) Exactly how was the correction to an apartment number associated with me made that Ms. Benjamin-Solis reported on 2/18/16?

f) What discussions occurred and what plans were made to have a correction made to an apartment number associated with me that Ms. Benjamin-Solis reported on 2/18/16, who was involved in those discussions and plans, when did they occur, and to what extent was information about them recorded?

g) Which personnel of HRA, DHS, and DSS have known that a correction to an apartment number associated with me was made that Ms. Benjamin-Solis reported on 2/18/16 and when and how were such people first apprised about that?

h) After personnel of HRA, DHS, and DSS were first apprised about a correction to an apartment number associated with me having been made that Ms. Benjamin-Solis reported on 2/18/16, exactly how and when did they respond to that information?

i) Why I wasn't I notified about a correction that was to be made to an apartment number associated with me in accordance with my constitutional due process rights before Ms. Benjamin-Solis reported information on 2/18/16 about that correction having been made?

j) Right before Ms. Benjamin-Solis recorded on 2/18/16 that a correction was made to an apartment number associated with me, what information did HRA, DSS, and DHS have about the specific street address and apartment number associated with me with respect to where I **a)** then resided and **b)** would be residing in the building in which I reside?

l) Exactly how did Ms. Benjamin-Solis know on 2/18/16 that a correction was made to an apartment number associated with me?

m) What sources of information did those who made a correction to an apartment number associated with me that Ms. Ms. Benjamin-Solis recorded on 2/18/16 use to make that correction?

n) How exactly were all of the people who were involved in having a correction made to an apartment number associated with me that Ms. Benjamin-Solis reported on 2/18/16 involved in that?

B5

g.    All communications that personnel of HRA, DSS, and DHS have had about me since 11/1/15. This partly includes all communications about me that such personnel have had with Urban and everyone who has worked for the New York City Mayor's Office, NYPD, and Community Affairs Unit of the New York City Mayor's Office since then. This includes an e-mail message that was provided to me with redactions applied to it that was sent on 4/10/17 at 5:24 pm to HRA Commissioner Steven Banks while Ms. Lucas then worked for HRA as a Special Assistant. That e-mail message includes the following parts of a sentence in which a redaction was applied between those parts while that sentence was about the fair hearing that OTDA conducted on 4/11/17 between HRA and I about storage matters:

a) "In addition to his claims for legal services, he has also made a claim for reimbursement for three months in 2016"

b)  "His claim is subject to a fair hearing before the state tomorrow."

This demand for documents from HRA, DSS, and DHS also includes all communications that their personnel had with Jaclyn Rothenberg and Jessica Ramos while both of them worked for the New York City Mayor's Office in 2017. E-mail messages that Ms. Ramos and Ms. Rothenberg sent in June of 2017 that I received with redactions applied to them confirm that they illegally had access to confidential information in June of 2017 that was about litigation that I commenced against HRA that was assigned to OTDA and the New York State Supreme Court in Manhattan in violation of New York State Social Services Law §136(2), 18 NYCRR §357, and a sealing order that was imposed on the lawsuit that I commenced against HRA in January of 2017 that was assigned to the New York State Supreme Court in Manhattan and assigned the index number of 100054/2017. Ms. Ramos illegally apprised a whistleblower news censor in journalism named Erin Durkin about a storage manner dispute that I was engaged in against HRA. Ms. Ramos did so in an e-mail message that she sent to Ms. Durkin on 6/28/17 at 5:42 pm in spite of the fact that Ms. Durkin never inquired about that matter.

h.    All information that has been in the possession of HRA, DSS, and DHS that concerns the extent to which they have been and continue to be partly responsible for providing proper oversight of how Urban operates as the landlord of the building in which I reside.

i.    All information that has been in the possession of HRA, DSS, and DHS that concerns the complaints that I have reported to them directly and otherwise against Urban and them about my having been illegally subjected to a bait-and-switch fraud and forgery concerning the apartment lease agreement that I signed on 2/16/16 with Urban's Lisa Lombardi.

j.    All information that has been in the possession of HRA, DSS, and DHS that concerns how Jeffrey Mosczyc of HRA illegally submitted an ex-parte adjournment application in the lawsuit that I commenced against HRA that was assigned the index number of 100054/2017 ("my HRA lawsuit") that I referenced earlier to try to have the oral arguments hearing in it to be rescheduled from its date of 4/12/17 that would have otherwise addressed storage matters on that date and would have occurred just 1 day after my 4/11/17 OTDA fair hearing about identical matters.

j.    All information that has been in the possession of HRA, DSS, and DHS that credibly substantiates claims that have been made by Jeffrey Mosczyc, Marin Gerber, Steven Banks, and Ann Marie Scalia in which all of them have insisted that the specific apartment in which I reside has been "permanent housing" for me instead of temporary shelter that OTDA illegally never made the personnel of HRA, DHS, and DSS substantiate.

j.    All information that has been in the possession of HRA, DSS, and DHS that clearly confirms that their personnel are legally allowed to define what is meant by "permanent housing" in a manner that conflicts with how it is defined by 24 CFR §578.3. 24 CFR §578.3 requires people to be in possession of a valid apartment lease agreement to be considered to reside in "permanent housing".

As used in this e-mail message, "documents" refers to all correspondence, audio recordings, video recordings, photographs, screenshots, telephone call records, faxes, encrypted communications, transcripts, memos,

notes, database entries, e-mail messages, text messages, Internet social media postings

From,

Towaki Komatsu

 OTDA notice received on 12-4-20 about upcoming hearing about storage matters in response to your 11-23-20
request.pdf
1.8MB

 PastedGraphic-1.png
32.3kB

## Re: Demand for records

From: Towaki Komatsu (towaki_komatsu@yahoo.com)

To: banksst@dss.nyc.gov; scaliaa@dss.nyc.gov

Cc: calhounm@dss.nyc.gov; krista.rock@otda.ny.gov; nigel.marks@otda.ny.gov; samuel.spitzberg@otda.ny.gov

Date: Sunday, January 31, 2021, 12:08 AM EST

Mr. Banks,

OTDA is currently scheduled to conduct a fair hearing for fair hearing number 8227101K between HRA and I by telephone on 2/9/21 at 1:30 pm according to a notice that I received from OTDA that is dated 1/20/21.

I am resubmitting the demand for records that I e-mailed you and others about on 12/5/20 at 3:16 pm.

18 NYCRR §358-3.7 explicitly confirms that I have rights that include the following:

    1.     To have the New York City Resources Administration ("HRA"), New York City Department of Social Services ("DSS"), and New York City Department of Homeless Services ("DHS") provide me copies of any additional documents for free at a reasonable time prior to fair hearings that the New York State Office of Temporary and Disability Assistance ("OTDA") conducts between HRA and I that I order HRA to provide to me to facilitate my ability to prepare for such fair hearings. 18 NYCRR §358-3.7(b)(2) confirms this.

    2.     To have HRA provide me copies of all documents for free at a reasonable time prior to fair hearings that OTDA conducts between HRA and I that HRA will thereafter present in support of its claims during such fair hearings. 18 NYCRR §358-3.7(b)(1) confirms this.

Also, _Cityspec, Inc. v. Smith_, 617 F. Supp. 2d 161 (E.D.N.Y. 2009) includes the following controlling findings of law:

1.     When the government obstructs an individual's effort to seek judicial redress, this First Amendment rights are violated.

2.     Protected First Amendment rights include the right to seek administrative and judicial relief and complain to public officials.

3.     The First Amendment protects the right of access to the courts.

On 8/1/17, Ann Marie Scalia issued me a binding and fully-enforceable agreement via e-mail in which she stated the following at the end of it:

"We will continue to try to address your concerns and assist you in any way possible."

No disclaimer, caveat, nor qualifying remark exist in that agreement and no disclaimer, caveat, nor qualifying remark exist in the e-mail message that she sent to me on 8/1/17 that included that agreement.

This means that controlling findings that were issued in both _The Carlton Group, Ltd. v. Mirabella SG SpA_, No. 16 Civ. 6649 (LGS) (S.D.N.Y. July 19, 2018) and _Forcelli v. Gelco Corp._, 109 A.D.3d 244, 972 N.Y.S.2d 570 (App. Div. 2013) confirm that the agreement that Ms. Scalia issued to me on 8/1/17 on her behalf and that of HRA's to which you're also legally-bound was and remains entirely binding and fully-enforceable.

I'm ordering you and HRA to immediately provide me all of the following materials by 2/5/21:

B6

1. All documents that have been in the possession of the personnel of HRA, DSS, and DHS in unedited form and without redactions that are about the following matters:

    a.     The actual apartment lease agreement that I signed with Lisa Lombardi of Urban Pathways, Inc. ("Urban") on 2/16/16 in DHS' offices located at 33 Beaver Street in Manhattan to be issued possession of apartment 4C with no roommate and in its entirety that is located in the building in which I reside. This includes all communications in unedited and unredacted form that all personnel of HRA, DHS, and DSS have had about that lease agreement.

    b.     My visit to DHS at 33 Beaver Street in Manhattan on 2/16/16 that is to partly include the identifies of everyone who was in the small conference room with Ms. Lombardi and I when I signed the apartment lease agreement with her for apartment 4C.

    c.     My visit to DHS at 33 Beaver Street in Manhattan on 3/10/16 that is to partly include the identifies of members of the Ombudsman office that I then met with as I discussed the fact that I had just learned that I had fallen victim to an illegal bait-and-switch fraud and forgery concerning the apartment lease agreement that I signed on 2/16/16 with Ms. Lombardi.

    d.     The entirely invalid and fraudulent lease agreement that I never signed and was issued to me on 3/7/16 by Urban's personnel.

    e.     The chain of custody that copies of the apartment lease agreement that I signed with Ms. Lombardi on 2/16/16 have had within HRA, DHS, and DSS from the moment that I signed that lease on 2/16/16 to the present.

    f.     Detailed information about the matters listed right after the screenshot that appears next that is from an evidence packet I received that is comprised of some of HRA's records about me:



| 2/18/2016 | Error Correction | Benjamin-Solis,K | Correction to Aprtment number |
|-----------|------------------|------------------|-------------------------------|

    a) Exactly why did someone named Kristin Benjamin-Solis record information about me on 2/18/16 in which she expressed that a correction to an apartment number associated with me was made in records that HRA, DHS, or DSS maintained about me?

    b) What information did HRA, DHS, and DSS have about where I resided **a)** immediately prior to 2/16/16 and **b)** immediately prior to Ms. Benjamin-Solis having recorded on 2/18/16 that a correction to an apartment number associated with me was made?

    c) Who are all of the people who were involved in having a correction made to an apartment number associated with me that Ms. Benjamin-Solis reported on 2/18/16 and who did all of those people then work for?

    d) Who directed the correction to an apartment number associated with me to be made that Ms. Benjamin-Solis reported on 2/18/16?

    e) Exactly how was the correction to an apartment number associated with me made that Ms. Benjamin-Solis reported on 2/18/16?

    f) What discussions occurred and what plans were made to have a correction made to an apartment number associated with me that Ms. Benjamin-Solis reported on 2/18/16, who was involved in those discussions and plans, when did they occur, and to what extent was information about them recorded?

    g) Which personnel of HRA, DHS, and DSS have known that a correction to an apartment number associated with me was made that Ms. Benjamin-Solis reported on 2/18/16 and when and how

were such people first apprised about that?

h) After personnel of HRA, DHS, and DSS were first apprised about a correction to an apartment number associated with me having been made that Ms. Benjamin-Solis reported on 2/18/16, exactly how and when did they respond to that information?

i) Why I wasn't I notified about a correction that was to be made to an apartment number associated with me in accordance with my constitutional due process rights before Ms. Benjamin-Solis reported information on 2/18/16 about that correction having been made?

j) Right before Ms. Benjamin-Solis recorded on 2/18/16 that a correction was made to an apartment number associated with me, what information did HRA, DSS, and DHS have about the specific street address and apartment number associated with me with respect to where I **a)** then resided and **b)** would be residing in the building in which I reside?

l) Exactly how did Ms. Benjamin-Solis know on 2/18/16 that a correction was made to an apartment number associated with me?

m) What sources of information did those who made a correction to an apartment number associated with me that Ms. Ms. Benjamin-Solis recorded on 2/18/16 use to make that correction?

n) How exactly were all of the people who were involved in having a correction made to an apartment number associated with me that Ms. Benjamin-Solis reported on 2/18/16 involved in that?


g.     All communications that personnel of HRA, DSS, and DHS have had about me since 11/1/15. This partly includes all communications about me that such personnel have had with Urban and everyone who has worked for the New York City Mayor's Office, NYPD, and Community Affairs Unit of the New York City Mayor's Office since then. This includes an e-mail message that was provided to me with redactions applied to it that was sent on 4/10/17 at 5:24 pm to HRA Commissioner Steven Banks while Ms. Lucas then worked for HRA as a Special Assistant. That e-mail message includes the following parts of a sentence in which a redaction was applied between those parts while that sentence was about the fair hearing that OTDA conducted on 4/11/17 between HRA and I about storage matters:

a) "In addition to his claims for legal services, he has also made a claim for reimbursement for three months in 2016"

b) "His claim is subject to a fair hearing before the state tomorrow."


This demand for documents from HRA, DSS, and DHS also includes all communications that their personnel had with Jaclyn Rothenberg and Jessica Ramos while both of them worked for the New York City Mayor's Office in 2017. E-mail messages that Ms. Ramos and Ms. Rothenberg sent in June of 2017 that I received with redactions applied to them confirm that they illegally had access to confidential information in June of 2017 that was about litigation that I commenced against HRA that was assigned to OTDA and the New York State Supreme Court in Manhattan in violation of New York State Social Services Law §136(2), 18 NYCRR §357, and a sealing order that was imposed on the lawsuit that I commenced against HRA in January of 2017 that was assigned to the New York State Supreme Court in Manhattan and assigned the index number of 100054/2017. Ms. Ramos illegally apprised a whistleblower news censor in journalism named Erin Durkin about a storage matter dispute that I was engaged in against HRA. Ms. Ramos did so in an e-mail message that she sent to Ms. Durkin on 6/28/17 at 5:42 pm in spite of the fact that Ms. Durkin never inquired about that matter.

h.     All information that has been in the possession of HRA, DSS, and DHS that concerns the extent to which they have been and continue to be partly responsible for providing proper oversight of how Urban operates as the landlord of the building in which I reside.

i.    All information that has been in the possession of HRA, DSS, and DHS that concerns the complaints that I have reported to them directly and otherwise against Urban and them about my having been illegally subjected to a bait-and-switch fraud and forgery concerning the apartment lease agreement that I signed on 2/16/16 with Urban's Lisa Lombardi.

j.    All information that has been in the possession of HRA, DSS, and DHS that concerns how Jeffrey Mosczyc of HRA illegally submitted an ex-parte adjournment application in the lawsuit that I commenced against HRA that was assigned the index number of 100054/2017 ("my HRA lawsuit") that I referenced earlier to try to have the oral arguments hearing in it to be rescheduled from its date of 4/12/17 that would have otherwise addressed storage matters on that date and would have occurred just 1 day after my 4/11/17 OTDA fair hearing about identical matters.

j.    All information that has been in the possession of HRA, DSS, and DHS that credibly substantiates claims that have made by Jeffrey Mosczyc, Marin Gerber, Steven Banks, and Ann Marie Scalia in which all of them have insisted that the specific apartment in which I reside has been "permanent housing" for me instead of temporary shelter that OTDA illegally never made the personnel of HRA, DHS, and DSS substantiate.

j.    All information that has been in the possession of HRA, DSS, and DHS that clearly confirms that their personnel are legally allowed to define what is meant by "permanent housing" in a manner that conflicts with how it is defined by 24 CFR §578.3. 24 CFR §578.3 requires people to be in possession of a valid apartment lease agreement to be considered to reside in "permanent housing".

As used in this e-mail message, "documents" refers to all correspondence, audio recordings, video recordings, photographs, screenshots, telephone call records, faxes, encrypted communications, transcripts, memos, notes, database entries, e-mail messages, text messages, Internet social media postings

From,

Towaki Komatsu

B6

4/4

## RE: FOIL requests

From: HRA Freedom of Information Law Office (foil@hra.nyc.gov)

To: towaki_komatsu@yahoo.com

Date: Friday, July 14, 2017, 04:32 PM EDT

Dear Mr. Komatsu,

The below response to your Freedom of Information Law (FOIL) request dated July 1, 2017 was rejected by your email system due to the size of the message.

It is therefore being resent as two emails, with the first contract now being made available in four separate files.

I hope you find this arrangement workable; otherwise we can try to work something out next week.

Sincerely,

**Avraham Schmeidler** | *FOIL Assistant*
OFFICE OF LEGAL AFFAIRS
150 Greenwich Street, 38th Floor, New York, NY 10007
T: 929-221-5431
schmeidlera@hra.nyc.gov | **NYC.gov/dss**



Human Resources
Administration
Department of
Homeless Services
**Department of
Social Services**

*Together We Make a Difference for New Yorkers*

CONFIDENTIALITY NOTICE:
If you have received this electronic transmission in error, delete it without copying or forwarding it and notify the sender of the error.

**From:** HRA Freedom of Information Law Office
**Sent:** Friday, July 14, 2017 4:14 PM
**To:** 'Towaki Komatsu'
**Subject:** RE: FOIL requests

Dear Mr. Komatsu,

I write in further response to your Freedom of Information Law (FOIL) request below (dated July 1, 2017 and received July 3, 2017) as modified by your July 8, 2017 email (received July 10, 2017) seeking various items, as described below:

Regarding bids NTT Data, Inc. submitted to have contracts with HRA, and such contracts:

Six contracts and an amendment and renewal have been identified as responsive to your request. Attached please find the first of the contracts; the remaining seven documents are to be sent attached to emails to follow, due to the size of the documents. (Some of them might need to be divided into multiple files due to their size, and the limitations of our email system.) Also, confidential information not releasable under FOIL (such as personal information relating to contractor personnel, the release of which would be an unwarranted invasion of personal privacy) is being redacted from the documents prior to release. Therefore, some delay can be expected in this process, but I nonetheless expect and hope to be able to release these materials by next Friday, July 21, 2017.

The seven documents identified as responsive to this portion of your request are as follows:

An agreement between HRA and NTT dated December 10, 2013 (68 pages, 15.5 MB, attached);

An agreement between HRA and NTT dated March 7, 2014 (116 pages, 3 MB);

An agreement between HRA and NTT dated May 22, 2014 (138 pages, 4 MB);

An agreement between HRA and NTT dated June 11, 2014 (103 pages, 23 MB);

An agreement between HRA and NTT dated June 1, 2015 (82 pages, 18 MB);

A contract amendment and renewal dated August 26, 2015 (3 pages); and

An agreement between HRA and NTT dated January 27, 2017 (38 pages).

(If some of the larger files are two big for your email system, they can be rescanned at a lower resolution; alternatively, pages duplicative of the other contracts can be omitted.)

B7

Regarding bids, please be that we are still in the process of determining the availability and/or releasability of such materials (see below).

Regarding communications HRA has had about yourself:

Attached, please find records of two March 17, 2017 emails concerning yourself (other than those concerning the additional matters itemized below). Regarding additional materials responsive to this portion of your request, we are still in the process of determining the availability and/or releasability of such materials, as described further below.

Regarding Communications HRA has had about fraud committed by Urban Pathways, Inc. that you reported to HRA on and after March 16, 2016; and

Records of actions HRA took in response to your complaints against Urban Pathways, Inc.:

So far, the following four records have been  identified as responsive to your request. These records consist of:

An April 4, 2016 email chain starting with your April, 1, 2016 email to Barbara Beirne, with attachments;

An April 4, 2016 and May 20, 2016 email exchange between Patricia Birch and Paul Ligresti;

A March 17, 2017 email from Annette Holm; and

A March 17, 2017 email from Paul Ligresti, including an attachment from Patricia Birch.

Copies of these emails are being provided, attached to emails to follow. Again, information not subject to release under FOIL (in this case due to attorney client privilege and/or FOIL's deliberative process exemption) is being redacted as indicated. Also, we are still in the process of determining the availability and/or releasability of additional materials responsive to these portions of your request, as described further below.

Regarding the remaining portions of your request, seeking:

Claims NTT Data, Inc. has made to HRA since 2012 that it complies with applicable law;

B7

Records of allegations HRA personnel made about claims that you made threats against HRA's personnel; and

Communications HRA has had about an alleged assault Ronald Sullivan tried to commit on May 12 , 2016 and then committed on July 2, 2016;

As well as the remaining materials responsive to the items listed above, please be advised that we are now in the process of determining the availability and/or releasability of the records you seek. However, due to the number of requests received by this office and the resulting volume of work, some delay could be expected in the processing of your request. Nonetheless, I expect to be able to respond further regarding the availability of additional records responsive to your request on or before August 11, 2017 (within 20 business days, as per FOIL).

I hope you find this information helpful. Please feel free to call or email with any questions or concerns.

Sincerely,

**Avraham Schmeidler** | *FOIL Assistant*
OFFICE OF LEGAL AFFAIRS
150 Greenwich Street, 38th Floor, New York, NY 10007
T: 929-221-5431
schmeidlera@hra.nyc.gov | **NYC.gov/dss**



*Together We Make a Difference for New Yorkers*

CONFIDENTIALITY NOTICE:
If you have received this electronic transmission in error, delete it without copying or forwarding it and notify the sender of the error.

**From:** Towaki Komatsu [mailto:towaki_komatsu@yahoo.com]
**Sent:** Saturday, July 08, 2017 9:13 PM
**To:** HRA Freedom of Information Law Office
**Subject:** Re: FOIL requests

The following is the specific information that I demand to be provided by HRA immediately:

B7

All bids NTT Data, Inc. submitted to have contracts with the New York City Human Resources Administration ("HRA") since 2012.

All contracts NTT Data, Inc. was awarded by HRA since 2012.

All claims NTT Data, Inc. has made to HRA since 2012 that it complies with applicable law.

All communications the New York City Human Resources Administration has had about me.

All communications HRA has had about fraud committed by Urban Pathways, Inc. that I reported to HRA on and after 3/16/16.

Records that describe all actions HRA took in response to my complaints against Urban Pathways, Inc.

Records of all allegations HRA personnel made in which claims were made that I made threats against HRA's personnel as opposed to being sarcastic, exercising my first amendment rights, and continuing to express valid rage against HRA for being responsible for the concussion I sustained, theft of my iPhone on 2/21/16, supporting NTT Data, Inc. that continues to subject me to wage-theft & blacklisting, and wrongfully depriving me of access to legal assistance I asked Steven Banks for face-to-face on 3/1/16 and that he committed to getting for me on that date.

All communications HRA has had about an assault Ronald Sullivan tried to commit against me on 5/12/16 and then committed against me on 7/2/16 that caused me to sustain a head injury and abrasions on my arm on that date and a concussion within a month later with lasting post-concussive problems.

On Jul 7, 2017, at 12:20:38 PM, HRA Freedom of Information Law Office <FOIL@hra.nyc.gov> wrote:

July 7, 2017

Via Email:  towaki_komatsu@yahoo.com

FOIL Request Number:  17-286

**Re: FOIL Request – Request for NTT Data Inc. HRA bids and contracts, and communications re: Towaki Komatsu**

Dear Towaki Komatsu:

This letter acknowledges receipt of your Freedom of Information Law (FOIL) request below (dated July 1, 2017 and received July 3, 2017) seeking bids NTT Data, Inc. submitted to have contracts with HRA since 2012, contracts it was awarded by HRA since 2012, and records of communications about yourself (Towaki Komatsu).

Please be advised that we are now in the process of determining the availability and/or releasability of NTT Data Inc. bid and contract records. However, due to the number of requests received by this office and the resulting volume of work, some delay could be expected in the processing of your request. Nonetheless, we expect to be able to respond further regarding the availability of records on or before August 4, 2017 (within 20 business days, as per FOIL).

However, regarding your request for records of communications about Towaki Komatsu please be advised that certain records of communications (for example, any records relating to specific HRA clients) are confidential (or contain confidential information) and cannot be released (or would require redaction prior to release) without proper authorization, such as a duly notarized release signed by the individual or individuals whose confidential information is being released. For HRA clients, confidential information includes whether or not the individual is an HRA client. Therefore, without proper authorization, records pertaining to individual HRA client are not being reviewed. Attached, please find a form that can be used to request confidential client information. If such materials are being sought, please fill out the form (being as specific as possible regarding the records being sought) and mail or hand deliver it to: Record Access Officer / Office of Legal Affairs / Department of Social Services / 150 Greenwich Street, 38th Floor / New York, NY 10007.

Regarding non-confidential records, please be advised that as various HRA offices maintains numerous types of records, most not indexed or searchable by the names of those mentioned, a diligent search of HRA records for records about yourself would be impractical or impossible without additional specification as to which types of records are being sought. Please either use the attached form, or reply to this email with additional information on what types of records you are interested in.

Sincerely,

**Avraham Schmeidler** | *FOIL Assistant*
OFFICE OF LEGAL AFFAIRS
150 Greenwich Street, 38th Floor, New York, NY 10007
T: 929-221-5431
*schmeidlera@hra.nyc.gov* | **NYC.gov/dss**

**<image003.png>**

*Together We Make a Difference for New Yorkers*

CONFIDENTIALITY NOTICE:
If you have received this electronic transmission in error, delete it without copying or forwarding it and notify the sender of the error.

-----Original Message-----

From: Towaki Komatsu [mailto:towaki_komatsu@yahoo.com]

Sent: Saturday, July 01, 2017 9:44 PM

To: HRA Freedom of Information Law Office

Subject: Re: FOIL requests

HRA FOIL Team,

Be advised that I demand to be immediately provided full access to all bids NTT Data, Inc. submitted to have contracts with the New York City Human Resources Administration since 2012 and all contracts it was awarded by the New York City Human Resources Administration since 2012.

Additionally, I demand to be immediately provided with records of all communications that the New York City Human Resources Administration has had about me:

From,

Towaki Komatsu

<Release for Records.pdf>

 NTT 12-1-13 - 11-30-16 - 1.pdf
3.3MB

 NTT 12-1-13 - 11-30-16 - 2.pdf
5.6MB

 Frank Pira emails re Towaki Komatsu.pdf
36.9kB

B7

## Re: New FOIL request

From:   Towaki Komatsu (towaki_komatsu@yahoo.com)

To:     FOIL@hra.nyc.gov

Bcc:    gsmith@nydailynews.com

Date:   Monday, May 7, 2018, 12:20 PM EDT

HRA FOIL team,

This is Towaki Komatsu.

I am sending you this message to submit a new FOIL request for you to immediately complete.

Specifically, I demand to be provided with detailed information about precisely what change HRA personnel made to an apartment number associated with me on 2/18/16 that is reflected in the following screenshot that is from an evidence packet I received that is comprised of some of HRA's records about me. Furthermore, I demand to be immediately provided with detailed information about the basis for why HRA made this change to its records about me on 2/18/16. In other words, the following questions must be answered by HRA immediately:

1. What information did HRA have about where I resided **a)** immediately prior to 2/16/16 and **b)** immediately prior to HRA having made a change on 2/18/16 to an apartment number associated with me?

2. When HRA personnel made a change on 2/18/16 to information about an apartment number associated with me, what was the specific address that corresponded to the change that it made after it made that change?

3. Who directed HRA personnel to make this change on 2/18/16?

4. What sources of information did HRA use to make this change on 2/18/16?

5. Have the following members of HRA been aware of this change that was made on 2/18/16 and, if so, on which dates did they become aware of this change? HRA Commissioner Steven Banks, Jeffrey Mosczyc, Ann Marie Scalia, Marin Gerber, Martha Calhoun, and Jordan Dressler.

| 2/18/2016 | Error Correction | Benjamin-Solis,K | Correction to Aprtment number |
|-----------|------------------|------------------|-------------------------------|

From,

Towaki Komatsu

B8

1/1

## RE: New FOIL request

From: HRA Freedom of Information Law Office (foil@hra.nyc.gov)

To: towaki_komatsu@yahoo.com

Date: Monday, May 7, 2018, 04:46 PM EDT

**FOIL #18-260**

**Re: FOIL Request – Urban Pathways Contract**

Dear Mr. Komatsu:

This letter acknowledges receipt of your Freedom of Information Law (FOIL) request below, emailed April 28, 2018, seeking a copy of the Urban Pathways contract concerning 802 Fairmount Place residence, and documents describing HRA's responsibility to provide oversight of Urban Pathways, Inc. in relation to how it manages the 802 Fairmount Place residence.

Attached please find a copy of the contract responsive to your request, with confidential information not releasable under FOIL (consisting of possible home addresses) redacted as indicated, as release of such information could constitute an unwarranted invasion of personal privacy.

Concerning the remainder of your request, seeking documents describing the degree to which HRA has had and continues to have a legal responsibility to provide oversight of Urban Pathways, Inc. in relation to how it manages the building in which you reside and provides you with various services, as your request does not reasonably describe the records sought, it is being denied. See POL Section 89(30)(a).

Should you choose to appeal this decision, please send your written appeal to DSS/DHS' Appeal Officer, Martha Calhoun, Office of Legal Affairs, Department of Social Services, 4 World Trade Center, 150 Greenwich Street, 38th floor, New York, New York 10007, or by email at http://www1.nyc.gov/site/hra/about/foil-request.page within 30 days in accordance with POL § 89(4)(a).

Thank you for your inquiry.

Sincerely,
DSS FOIL Unit

-----Original Message-----
From: Towaki Komatsu [mailto:towaki_komatsu@yahoo.com]
Sent: Saturday, April 28, 2018 11:29 PM
To: HRA Freedom of Information Law Office
Subject: Re: New FOIL request


This is Towaki Komatsu.

B9

Immediately provide me with a copy of HRA's contracts with Urban Pathways, Inc. that concern the building in which I reside located at 802 Fairmount Place in the Bronx in addition to all documents in HRA's possession that describe the degree to which HRA has had and continues to have a legal responsibility to provide oversight of Urban Pathways, Inc. in relation to how it manages the building in which I reside and provides me with various services.

 LawDeptApproved -NAQ-UrbanPathways-VeteranHousing- w attachments - redacted.pdf
796.9kB

B9

At I.A.S. Part ___ of the Supreme
Court of New York, held in and for
the County of New York, at the
Courthouse thereof, 60 Centre Street,
New York, N.Y., on the ___ day of
_____, 2017

PRESENT: HON. _____

                    Justice of the Supreme Court

------------------------------------------------------------- X

In the Matter of the Application of

Anonymous
~~Towaki Komatsu~~,

                                        Petitioner,

        -against-

New York City Human Resources Administration,

                                        Respondent,

------------------------------------------------------------- X

**Index Number**

*100054-17*

**ORDER TO SHOW CAUSE
WITH T.R.O. IN SPECIAL
PROCEEDING**

Upon reading and filing the Verified Petition of Towaki Komatsu, sworn to on January

17, 2017, ∧the affidavit of Towaki Komatsu sworn to and upon the exhibits attached to the Petition and identified on the following sheet that

is entitled "Exhibits",

        Let the respondent show cause at I.A.S. Part _____, Room _____, of this Court,

to be held at the Courthouse, 60 Centre Street, New York, N.Y., on the ___ day of

_____, 2017, at _____ o'clock in the _____ noon or as soon as the parties

to this proceeding may be heard why an Order should not be made containing the directives and

findings expressed within **Section A** (anonymity and sealing) and **Section B** (additional relief)

that follow in the interests of judicial economy:

                    <u>**Section A (anonymity and sealing)**</u>:

1.  That the pleadings, papers, affidavits, exhibits, and evidence filed with this Court in the

above-entitled matter; the judgments, orders and decision of this Court in the above-entitled

matter; and the transcripts of hearing held in the above-captioned matter be SEALED; and

2.  That any of the aforesaid pleadings, papers, affidavits, exhibits, evidence, judgments,

orders, decisions and transcripts of hearings filed with this Court in this action be kept in the

custody of the Clerk of this County or the County Clerk at the County Courthouse for the

County of New York; and

3.  That the Clerk of this Court and the County Clerk not permit any person other than a party

or his counsel to appear herein to copy, examine, or peruse the aforesaid pleadings, papers,

affirmations, exhibits, evidence, judgments, orders, decisions, and transcripts of hearings;

and

4.  That the County Clerk enter the caption of the above-entitled proceeding in the current

minute books and indices of actions and proceedings maintained in his office under the title

of *ANONYMOUS vs. ANONYMOUS*" and it is

ORDERED that, pending the hearing of this motion, BEFORE THE JUSTICE TO BE

ASSIGNED, the Clerk of this Court, upon payment of the proper fees, be an is hereby

directed to assign an index number to this proceeding, and to accept for filing a Request

for Judicial Intervention ("RJI"), bearing the following caption, namely:

JAN 1 7 2017

BARRY R. OSTRAGER
JSC

Page 2 of 10

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

------------------------------------------------------------------X

ANONYMOUS,

                Petitioner,

     -against-

~~ANONYMOUS,~~ *New York City Human Resources Administration.*

                Respondent,

------------------------------------------------------------------X

and it is further

ORDERED that, pending the hearing of this motion, BEFORE THE JUSTICE TO BE

ASSIGNED, the Clerk of the Court is directed to restrict access to the entire file under

the above caption and index number *except* to the parties, their respective counsel and

authorized court personnel; and ~~it is~~ further *more*

ORDERED that, personal service by Petitioner of a copy of this Order to Show Cause

together with the papers upon which it is based and the Verified Petition be served upon

_____ on or before ____ day of _____, 2017.

*[handwritten margin note, left side, rotated]* AT THE EX PARTE MOTION OFFICE OF THE SUPREME COURT OF THE STATE OF NY COUNTY OF NY ON THE 12TH DAY OF JANUARY 2017

*[signature]* BARRY R. OSTRAGER JSC

S.J.C.

Page 3 of 10

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK: IAS PART 42
-----------------------------------------X
In the Matter of
ANONYMOUS

                    Petitioner/Plaintiff

                                    Index No. 100054/2017
            v
                                    DECISION, ORDER &
                                        JUDGMENT
NEW YORK CITY HUMAN RESOURCES
ADMINISTRATION

                    Respondent/Defendant.   MOT SEQ 001, 002, 003
-----------------------------------------X

NANCY M. BANNON, J.:


                  I. <u>INTRODUCTION</u>

    The petitioner/plaintiff, Towaki Komatsu (the petitioner),
applied to the respondent/defendant, New York City Human
Resources Administration (HRA), for a storage allowance in the
total sum of $3,066.69.  The HRA approved the payment of only
$984, but denied the remainder of the application.  Under
sequence 001, the petitioner seeks review that determination
pursuant to CPLR article 78, and the HRA cross-moves pursuant to
CPLR 7804(f) and 3211(a) to dismiss the petition on the ground,
inter alia, that he failed to exhaust his administrative
remedies.  Under sequence 002, the petitioner moves to compel
this court to recuse itself, for leave to amend the caption to
replace his designation as "Anonymous" with his name, and for

<div align="center">1</div>

relief in the nature of mandamus to compel the HRA to reimburse him for all of his requested storage expenses.  Under sequence 003, the petitioner again moves for relief in the nature of mandamus to compel the HRA to reimburse him for all of his requested storage expenses.

The petition/complaint also seeks money damages and/or injunctive relief against the HRA and several other municipal agencies and their employees, asserting that his personal property was stolen due to the HRA's alleged negligence in providing security in the homeless shelter in which he resided, his wages were stolen or converted by the HRA, and he was unlawfully precluded from public meetings of municipal agencies in violation of his constitutional rights.

The cross motion under sequence 001 to dismiss the petition is granted, and the petition and the proceeding are dismissed. That branch of motion sequence 002 which is for leave to amend the caption is granted, and that motion is otherwise denied.  The motion under sequence 003 is denied.  The court severs the causes of action seeking money damages and/or injunctive relief, and transfers them to a City part of this court.


II. <u>BACKGROUND</u>

The petitioner is a recipient of public assistance from the HRA. <u>See</u> 18 NYCRR part 397.  On May 26, 2016, he requested the

2

HRA to award him a storage allowance pursuant to 18 NYCRR
352.6(f), and thereupon reimburse him for storage expenses that
he incurred to maintain his belongings while he was allegedly
residing in a temporary shelter.  On May 27, 2016, the HRA denied
the petitioner's request, determining that he was required to
obtain three estimates for moving expenses.  The petitioner
thereafter sought a fair hearing before the Office of Temporary
and Disability Assistance (OTDA) of the New York State Department
of Social Services in connection with the HRA's denial.  After
the OTDA conducted a fair hearing, it rendered a decision dated
September 15, 2016, reversing the HRA's denial dated May 27,
2016, upon concluding that the HRA impermissibly determined that
it needed estimates for moving services, when the petitioner had
made only a simple request for storage expenses.

Crucially, however, the OTDA did not direct the HRA to
approve the petitioner's request for storage expenses or
immediately pay all of the storage fees that he sought.  Rather,
it remitted the matter to the HRA to properly apply the
provisions of 18 NYCRR 352.6, and thereafter "make a
determination as to the [petitioner]'s eligibility for Storage of
Possession expenses from May 2016 to present time."  The OTDA
ordered that "[i]n the event that the [petitioner] is found to be
eligible for Storage of Possession expenses, the [HRA] is
directed to make payments retroactive to the date of request."

(emphasis added). It further directed the HRA to "advise the [petitioner] of any additional documents which are required to make this determination."

On September 27, 2016, the HRA, in accordance with the OTDA's directive, requested in writing that the petitioner provide it with a "storage letter" from the petitioner's storage facility covering the period from May through October 2016, as well as the petitioner's lease from his current landlord, which he had entered into on February 16, 2016. The petitioner did not respond to that request.

On September 28, 2016, the HRA issued a check in the sum of $984 to the facility in which the petitioner had stored his belongings, ostensibly covering the period from May through September 2016. In a fair-hearing compliance report and determination dated October 6, 2016, the HRA, in accordance with the OTDA's directive, denied the petitioner's request to be reimbursed the sum of $3,066.69 for storage expenses from October 22, 2015, through August 19, 2016. In that determination, the HRA indicated that, inasmuch as the petitioner did not provide the documentation requested in the letter dated September 27, 2016, it was "unable to determine" if the petitioner was "eligible for the benefits that were the subject of [the] Fair Hearing." On October 19, 2016, the OTDA sent the petitioner a letter confirming its receipt of a report from the HRA, and

4

concluded that the HRA "has taken appropriate action to comply with the [fair hearing] decision's directives."

The petitioner did not seek a fair hearing before the OTDA in connection with the HRA's determination dated October 6, 2016.

On January 17, 2017, the petitioner commenced this hybrid proceeding and action, naming only the HRA as a respondent/ defendant.  To the extent that it seeks relief pursuant to CPLR article 78, the petition/complaint seeks review only of the HRA's determination dated October 6, 2016.

While this hybrid proceeding and action was pending before this court, the HRA reopened its administrative review of the petitioner's case file, and determined that, as of February 2016, he was no longer residing in a temporary shelter, but resided in permanent housing.  It thus issued a new notice of determination on March 28, 2017, concluding that the petitioner was not entitled to any storage allowance after February 2016, but did not seek reimbursement of the $984 it had already awarded.  There is nothing in the parties' submissions indicating that the petitioner sought a fair hearing before the OTDA in connection with the new HRA determination dated March 28, 2017.


III. <u>DISCUSSION</u>

A.   <u>EXHAUSTION OF ADMINISTRATIVE REMEDIES</u> (SEQ 001).

Where, as here, a statute, ordinance, or regulation permits

5

an administrative appeal, and a party has an opportunity to pursue it, he or she must exhaust all administrative remedies (see Matter of Carter v State of New York, 95 NY2d 267 [2000]), and judicial review of the initial administrative determination is foreclosed.  See Matter of Harrell v New York City Housing Auth., 300 AD2d 54 (1st Dept. 2002).  18 NYCRR 358-3.1(a) affords the petitioner the right to challenge HRA's determinations dated October 6, 2016, and March 28, 2017, by requesting a fair hearing before the ODTA in accordance with 18 NYCRR 358-3.5(a).  Since the submissions do not reflect that the petitioner requested a fair hearing in connection with either of those determinations, so much of the petition as seeks to review those determinations must be dismissed, without prejudice, for failure to exhaust administrative remedies.

Contrary to the petitioner's contention, the HRA, when acting in its governmental capacity, is not estopped from reconsidering an administrative determination.  See Matter of Gonzalez v New York City Hous. Auth., 148 AD3d 505 (1st Dept. 2017).  Hence, its partial payment of a storage award is not a binding determination that the petitioner was eligible therefor, and the HRA was permitted to reopen its own proceedings in order to further review the petitioner's eligibility.  See Matter of Adams v Joy, 48 AD3d 914 (3rd Dept. 2008).  The court also rejects the petitioner's contention that the HRA and the OTDA are

6

barred by the doctrine of res judicata from reconsidering a prior determination.  See Matter of Ireland v Zoning Bd. of Appeals of Town of Queensbury, 195 AD2d 155 (3rd Dept. 1994).

B. RECUSAL (SEQ 002)

The court discerns no basis upon which to recuse itself in this matter.  See Mehulic v New York Downtown Hosp., 140 AD3d 417 (1st Dept. 2016); Judiciary Law § 14.

C. AMENDMENT OF CAPTION (SEQ 002)

A party will be generally permitted to proceed anonymously upon alleging that the matter implicates "a privacy right so substantial as to outweigh the customary and constitutionally embedded presumption of openness in judicial proceedings." "J. Doe No. 1" v CBS Broadcasting Inc., 24 AD3d 215, 215 (1st Dept. 2005).  The circumstances presented here are not so "drastic" as to warrant maintaining the secrecy of the petitioner's identity (id.), and the petitioner himself requests the court to permit him to reveal his identity in the caption.  Moreover, leave to amend a caption to reflect the correct name of a party should be freely granted. See Clarke v Laidlaw Tr., Inc., 125 AD3d 920 (2nd Dept. 2015).  The court thus grants that branch of the motion under sequence 002 which is for leave to amend the caption.

7

D.  <u>MANDAMUS TO COMPEL</u> (SEQ 002 and 003)

In motion sequences 002 and 003, the petitioner moves for relief in the nature of mandamus to compel the HRA to reimburse him for the entirety of the $3,066.69 in storage expenses that he seeks.  <u>See</u> CPLR 7803(1).  This request for relief articulates a cause of action distinct from the request for relief set forth in the petition, which seeks to review the HRA's determination on the ground that it is arbitrary and capricious.  <u>See</u> CPLR 7803(3).  Thus, in the absence of a proper motion pursuant to CPLR 3025(b) for leave to amend the petition/complaint to add a claim under CPLR 7803(1), the allegations are not properly before the court.  <u>See</u> <u>State Farm Mut. Auto. Ins. Co. v Clouden</u>, 50 AD3d 1552 (4th Dept. 2008).

Nonetheless, "[a] CPLR article 78 proceeding seeking mandamus to compel the performance of a specific duty applies only to acts that are ministerial in nature and not those that involve the exercise of discretion."  <u>Matter of Maron v Silver</u>, 14 NY3d 230, 249 (2010).  "Mandamus is available . . . only to enforce a clear legal right where the public official has failed to perform a duty enjoined by law."  <u>New York Civil Liberties Union v State of New York</u>, 4 NY3d 175, 185 (2005); see CPLR 7803(1).  Since the determination of eligibility for a storage allowance is discretionary (<u>see</u> <u>Matter of Marquart v Perales</u>, 142 AD2d 678 [2[nd] Dept. 1988]), any such request for relief must be

8

denied here regardless of the form in which the claim is made.

## IV. CONCLUSION

In light of the foregoing, it is

ORDERED and ADJUDGED that the respondent's cross motion under sequence 001 to dismiss the petition is granted, and the proceeding is dismissed, without prejudice; and it is further,

ORDERED that the motion under sequence 002 is granted to the extent that leave to amend the caption is granted, and the motion is otherwise denied; and the caption is amended to read as follows:

---

In the Matter of
TOWAKI KOMATSU
   v
NEW YORK CITY HUMAN
RESOURCES ADMINISTRATION

---

and it is further,

ORDERED that the Clerk of the court and the Trial Support Office shall update their records accordingly; and it is further,

ORDERED that the petitioner's motion under sequence 003 is denied as academic in light of the court's determination of the motion under sequence number 002; and it is further,

ORDERED that the remaining causes of action in the petition/complaint, which allege that the respondent/defendant was negligent in the provision of security at a homeless shelter,

9

converted the petitioner/plaintiff's property to its own use, and
unlawfully precluded the petitioner/plaintiff from attending
certain public meetings, and seek both damages and injunctive
relief, are severed, and the matter is referred to the Trial
Support Office for reassignment to a City Part of this court.

This constitutes the Decision, Order, and Judgment of the
Court.

Dated: August 10, 2017          ENTER: _____

                                        J.S.C.
                                **HON. NANCY M. BANNON**



                                        Clerk

**F I L E D**

**AUG 21 2017**

**COUNTY CLERK'S OFFICE**
**NEW YORK**

10

B11



# SUPREME COURT OF THE STATE OF NEW YORK
# NEW YORK COUNTY

**PRESENT: Hon. Nancy Bannon**
*Justice*

**PART   42**

In the Matter of

TOWAKI KOMATSU

- v -

NEW YORK CITY HUMAN RESOURCES
ADMINISTRATION

**INDEX NO.   100054/2017**

**MOTION DATE   11/8/2017**

**MOTION SEQ. NO.   006**

FILED
FEB 05 2018
COUNTY CLERK'S OFFICE
NEW YORK

The following papers were read on this motion for leave to renew reargue (CPLR 2221):

| | |
|---|---|
| Notice of Motion/ Order to Show Cause — Affirmation — Affidavit(s) — Exhibits — Memorandum of Law | No(s).   1 |
| Notice of Cross Motion/Answering Affirmation(s) — Affidavit(s) — Exhibits | No(s).   2 |
| Replying Affirmation — Affidavit(s) — Exhibits | No(s). |

<div style="writing-mode:vertical">MOTION/CASE IS RESPECTFULLY REFERRED TO JUSTICE FOR THE FOLLOWING REASON(S):</div>

In this proceeding pursuant to CPLR article 78, the petitioner moves pursuant to CPLR 2221(d) and (e) for leave to renew and reargue the petition and the respondent's cross motion to dismiss the petition, which had been determined by order and judgment dated August 10, 2017. The respondent opposes the motion. The motion is denied.

That branch of the motion which is for leave to reargue is denied, inasmuch as the court did not overlook or misapprehend any facts or relevant law that were presented to it in connection with the prior motions.  See CPLR 2221(d)(2); William P. Pahl Equip. Corp. v Kassis, 182 AD2d 22 (1st Dept 1992).  The purpose of a motion to reargue is not "to serve as a vehicle to permit the unsuccessful party to argue once again the very questions previously decided." Pro Brokerage, Inc. v Home Ins. Co., 99 AD2d 971, 971 (1st Dept. 1984), quoting Foley v Roche, 68 AD2d 558, 567 (1st Dept. 1979).

The petitioner is not entitled to the alternative relief of renewal in connection with either the petition or the cross motion, since it has failed to present "new facts not offered on the prior motion[s] that would change the prior determination[s]," or demonstrate that "there has been a change in the law that would change the prior determination[s]." CPLR 2221(e)(2), (3); see Foley v Roche, supra. "A motion for leave to renew is not a second chance freely given to parties who have not exercised due diligence in making their first factual presentation." Joseph v Simmons, 114 AD3d 644, 644 (2nd Dept. 2014), quoting Elder v Elder, 21 AD3d 1055, 1055 (2nd Dept. 2005).

B12

All other requests for relief are denied.

Accordingly, it is

ORDERED that the defendant's motion for leave to renew and reargue is denied.

This constitutes the Decision and Order of the court.

Dated: January 31, 2018

 ,JSC

HON. NANCY M. BANNON

**FILED**

FEB 0 5 2018

COUNTY CLERK'S OFFICE
NEW YORK

1. Check one: ............................ ■ CASE DISPOSED    ☐ NON-FINAL DISPOSITION
2. Check as appropriate: MOTION IS: ☐ GRANTED    ■ DENIED ☐ GRANTED IN PART

B12

Printed: 2/7/20